1  XAVIER BECERRA, State Bar No. 118517
Attorney General of California
2  ALBERTO L. GONZALEZ , State Bar No. 117605
Supervising Deputy Attorney General
3  JOHN C. BRIDGES, State Bar No. 248553
Deputy Attorney General
4    1300 I Street, Suite 125
P.O. Box 944255
5    Sacramento, CA 94244-2550
Telephone:  (916) 210-7529
6    Fax:  (916) 322-8288
E-mail:  John.Bridges@doj.ca.gov
7  *Attorneys for Defendants*
*Dr. Braun and Dr. Majumdar*

8

9                IN THE UNITED STATES DISTRICT COURT

10              FOR THE EASTERN DISTRICT OF CALIFORNIA

11                      SACRAMENTO DIVISION

12

| | |
|---|---|
| **NEXIS RENE GOMEZ,** | 2:15-cv-2523-KJN |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **D. BRAUN, et al.,** | Judge:        The Honorable Kendall J. Newman |
| Defendants. | Action Filed:  February 25, 2016 |

19

20                        **INTRODUCTION**

21        California inmate Nexis Rene Gomez alleges that the two defendants were deliberately

22  indifferent to his medical needs.  The operative complaint is the First Amended Complaint (ECF

23  No. 10).  Plaintiff only claims Eighth Amendment deliberate indifference against the two

24  Defendants.

25        The claims focus on three particular medical issues:  (1) the alleged delay in referring

26  Plaintiff for a mental health evaluation, (2) the delay in providing that evaluation, and (3) the

27  failure to expedite the administration of medication to arguably prevent Plaintiff's subsequent

28  suicide attempt.

                                    1

*No Deliberate Indifference for Failure to Refer Plaintiff for a Mental Health Evaluation*: With regard to the alleged delay in referring Plaintiff for a mental health evaluation, Dr. Braun did, in fact, refer him to a psychiatrist on January 3, 2012, January 30, 2012, and February 21, 2012.  The fact that Plaintiff did not see a psychiatrist until February 27, 2012, when he was evaluated by Dr. Majumdar, was not due to any deliberate indifference on the part of Dr. Braun.

*No Deliberate Indifference for Delay in Providing Mental Health Evaluation*:  With regard to the alleged delay in providing the mental health exam, Dr. Majumdar performed the examination on February 27, 2012.  According to CDCR's policies regarding referrals to specialists, Dr. Majumdar was not aware of the request for referral until 1-2 days prior to the appointment.  A 1-2 day "delay" does not constitute deliberate indifference on the part of Dr. Majumdar.

*No Deliberate Indifference for Failure to Expedite the Administration of Medication*:  With regard to the alleged failure to expedite the administration of medication, Dr. Majumdar reinstated Plaintiff's previous prescription for Mirtazapine 30 mg on February 27, 2012. Mirtazapine is a systemic medication that takes up to eight weeks of consistent usage before its effectiveness manifests in a reduction of depressive symptoms.  Therefore, even if Dr. Majumdar had been able to prescribe Mirtazapine sooner, it would not have been soon enough to potentially prevent Plaintiff's suicide attempt.

Defendants are entitled to judgment as a matter of law.  The motion for summary judgment should be granted.

## STATEMENT OF FACTS

### A.    Facts relating to Dr. Braun

Dr. Braun earned a Bachelor of Science degree from Oral Roberts University in December of 2002, and a Master of Arts degree in Marriage and Family Therapy from Oral Roberts University in May of 2003.  He earned a Doctor of Psychology degree in Clinical Psychology from Regent University in May of 2009.  (Defendants' Separate Statement of Undisputed Facts In Support of Motion for Summary Judgment, filed herewith, (SSUF) 1.)  From August of 2006 until June of 2007, he worked at several different locations as a clinical practica student,

2

providing counseling services including clinical assessments of individuals concerning risk of

suicide and other emotional difficulties.  He completed a Pre-Doctoral Internship at Kaiser

Permanente, Fresno, from August of 2008 to August of 2009, in which he provided individual

therapy, family and couples therapy, and conducted psychological evaluations.  He has worked as

an In-Home Counsel from January of 2005 until June of 2008, providing comprehensive therapy

services for individuals and families.  From September of 2009 until August of 2017, he worked

as a Clinical Psychologist at both Wasco State Prison and High Desert State Prison, providing

comprehensive services to individuals who are chronically mentally ill and/or are acutely in

crisis.  This included working with individuals who are suicidal, homicidal, and/or gravely

disabled. (SSUF 2.)

