1   Xavier Becerra, State Bar No. 118517
    Attorney General of California
2   Alberto L. Gonzalez , State Bar No. 117605
    Supervising Deputy Attorney General
3   John C. Bridges, State Bar No. 248553
    Deputy Attorney General
4     1300 I Street, Suite 125
      P.O. Box 944255
5     Sacramento, CA 94244-2550
      Telephone:  (916) 210-7529
6     Fax:  (916) 322-8288
      E-mail:  John.Bridges@doj.ca.gov
7   *Attorneys for Defendants*
    *Dr. Braun and Dr. Majumdar*

8

9           IN THE UNITED STATES DISTRICT COURT

10         FOR THE EASTERN DISTRICT OF CALIFORNIA

11               SACRAMENTO DIVISION

12

| | |
|---|---|
| 13 **NEXIS RENE GOMEZ,** | 2:15-cv-2523-KJN |
| 14 Plaintiff, | **DEFENDANTS' SEPARATE** |
| 15 | **STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR** |
| 16 v. | **SUMMARY JUDGMENT** |
| 17 **D. BRAUN, et al.,** | Judge:     The Honorable Kendall J. Newman |
| 18 Defendants. | |
| 19 | Action Filed:  February 25, 2016 |

| | |
|---|---|
| **Issue No. 1:  Dr. Braun is not liable for deliberate indifference.** | |
| **FACTS** | |
| 1.  Dr. Braun earned a Bachelor of Science degree from Oral Roberts University in December of 2002, and a Master of Arts degree in Marriage and Family Therapy from Oral Roberts University in May of 2003.  He earned a Doctor of Psychology degree in Clinical Psychology from Regent University in May of 2009. (Braun dec., ¶ 2.) | |

28   / / /

1

2.  From August of 2006 until June of 2007, Dr. Braun worked at several different locations as a clinical practica student, providing counseling services including clinical assessments of individuals concerning risk of suicide and other emotional difficulties.  He completed a Pre-Doctoral Internship at Kaiser Permanente, Fresno, from August of 2008 to August of 2009, in which he provided individual therapy, family and couples therapy, and conducted psychological evaluations.  He has worked as an In-Home Counsel from January of 2005 until June of 2008, providing comprehensive therapy services for individuals and families.  From September of 2009 until August of 2017, he worked as a Clinical Psychologist at both Wasco State Prison and High Desert State Prison, providing comprehensive services to individuals who are chronically mentally ill and/or are acutely in crisis.  This included working with individuals who are suicidal, homicidal, and/or gravely disabled. (Braun dec., ¶ 2.)

3.  Dr. Braun evaluated and treated Plaintiff for psychological complaints on January 3, 2012. (Braun dec., ¶ 3.)

4.  On January 3, 2012, Plaintiff complained to Dr. Braun that he was feeling depressed. (Braun dec., ¶ 3.)

5.  On January 3, 2012, Plaintiff told Dr. Braun that he tried to "choke myself out" a few weeks earlier, but denied any suicidal ideation. (Braun dec., ¶ 3.)

6. On January 3, 2012, in Dr. Braun's medical opinion, Plaintiff needed to see a psychiatrist to reinstate his prior anti-depressant medication. (Braun dec., ¶ 3.)

7.  Dr. Braun could not prescribe Plaintiff's anti-depressant medication. (Braun dec., ¶ 3.)

8.  On January 3, 2012, Dr. Braun referred Plaintiff to a psychiatrist by including the referral in his visit notes, and by contacting the scheduler at the prison to request that Plaintiff be seen by a psychiatrist. (Braun dec., ¶ 3.)