Dr. Braun evaluated and treated Plaintiff for psychological complaints on January 3, 2012,

at which time he complained of feeling depressed.  (SSUF 3-4.)  He told Dr. Braun that he tried to

"choke myself out" a few weeks earlier, but denied any suicidal ideation. (SSUF 5.)  In Dr.

Braun's medical opinion, he needed to see a psychiatrist to reinstate his prior anti-depressant

medication, which Dr. Braun could not prescribe. (SSUF 6-7.)  Plaintiff was not in immediate

danger of harming himself or others.  Dr. Braun referred him to a psychiatrist by including the

referral in his visit notes, and by contacting the scheduler at the prison to request that Mr. Gomez

be seen by a psychiatrist. (SSUF 8.)

CDCR's policy in the early-2012 timeframe was to follow-up with patients every ninety

(90) days. (SSUF 9.)  Given Plaintiff's complaints of depression, Dr. Braun made the medical

decision to follow-up with him every thirty (30) days. (SSUF 10.)  Dr. Braun saw Plaintiff on

January 30, 2012, at which time he complained that he had not seen a psychiatrist since their

previous visit.  He told Dr. Braun that he was still feeling depressed. (SSUF 11.)  As a result, Dr.

Braun again made a referral for him to see a psychiatrist by both including it in his visit notes and

contacting the scheduler after the visit to specifically request the referral. (SSUF 12.)

Dr. Braun saw Plaintiff again on February 21, 2012.  At that visit, Plaintiff claimed that he

still had ongoing depression, but had not seen a psychiatrist. (SSUF 13.)  Dr. Braun was frustrated

that despite his attempts to get Plaintiff an appointment with a psychiatrist, he had not received

1  the appointment. (SSUF 14.)  Once again, Dr. Braun referred him to a psychiatrist by including it

2  in his notes and contacting the scheduler. (SSUF 15.)  On February 27, 2012, Plaintiff was seen

3  by one of the prison's contract psychiatrists, Dr. Majumdar. (SSUF 16.)

4        Dr. Braun had no control or influence over the referrals to psychiatry.  As a clinical

5  psychologist, all he could do was make the referral and follow-up with the patient to counsel him

6  about his mental health issues. (SSUF 17.)  Whether the referral was processed was up to the

7  scheduler, over whom Dr. Braun had no control.  As a clinical psychologist, Dr. Braun was at the

8  mercy of the scheduler and the contract psychiatrist. (SSUF 18.)  These psychiatrists were not

9  CDCR employees and typically worked only on weekends. (SSUF 19.)  They would see 40-50

10 patients per day, and there were generally far more than 100 patients per weekend who needed

11 treatment. (SSUF 20.)  Dr. Braun does not know why Plaintiff was unable to see a psychiatrist

12 until February 27th, even though Dr. Braun made three referrals for him to see one, but it was not

13 for a lack of trying on Dr. Braun's part. (SSUF 21.)

14       The prison had a Mental Health Crisis Bed (MHCB) located within the Correctional

15 Treatment Center (CTC). (SSUF 22.)  The standard for an involuntary commitment to the MHCB

16 is whether the patient poses a danger to himself and/or others, or has a grave disability.  The

17 standard is the same as that contained within the Lanterman-Petris-Short Act (Cal. Welf. & Inst.