9.  CDCR's policy in the early-2012 timeframe was to follow-up with patients every ninety (90) days. (Braun dec., ¶ 4.)

2

| | |
|---|---|
| 10.  Given Plaintiff's complaints of depression, Dr. Braun made the medical decision to follow-up with him every thirty (30) days. (Braun dec., ¶ 4.) | |
| 11.  Dr. Braun saw Plaintiff on January 30, 2012, at which time he complained that he had not seen a psychiatrist since their previous visit. He told Dr. Braun that he was still feeling depressed. (Braun dec., ¶ 4.) | |
| 12.  On January 30, 2012, Dr. Braun again made a referral for Plaintiff to see a psychiatrist by both including it in his visit notes and contacting the scheduler after the visit to specifically request the referral. (Braun dec., ¶ 4.) | |
| 13.  Dr. Braun saw Plaintiff again on February 21, 2012.  At that visit, Plaintiff claimed that he still had ongoing depression, but had not seen a psychiatrist. (Braun dec., ¶ 5.) | |
| 14.  Dr. Braun was frustrated that despite his attempts to get Plaintiff an appointment with a psychiatrist, he had not received the appointment. (Braun dec., ¶ 5.) | |
| 15.  On February 21, 2012, Dr. Braun referred Plaintiff to a psychiatrist by including the referral in his notes and contacting the scheduler. (Braun dec., ¶ 5.) | |
| 16.  On February 27, 2012, Plaintiff was seen by one of the prison's contract psychiatrists, Dr. Majumdar. (Braun dec., ¶ 6.) | |
| 17.  Dr. Braun had no control or influence over the referrals to psychiatry.  As a clinical psychologist, all he could do what make the referral and follow-up with the patient to counsel him about his mental health issues. (Braun dec., ¶ 7.) | |
| 18.  Whether the referral was processed was up to the scheduler, over whom Dr. Braun had no control.  As a clinical psychologist, Dr. Braun was at the mercy of the scheduler and the contract psychiatrist. (Braun dec., ¶¶ 7-8.) | |
| 19.  The contract psychiatrists were not CDCR employees and typically worked only on weekends. (Braun dec., ¶ 8.) | |

/ / /

3

| | |
|---|---|
| 20.  The contract psychiatrists would see 40-50 patients per day, and there were generally far more than 100 patients per weekend who needed treatment. (Braun dec., ¶ 8.) | |
| 21.  Dr. Braun does not know why Plaintiff was unable to see a psychiatrist until February 27th, even though Dr. Braun made three referrals for him to see one. (Braun dec., ¶ 8.) | |
| 22.  The prison had a Mental Health Crisis Bed (MHCB) located within the Correctional Treatment Center (CTC). (Braun dec., ¶ 9.) | |
| 23.  The standard for an involuntary commitment to the MHCB is whether the patient poses a danger to himself and/or others, or has a grave disability.  The standard is the same as that contained within the Lanterman-Petris-Short Act (Cal. Welf. & Inst. Code § 5150.) (Braun dec., ¶ 9.) | |
| 24.  Dr. Braun could not commit a patient to the MHCB without probable cause, and determining probable cause for this purpose is discretionary. (Braun dec., ¶ 9.) | |
| 25.  Based on his clinical experience and medical training, Dr. Braun's medical opinion was that Plaintiff did not pose a danger to himself between January 3, 2012 and February 27, 2012, nor was he gravely disabled to justify an involuntary commitment. (Braun dec., ¶ 9.) | |
| 26.  Dr. Braun had no involvement in creating the CDCR's mental health policies at High Desert. (Braun dec., ¶ 10.) | |
| 27.  Dr. Braun had no choice but to adhere to CDCR's policies and procedures. (Braun dec., ¶ 10.) | |
| 28.  Dr. Braun was not "deliberately indifferent" to Plaintiff's medical needs. (Braun dec., ¶ 10.) | |
| 29.  Dr. Braun gave Plaintiff all of the treatment that he deemed was medically necessary for his depression. (Braun dec., ¶ 10.) | |