18 Code § 5150.) (SSUF 23.)  Dr. Braun could not commit a patient to the MHCB without probable

19 cause, and determining probable cause for this purpose is discretionary. (SSUF 24.)  Based on his

20 clinical experience and medical training, Dr. Braun's medical opinion was that Plaintiff did not

21 pose a danger to himself between January 3, 2012 and February 27, 2012, nor was he gravely

22 disabled to justify an involuntary commitment. (SSUF 25.)

23       Dr. Braun had no involvement in creating the CDCR's mental health policies at High

24 Desert. (SSUF 26.)  He had no choice but to adhere to those policies and procedures. (SSUF 27.)

25 At no time was he "deliberately indifferent" to Plaintiff's medical needs. (SSUF 28.)  Dr. Braun

26 gave Plaintiff all of the treatment that he deemed was medically necessary for his depression.

27 (SSUF 29.)

28 / / /

4

**B.    Facts relating to Dr. Majumdar**

Dr. Majumdar earned a Bachelor of Arts degree from Oberlin College in 2002.  He earned a Doctor of Medicine degree from Ross University School of Medicine in 2006. (SSUF 30.)  He is board certified in Psychiatry and Neurology, as well as Addiction Medicine. (SSUF 31.)  He is licensed to practice medicine in California and Michigan. (SSUF 32.)  Dr. Majumdar has significant clinical experience dealing with patients who exhibit suicidal ideation and depression, and has been trained to recognize the symptoms of someone who poses a risk to himself and/or others. (SSUF 33.)

Dr. Majumdar treated Plaintiff on February 27, 2012, at which time Plaintiff complained of feeling depressed. (SSUF 34.)  Plaintiff told Dr. Majumdar that he had trouble with sleep and appetite, but denied any suicidality, homicidality, or psychotic symptoms. (SSUF 35.)  In Dr. Majumdar's medical opinion, Plaintiff's depression could be alleviated by restarting his prior prescription for Mirtazapine 30 mg, which is a common anti-depressant. (SSUF 36.)  Plaintiff was not in immediate danger of harming himself or others on February 27, 2012.

In the timeframe of the incidents alleged in Plaintiff's lawsuit, contract psychiatrists did not see referral notices unless they were attached to the patient's chart on the day of the scheduled visit. (SSUF 37.)  Dr. Majumdar did not receive any referral information prior to the date of the scheduled visit, so he had no way of knowing when a patient was referred to his care. (SSUF 38.)  As a contractor, he simply came in and saw whomever was scheduled for him that day. (SSUF 39.)  Dr. Majumdar did not intentionally or deliberately avoid treating Plaintiff, nor did he contribute to the delay in his medical visit with Dr. Majumdar. (SSUF 40.)

Mirtazapine 30 mg is a standard anti-depressant. (SSUF 41.)  The medical community recognizes that doctors do not know if an antidepressant will be effective for someone until the patient has been on a sufficient dose for at least eight weeks.  This is because the immediate effect an anti-depressant has, such as raising serotonin levels, leads to downstream effects that treat the symptoms, such as reducing stress hormones or their effects. (SSUF 42.)  Some patients may see benefits sooner, but for others it might have no noticeable benefit before eight weeks of consistent dosing and then suddenly feel relief after eight weeks. (SSUF 43.)

5

1        The prison had a Mental Health Crisis Bed (MHCB) located within the Correctional

2    Treatment Center (CTC). (SSUF 44.)  The standard for an involuntary commitment to the MHCB

3    is whether the patient poses a danger to himself and/or others, or has a grave disability.  The

4    standard is the same as that contained within the Lanterman-Petris-Short Act (Cal. Welf. & Inst.

5    Code § 5150.) (SSUF 45.)  Dr. Majumdar could not commit a patient to the MHCB without

6    probable cause, and determining probable cause for this purpose is discretionary. (SSUF 46.)

7    Based on Dr. Majumdar's clinical experience and medical training, his medical opinion was that

8    Plaintiff did not pose a danger to himself on February 27, 2012, nor was he gravely disabled to

9    justify an involuntary commitment. (SSUF 47.)