/ / /

/ / /

/ / /

/ / /

4

| **Issue No. 2:  Dr. Majumdar is not liable for deliberate indifference.** | |
|---|---|
| <u>**FACTS**</u> | |
| 30.  Dr. Majumdar earned a Bachelor of Arts degree from Oberlin College in 2002.  He earned a Doctor of Medicine degree from Ross University School of Medicine in 2006. (Majumdar dec., ¶ 2.) | |
| 31.  Dr. Majumdar is board certified in Psychiatry and Neurology, as well as Addiction Medicine. (Majumdar dec., ¶ 2.) | |
| 32.  Dr. Majumdar is licensed to practice medicine in California and Michigan. (Majumdar dec., ¶ 2.) | |
| 33.  Dr. Majumdar has significant clinical experience dealing with patients who exhibit suicidal ideation and depression, and has been trained to recognize the symptoms of someone who poses a risk to himself and/or others. (Majumdar dec., ¶ 2.) | |
| 34.  Dr. Majumdar treated Plaintiff on February 27, 2012, at which time Plaintiff complained of feeling depressed. (Majumdar dec., ¶ 3.) | |
| 35. Plaintiff told Dr. Majumdar that he had trouble with sleep and appetite, but denied any suicidality, homicidality, or psychotic symptoms. (Majumdar dec., ¶ 3.) | |
| 36.  In Dr. Majumdar's medical opinion, Plaintiff's depression could be alleviated by restarting his prior prescription for Mirtazapine 30 mg, which is a common anti-depressant. (Majumdar dec., ¶ 3.) | |
| 37.  In the timeframe of the incidents alleged in Plaintiff's lawsuit, contract psychiatrists did not see referral notices unless they were attached to the patient's chart on the day of the scheduled visit. (Majumdar dec., ¶ 4.) | |
| 38.  Dr. Majumdar did not receive any referral information prior to the date of the scheduled visit, so he had no way of knowing when a patient was referred to his care. (Majumdar dec., ¶ 4.) | |
| 39.  As a contractor, Dr. Majumdar simply came in and saw whomever was scheduled for him that day. (Majumdar dec., ¶ 4.) | |

5

| | |
|---|---|
| 40.  Dr. Majumdar did not intentionally or deliberately avoid treating Plaintiff, nor did he contribute to the delay in Plaintiff's medical visit with Dr. Majumdar. (Majumdar dec., ¶ 4.) | |
| 41.  Mirtazapine 30 mg is a standard anti-depressant. (Majumdar dec., ¶ 5.) | |
| 42.  The medical community recognizes that doctors do not know if an antidepressant will be effective for someone until the patient has been on a sufficient does for at least eight weeks.  This is because the immediate effect an anti-depressant has, such as raising serotonin levels, leads to downstream effects that treat the symptoms, such as reducing stress hormones or their effects. (Majumdar dec., ¶ 5.) | |
| 43.  Some patients may see benefits sooner, but for others it might have no noticeable benefit before eight weeks of consistent dosing and then suddenly feel relief after eight weeks. (Majumdar dec., ¶ 5.) | |
| 44.  The prison had a Mental Health Crisis Bed (MHCB) located within the Correctional Treatment Center (CTC). (Majumdar dec., ¶ 6.) | |
| 45.  The standard for an involuntary commitment to the MHCB is whether the patient poses a danger to himself and/or others, or has a grave disability.  The standard is the same as that contained within the Lanterman-Petris-Short Act (Cal. Welf. & Inst. Code § 5150.) (Majumdar dec., ¶ 6.) | |
| 46.  Dr. Majumdar could not commit a patient to the MHCB without probable cause, and determining probable cause for this purpose is discretionary. (Majumdar dec., ¶ 6.) | |
| 47.  Based on Dr. Majumdar's clinical experience and medical training, his medical opinion was that Plaintiff did not pose a danger to himself on February 27, 2012, nor was he gravely disabled to justify an involuntary commitment. (Majumdar dec., ¶ 6.) | |
| 48.  Dr. Majumdar had no involvement in creating the CDCR's mental health policies at High Desert. (Majumdar dec., ¶ 8.) | |
| 49.  Dr. Majumdar had no choice but to adhere to CDCR's policies and procedures. (Majumdar dec., ¶ 8.) | |

6

| | |
|---|---|
| 50.  At no time was Dr. Majumdar "deliberately indifferent" to Plaintiff's medical needs. (Majumdar dec., ¶ 8.) | |
| 51.  Dr. Majumdar gave Plaintiff all of the treatment that he deemed was medically necessary for his depression. (Majumdar dec., ¶ 8.) | |

Dated:  September 13, 2017

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
ALBERTO L. GONZALEZ
Supervising Deputy Attorney General

*/s/ John C. Bridges*

JOHN C. BRIDGES
Deputy Attorney General
*Attorneys for Defendants Dr. Braun and Dr. Majumdar*

SA2016300966
33040775.doc

7