10       Dr. Majumdar had no involvement in creating the CDCR's mental health policies at High

11    Desert. (SSUF 48.)  He had no choice but to adhere to those policies and procedures. (SSUF 49.)

12    At no time was Dr. Majumdar "deliberately indifferent" to Plaintiff's medical needs. (SSUF 50.)

13    Dr. Majumdar gave Plaintiff all of the treatment that he deemed was medically necessary for his

14    depression. (SSUF 51.)

15                       **LEGAL ARGUMENT**

16    **I.**    **STANDARD FOR SUMMARY JUDGMENT**

17       Any party may move for summary judgment, and the Court shall grant summary judgment

18    if the movant shows that there is no genuine dispute as to any material fact and the movant is

19    entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted);

20    *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position,

21    whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular

22    parts of materials in the record, including but not limited to depositions, documents, declarations,

23    or discovery; or (2) showing that the materials cited do not establish the presence or absence of a

24    genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.

25    Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  A dispute about a material fact is genuine "if

26    the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

27    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In the absence of such facts, "the

28    moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S.

1   317, 323 (1986).  And the Court may consider other materials in the record not cited to by the

2   parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*,

3   237 F.3d 1026, 1031 (9th Cir. 2001); *Simmons v. Navajo Cnty. Ariz.*, 609 F.3d 1011, 1017 (9th

4   Cir. 2010).

5          A defendant bears no burden of proof at trial, and thus, in moving for summary judgment,

6   he need only prove an absence of evidence to support Plaintiff's case.  *In re Oracle Corp. Sec.*

7   *Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp.*, 477 U.S. at 323).  If the defendant,

8   as the moving party, meets its initial burden, the plaintiff must then go beyond the pleadings and

9   produce specific evidence, by affidavit or as otherwise provided in Rule 56, to show that there is a

10  genuine issue for trial.  Fed. R. Civ. P. 56(c); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.

11  2001) (en banc).  To this end, the nonmoving party "must do more than simply show that there is

12  some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not

13  lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.'"

14  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *First Nat'l*

15  *Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

16         In resolving a summary judgment motion, the court must view the evidence and draw all

17  reasonable inferences in the nonmoving party's favor.  *Liberty Lobby*, 477 U.S. at 255.

18  Nonetheless, the court need not draw all possible inferences in that party's favor, but only all

19  reasonable ones.  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 n.10 (9th Cir. 2002).

20  Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly

21  contradicted by the record so that no reasonable jury could believe it, a court should not adopt

22  that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v.*

23  *Harris*, 550 U.S. 372, 380 (2007).

24         Rule 56 allows a party to "move for summary judgment, identifying each claim or

25  defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R.

26  Civ. P. 56(a).  A court may grant partial summary judgment on a particular claim or affirmative

27  defense, even if doing so would leave other triable issues.  *Boston Scientific Corp. v. Cordis*

28  *Corp.*, 422 F. Supp. 2d 1102, 1106 (N.D. Cal. 2006); s*ee also Beal Bank, SSB v. Pittorino*, 177

7

F.3d 65, 68 (1st Cir. 1999); *Cervantes and Montes v. Cemex, Inc.*, No. 1:12-CV-01932-LJO-JLT, 2014 U.S. Dist. LEXIS 159973, *17 (E.D. Cal. Nov. 13, 2014).

## II. PLAINTIFF'S EIGHTH AMENDMENT RIGHTS WERE NOT VIOLATED BY ANY DELIBERATE INDIFFERENCE ON THE PART OF THE DEFENDANTS

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  The deliberate indifference standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm.  *Farmer*, 511 U.S. at 837.  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety."  *Id.*  "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

"Deliberate indifference" is a high legal standard and a showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation or deliberate indifference under the Eighth Amendment.  *Id.* at 1057.  Inadequate treatment due to malpractice or even gross negligence does not constitute an Eight Amendment violation.  *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990); *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980).  A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established.  *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997).  A difference of opinion between medical professionals as to the proper diagnosis or course of treatment for a patient does not give rise to a claim for deliberate indifference.  *Jackson v. McIntosh*, 90 F.3d 330 (9th Cir. 1996).

/ / /

8

In this case, Plaintiff received all reasonable and necessary care for his various medical conditions.  Plaintiff requested medical treatment for his depression and received it in the form of monthly appointments with a psychologist and an appointment with a psychiatrist.  According to his medical visit notes, he denied any suicidal ideation at all four medical visits at issue in this case.  Plaintiff testified at his deposition that he told Dr. Braun and Dr. Majumdar about several suicide attempts during these visits.  However, Dr. Braun referred Plaintiff to a psychiatrist "ASAP" at each visit, and had no control over whether these monthly referrals were being addressed.  Dr. Braun went so far as to call the scheduler following these medical visits to ensure that Plaintiff obtained an appointment with a psychiatrist, but there was nothing more he could do.  Furthermore, Dr. Majumdar was not aware of the referrals until the morning of his visit with Plaintiff.  He was not actively or deliberately trying to avoid treating Plaintiff because he did not know that Plaintiff needed care until the date of the visit.  Neither of the Defendants could have done anything more to provide medical care to Plaintiff, and they did, in fact, provide all reasonable and necessary care that was available.

As set forth herein, there is no evidence that either of the Defendants provided care that was "chosen in conscious disregard of an excessive risk" to Plaintiff's health.  *Toguchi*, 391 F.3d at 1056.

**A.    Dr. Braun was not deliberately indifferent to Gomez**

Plaintiff does not allege any complaints with regard to the care provided by Dr. Braun outside of the January 3, 2012-February 27, 2012 timeframe.  In that timeframe, Dr. Braun saw Plaintiff on three occasions, even though CDCR regulations only required medical visits every 90 days.  Dr. Braun did not have any control over scheduling Plaintiff to see a psychiatrist and therefore, did not cause any delay in providing mental health care to Plaintiff.  On the three occasions in which he provided care, Dr. Braun was thorough, listened to Plaintiff's complaints, addressed his current and ongoing psychiatric concerns, and provided a treatment plan that included referring Plaintiff to the appropriate medical providers.

Additionally, Dr. Braun used his training and expertise as a clinical psychologist to determine that Plaintiff did not pose a danger to himself and/or others, nor was he gravely

9

1  disabled, for purposes of an involuntary commitment to the prison's Mental Health Crisis Bed.

2  Whether to involuntarily commit Plaintiff was within Dr. Braun's medical discretion and, as

3  stated above, a difference of opinion does not constitute deliberate indifference.

4       Dr. Braun never knowingly or intentionally disregarded any risks of serious injury or harm

5  to Plaintiff.  Therefore, there is no basis for a claim of deliberate indifference against him.  Dr.

6  Braun is entitled to summary judgment.

7       **B.    Dr. Majumdar was not deliberately indifferent to Gomez**

8       Dr. Majumdar played a minimal role in Plaintiff's treatment at issue in this case.

9  Nevertheless, he gave thoughtful consideration to Plaintiff's symptoms and medical history in

10  contributing to his assessment and treatment.

11       Plaintiff does not allege any complaints with regard to the care provided by Dr. Majumdar

12  outside of the January 3, 2012-February 27, 2012 timeframe.  In that timeframe, the only time Dr.

13  Majumdar had any interaction with Plaintiff was on February 27, 2012.  Dr. Majumdar did not

14  have any knowledge of Dr. Braun's prior referrals to a psychiatrist, and therefore did not cause

15  any delay in providing a mental health evaluation to Plaintiff.  When he did the mental health

16  evaluation, he was thorough, listened to Plaintiff's complaints, addressed his current and ongoing

17  psychiatric concerns, and provided a treatment plan that included reinstating Plaintiff's

18  prescription medication at Plaintiff's request.

19       Dr. Majumdar never knowingly or intentionally disregarded any risks of serious injury or

20  harm to Plaintiff.  Therefore, there is no basis for a claim of deliberate indifference against him.

21  Dr. Majumdar is entitled to summary judgment.

22  **III.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY**

23       Qualified immunity shields government officials from liability unless their conduct violates

24  "clearly established statutory or constitutional rights of which a reasonable person would have

25  known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The threshold question in determining

26  whether qualified immunity applies is whether the facts presented by the plaintiff show that the

27  alleged conduct violated a clearly established constitutional right, considered in a light most

28  favorable to the plaintiff.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

1    Under *Saucier*, the plaintiff bears the burden of proving that the alleged conduct violated a

2   clearly established constitutional right.  *Id.* at 194.  If the Court determines that there has been a

3   constitutional violation, it must then consider whether the right violated was clearly established.

4   *Id.* at 201.  The inquiry at this point is "whether it would be clear to a reasonable officer that the

5   conduct was unlawful in the situation he confronted."  *Id.* at 194-95.  In order to prevail in this

6   question, the plaintiff must demonstrate that the official knew or should have known that his

7   conduct was illegal.  *See Sorrels v. McKee*, 290 F.3d 965, 970 (9th Cir. 2002).

8    First, Plaintiff cannot demonstrate that Dr. Braun or Dr. Majumdar violated his rights under

9   the Eighth Amendment.  The medical records do not support Plaintiff's claim that he faced a serious

10   medical need when treated by Defendants in January and February of 2012.  Furthermore, Plaintiff

11   cannot demonstrate that Defendants either knew of or disregarded a substantial risk of harm.  Finally,

12   Plaintiff cannot prove that any alleged action or inaction by Defendants caused the plaintiff any

13   harm.

14    In any event, even if Plaintiff could prove a constitutional violation, he cannot demonstrate

15   that the alleged conduct violated a clearly established constitutional right.  Namely, Defendants

16   could not have known that they would violate Plaintiff's constitutional rights by determining that he

17   did not pose a harm to himself and/or others, referring him to psychiatry, or reinstating his anti-

18   depression medication.  They were simply providing the medical treatment that they deemed

19   appropriate under the circumstances.

20    In sum, Plaintiff cannot demonstrate that Defendants violated "clearly established statutory

21   or constitutional rights of which a reasonable person would have known."  As a result, Defendants

22   are entitled to qualified immunity from Plaintiff's claim for deliberate indifference.

23                                **CONCLUSION**

24    The evidence demonstrates numerous, ongoing medical visits with Dr. Braun with

25   corresponding referrals to a psychiatrist to address Plaintiff's medical needs.  Dr. Braun followed-

26   up each of these visits by contacting the scheduler to request a referral as soon as possible, but he

27   had no control over scheduling psychiatric consultations.  Dr. Majumdar provided Plaintiff with

28   exactly what he requested, namely a reinstated prescription for Mirtazapine 30mg.  Dr. Majumdar

11

1  did not delay in providing treatment to Plaintiff because he was not aware of the referral from Dr.

2  Braun until the date of the visit.  There is ample objective evidence to show that Defendants were

3  not deliberately indifferent to Plaintiff's medical needs.  Plaintiff's opinion that his psychiatric

4  consultation should have been completed sooner is not supported by his presentation of

5  symptoms, nor was it within the control or influence of the Defendants.  Likewise, there is ample

6  evidence of the ongoing management of Plaintiff's depression, including repeated referrals to a

7  psychiatrist and reinstatement of the plaintiff's medication.  In any event, the difference of

8  medical opinions, such as whether Plaintiff should have been involuntarily committed, does not

9  give rise to a claim for deliberate indifference to medical needs.

10  Defendants are entitled to judgment as a matter of law.  The motion for summary judgment

11  should be granted.

12  Dated:  September 13, 2017                    Respectfully submitted,

13                                                XAVIER BECERRA
                                                  Attorney General of California
14                                                ALBERTO L. GONZALEZ
                                                  Supervising Deputy Attorney General
15

16                                                */s/ John C. Bridges*

17                                                JOHN C. BRIDGES
                                                  Deputy Attorney General
18                                                *Attorneys for Defendants Dr. Braun and Dr.*
                                                  *Majumdar*

19

20

21

22

23

24

25

26

27

28  SA2016300966
    33009560.doc