1  Nexis Rene Gomez
   AF-7364
2  Soledad State Prison CTF
   P.O. Box 705
3  Soledad, CA 93960
   In Pro-Per

**FILED**

FEB 05 2010

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                DEPUTY CLERK

**ORIGINAL**

8        IN THE UNITED STATES DISTRICT COURT
9     FOR THE EASTERN DISTRICT OF CALIFORNIA
              SACRAMENTO DIVISION

14  NEXIS RENE GOMEZ,                    No.: 2:15-cv-2523-KJN

15              Plaintiff,

16                                       PLAINTIFF'S REPLY TO DEFENDANTS'
                                         STATEMENTS OF UNDISPUTED FACTS
                                         IN SUPPORT OF MOTION FOR SUMMARY
17         v.                            JUDGMENT

19                                       Judge:      The Honorable Kendall
                                                     J. Newman
20  D. BRAUN, et al.,
                                         Action Filed: February 25, 2016
21              Defendants.

1   Issue No.1: Dr. Braun is not liable for deliberate indifference.

2   RESPONSE TO ISSUE NO.1:

3   Plaintiff deny that Dr.Braun is not liable for deliberate indifference, instead,

4   claim that Dr.Braun is liable because he knew that plaintiff faced a substantial

5   risk of serious harm whitout his medication,he disregards that risk by failing to

6   take reasonable measures to abate it,resulting in plaintiff's suicide attempt on

7   February 29,2012.

8   STATEMENT NO.1:

9   Dr.Braun earned a Bachelor of Science degree from Oral Roberts University in

10  December 2002,and a Master of Arts degree in Marriage and Family Therapy from

11  Oral Roberts University in May 2003. He earned a Doctor of Psychology degree in

12  Clinical  Psychology from Regent University in May of 2009.(Braun dec.,¶ 2.)

13  RESPONSE TO STATEMENT NO.1:

14  Plaintiff admit those facts as stated by Dr.Braun.

15  STATEMENT NO.2:

16  From August of 2006,until June 2007,Dr.Braun worked at several different

17  locations as a clinical practica student,providing counseling services including

18  clinical assesments of individuals concerning risk of suicide and other emotional

19  difficulties. He completed a Pre-Doctoral Internship at Kaiser Permanente,Fresno,

20  from August of 2008 to August of 2009,in which he provided individual therapy,

21  family and couples therapy,and conducted psychological evaluations. He has worked

22  as In-Home Counsel from January of 2005 until June 2008,providing comprehensive

23  therapy services for individuals and families.

24  From September of 2009,until August 2017,he worked as a Clinician Psychologist

25  at both Wasco State Prison and High Desert State Prison,providing comprehensive

26  services to individuals who are chronically mentally ill and/or are acutely in

27  crisis. This included working with individuals who are suicidal,homicidal,and/or

28  gravely disabled.(Braun dec.,¶ 2.)

1

1    **RESPONSE TO STATEMENT NO.2:**

2    Plaintiff would admit these facts  as recited by Dr. Braun.

3    **STATEMENT NO.3:**

4    Dr.Braun evaluated and treated Plaintiff for psychological complaint on

5    January 3, 2012. (Braun dec.,¶ 3.)

6    **RESPONSE TO STATEMENT NO.3:**

7    Plaintiff admit that Dr. Braun evaluated him for psychological complaints

8    on January 3,2012, However, Plaintiff deny that Dr. Braun gave him any treatment

9    for his complaint on that date, the only thing that Dr. Braun did for Plaintiff,

10   was counseling him, and scheduled him for psychiatry ASAP, according to his

11   notes. (Gomez dec.,4,5.).

12   **STATEMENT NO.4:**

13   On January 3,2012, Plaintiff complained to Dr. Braun that he was feeling

14   depressed.(Braun dec.,¶ 3.)

15   **RESPONSE TO STATEMENT NO.4:**

16   Plaintiff admit that on January 3,2012, he complained to Dr. Braun that

17   he was feeling depressed. (Gomez dec.,¶ 4,13.).

18   **STATEMENT NO.5:**

19   On January 3,2012, Plaintiff told Dr. Braun that he tried to " choke

20   myself out " a few weeks earlier, but denied any  suicidal ideation. (Braun dec.,¶ 3.).

21   **RESPONSE TO STATEMENT NO.5:**

22   Plaintiff admit that on January 3,2012, he told Dr. Braun that he tried

23   to choke himself out. But Plaintiff told him that he tried to choke himself out

24   a couple days earlier, as Plaintiff testified in his deposition. Plaintiff admit

25   that he denied suicidal ideation in the presence of Dr. Braun only, However, he

26   deny that he do not have suicide plans, because when he came back into his cell,

27   his mind was racing and thinking about suicide all the night long. ( Gomez dec.,

28   ¶¶ 4,5.)

1    **STATEMENT NO.6:**

2        On January 3,2012,in Dr.Braun's medical opinion,Plaintiff needed to see a

3    psychiatrist to reinstate his prior anti-depressant medication.(Braun dec.,¶ 3.)

4    **RESPONSE TO STATEMENT NO.6:**

5        Plaintiff admit Dr.Braun's medical opinion, However Plaintiff claim that

6    almost two months delaying this medication was deliberate indifference. (Gomez dec.,¶ 18.)

7    **STATEMENT NO.7:**

8        Dr.Braun could not prescribe Plaintiff's anti-depressant medication.

9    (Braun dec.,¶ 3.)

10    **RESPONSE TO STATEMENT NO.7**

11        Plaintiff admit that Dr.Braun could not prescribe him,his anti-depressant

12    medication, However he could take addittional steps. (Gomez dec.,¶ 6.).

13    **STATEMENT NO.8:**

14        On January 3,2012,Dr.Braun referred Plaintiff to a psychiatrist by

15    including the referral in his visit notes,and by contacting the scheduler at the

16    prison to request that Plaintiff be seen by a psychiatrist.(Braun dec.,¶ 3.)

17    **RESPONSE TO STATEMENT NO.8:**

18        Plaintiff admit this statement in part,specifically he admit the portion

19    where Dr.Braun stated that On January 3,2012,he referred Plaintiff to a

20    psychiatrist by including his referral in his visit notes. However,Plaintiff

21    object the portion where Dr.Braun states: And by contacting the scheduler at the

22    prison to request that Plaintiff be seen by a psychiatrist.(Braun dec.,¶ 3.),

23    Plaintiff contends that this fact stated by Dr.Braun is not supported by any

24    evidence in the record,he is no showing that he contacted the scheduler,therefore

25    Plaintiff object to this portion stated by him. (Gomez dec.,¶ 7.)

26    **STATEMENT NO.9:**

27        CDCR's policy in the early-2012 timeframe was to follow-up with patients

28    every ninety(90) days.(Braun dec.,¶ 4.)

3

1    RESPONSE TO STATEMENT NO.9:

2    Plaintiff object to this fact on the grounds that is not supported by

3  any reliable evidence.

4    STATEMENT NO.10:

5    Given Plaintiff's complaints of depression,Dr.Braun made the medical

6  decision to follow-up with him every thirty(30) days.(Braun dec.,¶ 4.)

7    RESPONSE TO STATEMENT NO.10:

8    Plaintiff admit  that Dr.Braun  elected his  medical decision to follow-

9  up with him every thirty(30) days instead of the  ninety(90) days as required by

10  the  CDCR's policy in the early 2012,it appears that Dr.Braun have more choices,

11  to treat plaintiff's mental health condition.(Gomez dec.,¶ 8.)

12    STATEMENT NO.11:

13    Dr.Braun saw Plaintiff on January 30,2012,at which time he complained that

14  he had not seen a psychiatrist since their previous visit. He told Dr.Braun that

15  he was still feeling depressed.(Braun dec.,¶ 4.)

16    RESPONSE TO STATEMENT NO.11:

17    Plaintiff admit that  Dr.Braun saw him on January 30,2012,and he admit

18  that he told Dr.Braun that he had not seen the psychiatrist,and that he was still

19  feeling depressed. (Gomez dec.,¶ 9 .)

20    STATEMENT NO.12:

21    On January 30,2012,Dr.Braun again made a referral for Plaintiff to see a

22  psychiatrist by both including it in his visit notes and contacting the scheduler

23  after the visit to specifically request the referral.(Braun dec.,¶ 4.)

24    RESPONSE TO STATEMENT NO.12:

25    Plaintiff admit this statement in part,specifically he admit the portion

26  stating:On January 30,2012,Dr.Braun again made a referral for Plaintiff to see a

27  psychiatrist by including it in his visit notes. Plaintiff object on hearsay

28  grounds to the portion where Dr.Braun states that he contacted the scheduler

1   After the visit to specifically request the referral as provided in Braun's dec,

2   ¶ 4. Plaintiff claim this fact is not supported by any credible evidence in the

3   record,which constitutes hearsay.( Gomez dec.,¶ 7.)

4   **STATEMENT NO.13:**

5   Dr.Braun saw Plaintiff again on February 21,2012. At that visit,Plaintiff

6   claimed that he still had ongoing depression,but had not seen a psychiatrist.

7   (Braun dec.,¶ 5.)

8   **RESPONSE TO STATEMENT NO.13:**

9   Plaintiff admit the fact that he saw Dr.Braun on February 21,2012. He also

10   admit that he told Dr.Braun about his ongoing depression,and that he had not

11   seen a psychiatrist. (Gomez dec.,¶ 10.)

12   **STATEMENT NO.14:**

13   Dr. Braun was frustated that despite his attempts to get Plaintiff an

14   appointment with a psychiatrist,he had not received the appointment.(Braun dec.,

15   ¶ 5.)

16   **RESPONSE TO STATEMENT NO.14:**

17   Plaintiff object to the fact that Dr.Braun was frustated that despite his

18   attempts to get Plaintiff an appointment with a psychiatrist,he had not received

19   the appointment. There is no evidence that Dr.Braun was in fact frustrated,if he

20   was so,this fact is irrelevant and it cannot be admitted at trial. (Gomez dec.,¶ 11.)

21

22   **STATEMENT NO.15:**

23   On February 21,2012,Dr.Braun referred Plaintiff to a  psychiatrist by

24   including the referral in his notes and contacting the scheduler.(Braun dec.,¶ 5)

25   **RESPONSE TO STATEMENT NO.15:**

26   Plaintiff admit this statement in part,specifically this portion:

27   On February 21,2012,Dr.Braun referred Plaintiff to a psychiatrist by

28   including the referral in his notes.However,Plaintiff object to the portion that

1   States: And contacting the scheduler.(Braun dec.,¶ 5.) Plaintiff claim that this

2   fact cannot be admitted, instead, he object on hearsay grounds, because Dr.Braun

3   did not provided any evidence proving that he contacted the scheduler as stated,

4   Therefore, this statement constitutes hearsay. (Gomez dec.,¶ 7.)

5       **STATEMENT NO.16:**

6       On February 27,2012,Plaintiff was seen by one of the prison's contract

7   psychiatrists,Dr.Majumdar.(Braun dec.,¶ 6.)

8       **RESPONSE TO STATEMENT NO.16:**

9       Plaintiff admit this statement.

10      **STATEMENT NO.17:**

11      Dr. Braun had no control or influence over the referrals to psychiatry. As

12  a clinician psychologist,all he could do what make the referral and follow-up

13  with the patient to counsel him about his mental health issues.(Braun dec.,¶ 7.)

14      **RESPONSE TO STATEMENT NO.17:**

15      Plaintiff  admit this statement in part,specifically he admit the portion

16  stating: Dr.Braun had no control over the referrals to psychiatry. Plaintiff,

17  object to the part stating: Or influence over the referrals. Plaintiff claim,that

18  Dr. Braun as a clinician was obligated under the Eighth Amendment of the United

19  States Constitution to take additional steps to ensure that plaintiff been seen

20  by the psychiatry as soon as possible to prescribe him his anti-depressant

21  medications,to prevent a possible suicide attempt,due that plaintiff committed

22  suicide attempts in the past.(See Gomez dec.,¶ 6.)

23      **STATEMENT NO.18:**

24      Whether the referral was processed was up to the scheduler,over  whom Dr.

25  Braun had no control. As a clinician psychologist,Dr.Braun was at the mercy of

26  the scheduler and the contract psychiatrist.(Braun dec.,¶¶ 7-8.)

27      **RESPONSE TO STATEMENT NO.18:**

28      Plaintiff admit this statement in part,specifically he admit the portion

1   stating that Dr. Braun had not control over the scheduler. However, Plaintiff

2   deny that Dr. Braun was at the mercy of the scheduler and the contract psychiat-

3   rist as provided by him. Instead, Plaintiff claim that as clinician psychologist

4   Dr. Braun could do much more to help him and   make sure whether or not the

5   first, second or third referral was processed by contacting the scheduler's

6   supervisor or by contacting superior staff. However, he never attempted to take

7   addititional steps to ensure Plaintiff was seen by the psychiatrist ASAP to pres-

8   cribe him, his anti-depressant medication despite Dr. Braun knew in his mind

9   that Plaintiff suffers a mental health condition, with prior suicide attempts

10  in accordance to his medical records. (Gomez dec.,¶ 8.)

11      STATEMENT NO. 19:

12      The contract psychiatrist were not CDCR employees and typically worked

13  only on weekends. (Braun dec.,8.)

14      RESPONSE TO STATEMENT NO.19:

15      Plaintiff deny this statement in full, because he alleges that since the

16  contract psychiatrist were contracted for CDCR, is because they worked for them,

17  regarding the fact that they were required to work the weekends only. Dr. Braun

18  is not submitting evidence to support this fact. Therefore, Plaintiff object to

19  this statement on lack of foundation.

20      STATEMENT NO. 20:

21      The contract psychiatrist would see 40-50 patients for day, and there were

22  generally far more than 100 patients per weekend who need treatment.(Braun dec.,¶ 8.)

23      RESPONSE TO STATEMENT NO. 20:

24      Plaintiff object to this statement on hearsay grounds, because there is no

25  evidence in this record supporting this fact.

26      STATEMENT NO. 21:

27      Dr. Braun does not know why Plaintiff was unable to see a psychiatrist

28  until February 27th, even though Dr. Braun made three referrals  for him to see one.

7

1 (Braun dec., ¶ 8.).

2     **RESPONSE TO STATEMENT NO.21:**

3     Plaintiff deny this statement in full. Instead he claim that there is

4 ample amount of evidence in the record to support a conclusion that Dr. Braun

5 was deliberate indifferent to Plaintiff's mental health needs, by failing to take

6 additional steps to ensure Plaintiff was seen by Dr. Majumdar ASAP to prescribe

7 him his anti-depressant medications due that Plaintiff was complained for this

8 medication for about two months. ( See Exhibits B,E and F.)

9     **STATEMENT NO.22:**

10     The prison had a Mental Health Crisis Bed (MHCB) located within the

11 correctional Treatment Center (CTC).(Braun dec., ¶ 9.)

12     **RESPONSE TO STATEMENT NO.22:**

13     Plaintiff admit this statement

14     **STATEMENT NO.23:**

15     The standard for an involuntary commitment to the MHCB is whether the

16 patient poses a danger to himself and/or others,or has a grave disability. The

17 standard is the same as that contained within the Lanterman-Petris-Short Act (Cal.

18 Welf.& Inst.Code § 5150.) (Braun dec., ¶ 9.)

19     **RESPONSE TO STATEMENT NO.23:**

20     Admited.

21     **STATEMENT NO.24:**

22     Dr.Braun could not commit a patient to the MHCB without probable cause,

23 and determining probable cause for this purpose is discretionary.(Braun dec., ¶ 9)

24     **RESPONSE TO STATEMENT NO.24:**

25     Plaintiff object this statement. ( Gomez dec., ¶¶ 12,13.)

26     **STATEMENT NO.25:**

27     Based on his clinical experience and medical training,Dr.Braun's medical

28 opinion was that Plaintiff did not pose a danger to himself between January 3,2012

1   And February 27,2012,nor was he gravely disabled to justify an involuntary

2   commitment.(Braun dec.,¶ 9.)

3   **RESPONSE TO STATEMENT NO.25:**

4   Plaintiff deny this statement in full on the basis that his claims that

5   are contained in his complaint are no based on the grounds that he wanted to be

6   commited in the MHCB. Plaintiff's claims are based on the grounds that Dr.Braun

7   was deliberately indifferent  by failing to expedite the referral for Plaintiff's

8   appointment with the psychiatrist to prescribe him his anti-depressant medication

9   and that the psychiatrist's improperly two months delay in prescribe Plaintiff's

10  mental health treatment was harmfull,and resulted in a further significant

11  suicide attempt .( See Exhibit D.) , ( Gomez dec.,¶¶  12,13.)

12  **STATEMENT NO.26:**

13  Dr. Braun had no involvement in creating the CDCR's mental health policies

14  at High Desrt.(Braun dec.,¶ 10.)

15  **RESPONSE TO STATEMENT NO.26:**

16  Plaintiff admit this fact.

17  **STATEMENT NO.27:**

18  Dr. Braun had no choice but to adhere to CDCR's policies and procedures.

19  (Braun dec.,¶ 10.)

20  **RESPONSE TO STATEMENT NO.27:**

21  Plaintiff deny the statements provided by Dr. Braun in SSUF No.27 as well

22  the statements provided in Braun dec.,¶ 10. Plaintiff claim that Dr. Braun in fact

23  had more choices to expedite the referral for Plaintiff's appointment with the

24  psychiatrist to prescribe him his anti-depressant medication and prevent the

25  significant suicide attempt that Plaintiff was exposed. Plaintiff claim,since

26  Dr. Braun made the medical decision to follow-up with Plaintiff every thirty(30)

27  days as provided in SSUF No.10,see also Braun dec.,¶  4, even when according to

28  Dr. Braun the policies of High Desert in the early 2012 time frame was to

1  Follow-up with patients every ninety(90) days. However in this situation he made
2  the medical decision to follow-up with Plaintiff every thirty(30) days,which is
3  suggesting that Dr. Braun as a clinician psychologist,had multiple choices to do
4  in order to expedite Plaintiff's mental health treatment to prevent the suicide
5  attempt occurred in February 29,2012 due to the lack of medications that
6  Plaintiff was exposed. (See Gomez dec.,¶ 8 .)

7       **STATEMENT NO.28:**

8       Dr. Braun was not  "deliberately indifferent"  to Plaintiff's medical
9  needs. (Braun dec.,¶ 10.)

10      **RESPONSE TO STATEMENT NO.28:**

11      Plaintiff deny that Dr. Braun was not deliberately indifferent to his
12 mental health needs as provided in this statement and Braun dec.,¶ 10. Instead,
13 he claim that Dr. Braun was deliberately indifferent to his mental health needs
14 for the reasons discussed in Plaintiff's complaint.(See Exhibit G.). (Gomez dec.,
15 ¶ 6.)

16      **STATEMENT NO.29:**

17      Dr. Braun gave Plaintiff all of the treatment that he deemed was
18 medically necessary for his depression.(Braun dec.,¶ 10.)

19      **RESPONSE TO STATEMENT NO.29:**

20      Plaintiff deny that he received from Dr. Braun all of the treatment that
21 he deemed was medically necessary for his depression as provided in this statement
22 and  Braun dec.,¶ 10. Because in every encounter that Plaintiff had with Dr.Braun
23 his complaint was for medication,that Dr. Braun did not prescribed. Dr. Braun did
24 not take additional steps to ensure that Plaintiff receive his medication ASAP in
25 order to prevent a suicide attempt due that Plaintiff had prior history of suicide
26 attempts in the past.( Gomez dec., ¶ 13.)  All that Dr. Braun could do  what
27 make the referral and counsel Plaintiff about his mental health issues every 30
28 days as stated in Defendant's SSUF No.17,and Braun dec.,¶ 7.)

1     Issue No.2: Dr. Majumdar is not liable for deliberate indifference.

2     RESPONSE TO ISSUE NO.2:

3         Plaintiff deny that Dr. Majumdar is not liable for deliberate indiffe-

4     rence to his mental health needs. Instead,he claim that Dr. Majumdar's two months

5     delay in seen Plaintiff to prescribe him,his anti-depressant medication,

6     constitutes deliberate indifference under the Eight Amendment. Therefore,Dr.

7     Majumdar is liable under 42 U.S.C. § 1983, because the failure to prescribe

8     Plaintiff's anti-depressant on a reasonable time, resulted in Plaintiff's further

9     significant suicide attempt. If Plaintiff had not been discovered,he would have

10    died. (See Gomez dec.,14.).

11        **FACTS**

12        STATEMENT NO.30:

13        Dr.Majumdar earned a Bachelor of Arts degree from Oberlin College in

14    2002. He earned a Doctor of Medicine degree from Ross University School of

15    Medicine in 2006. (Majumdar dec.,¶ 2.)

16        RESPONSE TO STATEMENT NO.30:

17        Plaintiff admit this fact as provided by Dr. Majumdar

18        STATEMENT NO. 31:

19        Dr. Majumdar is board certified in Psychiatry and Neurology,as well as

20    Addiction Medicine. (Majumdar dec.,¶ 2.)

21        RESPONSE TO STATEMENT NO.31:

22        Plaintiff admit this statement provided by Dr. Majumdar.

23        STATEMENT NO.32:

24        Dr. Majumdar is licensed to practice medicine in California and

25    Michigan.(Majumdar dec.,¶ 2.)

26        **RESPONSE TO STATEMENT NO.32:**

27        Admitted.

28

11

**STATEMENT NO.33:**

Dr. Majumdar has significant clinical experience dealing with patients who exhibit suicidal ideation and depression, and has been trained to recognize the symptoms of someone who poses a risk to himself and/or others.(Majumdar dec.,¶ 2.)

**RESPONSE TO STATEMENT NO.33:**

Admitted.(See Gomez dec.,¶ 15.).

**STATEMENT NO.34:**

Dr. Majumdar treated Plaintiff on February 27,2012,at which time Plaintiff complained of feeling depressed. (Majumdar dec.,¶ 3.)

**RESPONSE TO STATEMENT NO. 34:**

Admitted.(See Gomez dec.,¶ 16.)

**STATEMENT NO.35:**

Plaintiff told Dr. Majumdar that he had trouble with sleep and appetite, but denied any suicidality,homicidality,or psychotic symptoms.(Majumdar dec.,¶ 3)

**RESPONSE TO STATEMENT NO.35:**

Plaintiff admit this incomplete statement provided by Dr. Majumdar. ( Gomez dec.,¶¶ 16,17.).

**STATEMENT NO.36:**

In Dr. Majumdar's medical opinion,Plaintiff's depression could be alleviated by restarting his prior prescription for Mirtazapine 30 mg, which is a common anti-depressant. (Majumdar dec.,¶ 3.)

**RESPONSE TO STATEMENT NO.36:**

Admitted, however he restarted Mirtazapine 2 months late.(Gomez dec.,¶ 14.).

**STATEMENT NO.37:**

In the timeframe of the incidents alleged in Plaintiff's lawsuit, contract psychiatrists did not see referral notices unless they were attached to the patient's chart on the day of the scheduled visit.(Majumdar dec.,¶ 4.)

**RESPONSE TO STATEMENT NO.37:**

Plaintiff object to this statement for lack of foundation, Dr. Majumdar is failing to include supporting evidence supporting this fact. Therefore, this fact cannot be admitted as true for lack of foundation.

**STATEMENT NO.38:**

Dr. Majumdar did not receive any referral information prior to the date of the scheduled visit, so he had no way of knowing when a patient was referred to his care. (Majumdar dec., ¶ 4.)

**RESPONSE TO STATEMENT NO.38:**

Plaintiff object to this fact on the basis that Dr. Majumdar has no provided evidence to support this fact. Therefore, this fact cannot admitted as true because its lack of foundation.

**STATEMENT NO.39:**

As a contractor, Dr. Majumdar simply came and saw whomever was scheduled for him that day. (Majumdar dec., ¶ 4.)

**RESPONSE TO STATEMENT NO.39:**

Plaintiff object to this statement because no evidence is supporting this fact.

**STATEMENT NO.40:**

Dr. Majumdar did not intentionally or deliberately avoid treating Plaintiff nor did he contribute to the delay in Plaintiff's medical visit with Dr. Majumdar. (Majumdar dec., ¶ 4.)

**RESPONSE TO STATEMENT NO.40:**

Plaintiff deny this fact, he claim that there is evidence in the record that suggest that Dr. Majumdar intentionally or deliberately avoid treating Plaintiff. He claim that Dr. Majumdar directly contributed to the two months delay in prescribing Plaintiff's anti-depressant medication just because he involuntary refused to take his medication about three times in the past. (Gomez dec., ¶ 18.)

13

1     STATEMENT NO.41:

2     Mirtazapine 30 mg is a standard anti-depressant. (Majumdar dec.,¶ 5.)

3     **RESPONSE TO STATEMENT NO.41:**

4     Plaintiff admit this fact.

5     STATEMENT NO.42:

6     The medical community recognizes that doctors do not know if an anti-

7     depressant will be effective for someone until the patient has been on a

8     sufficient doses for at least eight weeks. This is because the immediate effect

9     an anti-depressant has, such as raising serotonin levels, leads to downstream

10    effects that treat the symptoms, such as reducing stress hormones or their

11    effects. (Majumdar dec.,¶ 5.)

12        RESPONSE TO STATEMENT NO.42:

13        Plaintiff object to this statement on the grounds that this would be

14    legitimate subject for expert opinion. Dr. Majumdar is no offering an expert

15    opinion to support this fact. Therefore,it  cannot be admitted as true.

16

17        STATEMENT NO.43:

18        Some patients may see benefits sooner,but for others  it might have no

19    noticeable  benefit before eight weeks of consistent dosing and then suddenly

20    feel relief after eight weeks. (Majumdar dec.,¶ 5.)

21        RESPONSE TO STATEMENT NO.43:

22        Plaintiff admit this statement in part,specifically the portion: Some

23    patients may see benefits sooner. Because in Plaintiff's case, when he takes

24    mental health treatment,the benefit occur in the first week,which is very sooner,

25    Plaintiff deny the rest of the statement.(Gomez dec.,¶ 19.)

26        STATEMENT NO.44:

27        The prison had a Mental Health Crisis Bed (MHCB) located within the

28    Correctional Treatment Center (CTC).(Majumdar dec.,¶ 6.)

14

1    RESPONSE TO STATEMENT NO.44:

2    Admitted.

3    STATEMENT NO. 45:

4    The standard for an involuntary commitment to the MHCB is whether the

5    patient poses a danger to himself and/or others, or has a grave disability. The

6    standard is the same as that contained within the Lanterman-Petris-Short Act,

7    (Cal. Welf. & Inst. Code § 5150.) (Majumdar dec.,¶ 6.)

8    RESPONSE TO STATEMENT NO.45:

9    Admitted.

10   STATEMENT NO.46:

11   Dr. Majumdar could not commit a patient to the MHCB without probable

12   cause, and determining probable cause for this purpose is discretionary.

13   (Majumdar dec.,¶ 6.)

14   RESPONSE TO STATEMENT NO.46:

15   Admitted.(Gomez dec.,¶ 12.)

16   STATEMENT NO.47:

17   Based on Dr. Majumdar's clinical experience and medical training, his

18   medical opinion was that Plaintiff did not pose a danger to himself on February

19   27,2012, nor was he gravely disabled to justify an involuntary commitment.

20   (Majumdar dec.,¶ 6.)

21   RESPONSE TO STATEMENT NO.47:

22   Plaintiff deny this statement if full on the basis that Dr. Majumdar has

23   failed to recognize that Plaintiff was in danger to himself on February 27,2012,

24   due that he was gravely disabled suffering from a mental health condition, with

25   priors suicide attempts recorded in Plaintiff's medical record since he was in

26   Santa Clara Main Jail in santa Clara County. Plaintiff told Dr. Majumdar that he

27   was feeling  **"really,really bad. I want to go back to my old dosage. I feel really**

28   **depressed.** However,he failed to recognize this symptoms, which required the

1   Immediate attention by Dr. Majumdar in order to prevent any risk that Plaintiff

2   could be exposed. However, Dr.Majumdar failed to intervene,which resulted in

3   Plaintiff's significant suicide attempt for lack of medication.(Gomez dec.,¶ 15.)

4        **STATEMENT NO.48:**

5        Dr. Majumdar had no involvement in creating the CDCR's mental health poli-

6   cies at High Desert. (Majumdar dec.,¶ 8.)

7        **RESPONSE TO STATEMENT NO.48:**

8        Admitted.

9        **STATEMENT NO.49:**

10       Dr.Majumdar had no choice but to adhere to CDCR's policies and procedures.

11   (Majumdar dec.,¶ 8.)

12       **RESPONSE TO STATEMENT NO.49:**

13       Plaintiff deny this statement provided by Dr. Majumdar. He claim that

14   the choice that Dr. Majumdar had was to prevent Plaintiff's suicide attempt  by

15   prescribing him his anti-depressant medication on a reasonable time. Instead,he

16   waited almost  two months to meet Plaintiff to prescribe him his medication. This

17   time was unreasonable late,which resulted in Plaintiff's further suicide attemp.

18   (Gomez dec., ¶ 20.)

19       **STATEMENT NO.50:**

20       At no time was Dr. Majumdar "deliberately indifferent" to Plaintiff's

21   medical needs.(Majumdar dec.,¶ 8.)

22       **RESPONSE TO STATEMENT NO.50:**

23       Plaintiff deny this statement in full on the basis that All the time

24   Dr. Majumdar was deliberately indifferent to Plaintiff's medical needs,by failing

25   to met him on a reasonable time to prescribe him his anti-depressant medication,

26   according to the record Dr. Braun first refferal to Dr. Majumdar for Plaintiff's

27   appointment was in January 3,2012. ( See Exhibit B. ),  However,Dr. Majumdar

28   met Plaintiff on February 27,2012. ( See Exhibit H. ),   almost two moths

1   since Plaintiff complained for first time that he needed his anti-depressant meds

2   because he was very depressed. However, the time when Dr. Majumdar showed up to

3   prescribe Plaintiff's mental health treatment, was unreasonable late. Accordingly

4   is debatable issue why Dr. Majumdar delayed to meet with Plaintiff to prescribe

5   his anti-depressant medication. Plaintiff claim that there is evidence in the

6   record suggesting that Dr. Majumdar had possible delayed Plaintiff's mental

7   health appointment intentionally because he found out that Plaintiff apparently

8   had refused to take his medication a few times prior to January 3,2012. (Exhibit

9   H, ¶ 5.). Therefore, the failure of Dr. Majumdar to meet Plaintiff for his

10  psychiatry appointment to prescribe him, his anti-depressant medication in a

11  reasonable time, amount to deliberate indifference under the Eight Amendment, and

12  resulted in Plaintiff's further significant suicide attempt, which caused him

13  pain, suffering, physical injury and post-traumatic stress disorder. (Gomez dec.,

14  ¶ 21.).

15       STATEMENT NO. 51:

16       Dr. Majumdar gave Plaintiff all of the treatment that he deemed  was

17  medically necessary for his depression. (Majumdar dec.,¶ 8.)

18       RESPONSE TO STATEMENT NO.51:

19       Plaintiff admit the fact that Dr. Majumdar restarted Mirtazapine 30 mg

20  for his depression on February 27,2012. However, the debatable issue here is why

21  Dr. Majumdar delayed Plaintiff's treatment for almost two months. He claim that

22  the time when Dr. Majumdar finally showed up to prescribe him his anti-depressant

23  medication, was unreasonable late, because  Plaintiff's plan to hurt himself with

24  the bed sheet was in progress. However, Plaintiff claim that if Dr. Majumdar had

25  prescribed him the anti-depressant medication at least one week prior to

26  February 27,2012, is reasonable probable that Plaintiff's suicide attempt using

27  the bed sheet had never occurred, but occurred due to lack of medication.

28  Therefore Dr. Majumdar gave Plaintiff's treatment late.

17

1    Dated: February 1, 2018                              Respectfully submitted,

2

3

4

5                                                         Nexis René Gomez
                                                          (AF-7364)
6                                                         In Pro-Per

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        18

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

NEXIS RENE GOMEZ,
_____
                    Plaintiff,

v.                                          Case Number: 2:15-cv-2523-KJN

D. BRAUN, et al.,
_____
                    Defendants.
                                            PROOF OF SERVICE

_____ /

I hereby certify that on      FEBRUARY 1, 2018, _____, I served a copy

of the attached   REPLY TO DEFENDANTS' STATEMENTS OF UNDISPUTED FACTS        ,

by placing a copy in a postage paid envelope addressed to the person(s) hereinafter

listed, by depositing said envelope in the United States Mail at

SOLEDAD STATE PRISON CTF, _____ :

(List Name and Address of Each
Defendant or Attorney Served)

1. Clerk of the U.S. District Court        2.  Office of the Attorney General
   Eastern District of California              1300 I Street, Suite 125
   501 I Street, Suite 4-200                    P.O. Box 944255
   Sacramento, CA 95814-2322                    Sacramento, CA 94244-2550

I declare under penalty of perjury that the foregoing is true and correct.

_____
(Signature of Person Completing Service)

1 | Nexis Rene Gomez
AF-7364
2 | Soledad State Prison CTF
P.O. Box 705
3 | Soledad, CA 93960
In Pro-Per

ORIGINAL

4

5

6

7

8 | IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
9 | SACRAMENTO DIVISION

10

11

12

13

14 | NEXIS RENE GOMEZ,                    No.: 2:15-cv-2523-KJN

15 |                 Plaintiff,          DECLARATION OF PLAINTIFF
                                        NEXIS RENE GOMEZ IN SUPPORT
16 |                                     OF HIS REPLY TO DEFENDANTS'
                                        MOTION FOR SUMMARY JUDGMENT
17 |         v.

18

19 |                                     Judge:      The Honorable Kendall
                                                     J. Newman
20 | D. BRAUN, et al.,
                                        Action Filed: February 25, 2016
21 |                 Defendants.

22

23

24 |         I, NEXIS RENE GOMEZ, declare as follows:

25 |    1.  I am a prisoner in Soledad State Prison CTF since August 10,2016.  On or

26 | about March 16,2011, I arrived to High Desert State Prison from San Quentin State

27 | prison where I was stable receiving treatment for a severe depression disorder

28 | that I suffer since I was 15 or 16 years old.

1

2.   At the time when I arrived to High Desert State Prison, I had in my medical record a history of prior suicide attempts, one of them was recorded in camera when I was an inmate in Santa Clara Main Jail. (See Exhibit A.).

3.   Prior to January 3, 2012, I was feeling very depressed in High Desert State Prison due to multiple stressors, then I decided to seek for mental health care by filing a medical request slip also called CDC 7362, as I testified in my deposition.

4.   In January 3, 2012, I met with Dr. Braun for therapeutic contact, I reported him that I feel low having depression throughout the day, and that I was instable over the past few months. I expressed him my wish to start my mental health treatment because I was very depressed, and I had tried to choke myself out with a towel a few days ago (See Exhibit B.), and including the week prior to January 3, 2012, as I testified in my deposition.

5.   On January 3, 2012, I reported Dr. Braun that I tried to choke myself out using a towel around my neck. When he asked me the question Do you want to hurt yourself?, in that moment I responded him no, because I thought that he was talking about the time when I was face to face with him, However, when I returned to my cell, the suicide thoughts were racing in my mind and I tried to choke myself out again using a towel as I testified in my deposition.

6.   As a prisoner with a severe mental health condition, I was at the mercy of Dr. Braun and Dr. Majumdar. If Dr. Braun was not able to prescribe my anti-depressant medication, he could take additional steps to make sure that I receive an appointment with Dr. Majumdar for my mental health treatment due that I was in danger to myself, and the possibility that I will commit another suicide attempt existed due to the lack of medication to control my severe mental health condition. However, Dr. Braun ignored the risk that I was exposed and he failed to take additional steps to get Plaintiff an appointment with Dr. Majumdar for medication complaint. He was deliberate indifferent.

2

7.  Dr. Braun never informed me who or what caused the delay of almost two months in receiving an appointment with Dr. Majumdar for my medication complaint, he never informed me that he contacted the supposed scheduler regarding my appointment with Dr. Majumdar, during our encounters he just told me:  " I going to schedule you with the psychiatrist" , as he wrote in his notes. ( See Exhibits B, E,AND F.)

8.  According to the record, Dr. Braun stated that CDCR's policy in the early 2012 time frame  was  to follow-up with  patients every  ninety (90) days, However, due to Plaintiff's complaints of depression, Dr. Braun made the medical decision to follow-up with him every thirty (30) days, instead of  ninety (90) days as required by CDCR's policy. (See Exhibit C,¶ 4.), Plaintiff argues that these statements provided by Dr. Braun are contradictory, and suggest that he was not strictly subjected to the CDCR's policy in the early 2012. It appears that as a mental health doctor, Dr. Braun had more choices to explore in order to prevent Plaintiff's suicide attempt occurred in February 29, 2012, which almost ended with his life. He could have contacted his superior staff to check whats going on with the delay in providing Plaintiff his anti-depressant medication. But he did not do it so, instead he allowed Plaintiff to suffer his depression for almost two months, and tired of been waiting for his medication Plaintiff decided to commit a significant suicide attempt which almost ended with his life. ( See, Exhibit D.)

9.  On January 30, 2012, I met Dr. Braun again for therapeutic contact and medication complaint, at which time I reported him that I had not seen a psychiatrist since our previous encounter (27) days ago. I reported him that I need to go  back on my medication because I was feeling down and depressed all the time.(See Exhibit E.), during this encounter I recall that I reported him that I tried to choke myself out again using a towel, including the night  previous to this encounter. However he did not wrote the information in his notes.

10.  On February 21, 2012, I met Dr. Braun again for therapeutic contact. At that visit I continued complaining of issues related to depression, agitation, and troubling sleeping, I reported him that I need medication ( See Exhibit F.)

11.  At not time I saw Dr. Braun worry or frustrated in trying to get me an appointment with Dr. Majumdar.

12.  Plaintiff's primary complaint between January 3, 2012 and February 29, 2012, was for the need of medication as described in his First Amended Complaint ( Exhibit G. ), the denial of his treatment resulted in a further significant suicide attempt that almost ended with his life.

13.  Between January 3 and February 21,2012, I met with Dr. Braun for the specific purpose to personally request him my anti-depressant medication that I used to take in order to control my depression disorder that I suffer since I was about 15 or 16 years old. During the three encounters that Dr. Braun had with me, I always told him that I need my medications as soon as possible. Dr Braun just counseled me during these three visits and told me that he had made three writen request for an appointment with the psychiatrist to discuss the issue regarding my medication complaint. Dr. Majumdar is the psychiatrist that according to Dr. Braun notes I have to see ASAP regarding my medication complaint. However, it was not until February 27, 2012, when I finally met Dr. Majumdar, almost two months since Dr. Braun completed the first written referral in his notes. However, the time when Dr. Majumdar showed up to prescribe me my mental health treatment, was unreasonable late, because I was very, very depressed as I reported him the day of the encounter. ( See Exhibit H, ¶ 1.).

14.  Plaintiff argues that Dr. Majumdar  is liable for deliberate indifference by intentionally failing to prescribe Plaintiff's anti-depression medication on a reasonable time. Plaintiff was complaining for his medications for about two months, and the waiting for Dr. Majumdar to prescribe his

4

treatment resulted in Plaintiff's further significant suicide attempt occurred in February 29,2012. If Plaintiff had not been discovered that day by CDCR's staff, he would have died.

15.  Dr. majumdar may have significant clinic experience dealing with patients who exhibits suicide ideations and depression, However, on February 27,2012, he failed to recognize Plaintiff's symptoms that he may be in danger to himself when he provided him these statements: I haven't taken my meds for about 3 months and I feel really, really bad, I want to go back to my old dosage. I feel really depressed.(Exhibit H, ¶ 1.). Plaintiff claim that Dr. Majumdar failed to recognize that he was really depressed that day, and that he was capable of commit suicide attempt like he tried in the past. However, Dr. Majumdar ignored these facts and failed to reffer him for an emergency mental health evaluation. Had Dr. Majumdar reffered Plaintiff for an emergency mental health evaluation as required when a person poses the risk of harm himself, is reasonable probable that the staff conducting such evaluation, would have placed him in administrative segregation unit to evaluate his condition, and this action should have prevented the suicide attempt occurred on February 29,2012.

16.  On February 27,2012, almost two months since I reported Dr. Braun my need for medication, I finally met Dr. Majumdar. During the encounter I reported him that I have not taken my meds for about 3 months. I told him that I feel really, really bad due to the lack of medication. (Exhibit H,¶ 1.), I recall that day I was really depressed and in my mind I had a plan to hurt myself with the bed sheet for about 3 weeks for the lack of medication.

17.  When Dr. Majumdar asked me the question. Do you want to hurt yourself I responded him, no, because in my understanding, I thought he was talking about the moment when I was with him face to face. However, when I went back to my cell , the suicide thoughts were racing in my mind all day and night, and once I was lying down in my bunk in cell 208. I used to choke myself out

using a towel because I thought with the towel could be more easy to execute my plan than with the bed sheet. So, I tried to choke myself with the towel for 3 more days on February 26,27 and 28. But every attempt with the towel had failed, then I decided to try the bed sheet on February 29,2012.

18.    On February 27,2012, when I met Dr. Majumdar for medications complaints, he looked agitated and tense when he was talking to me, he told me that he is going to restart Mirtazapine 30 mg, and in a loud tone of voice, he indicated me and said, if you don't take this pills, we will going to discontinue you the treatment. If a pattern of meds refusal is seen, I will assess you for need to continue. (Exhibit H, ¶ 5.), it appears that Dr. Majumdar intentionally delayed Plaintiff's treatment due that Plaintiff had involuntary refused 3 times his treatment in the past.

19.    I have recieved anti-depressant treatment in the past, and the benefits of the treatment occurred in the first week, which is very sooner. For example when I was in Corcoran State Prison in 05-24-2012, I told my clinician Dr. R. Severns, LCSW, that I was depressed that day, that my life doesn't have any sense, and that I have not hope and nothing to live for. (See Exhibit I.),However, on 05-31-2012, a week later I met Dr. Severns, LCSW again, during the encounter I reported him that my week has been allright and I told him that my meds were working a little better after a week. (See Exhibit J.). On 06-07-2012, I met Dr. Severns, LCSW again, during this encounter I reported him that everything is O.K. I'm doing a lot better. I told him that my meds were working good within two weeks. (See Exhibit K.), all these evidence is indicating that some patients like Plaintiff, may see the benefit of anti-depressants sooner, because according Dr. Severns' notes, Plaintiff feel relief after one or two weeks since he started the treatment, which strongly suggest that if Dr. Majumdar could have prescribed Plaintiff's anti-depressant at least 1 week prior to 02-29-2012, is reasonable probable that the suicide attempt using the bed sheet never had occurred.

20.   As a psychiatrist Dr. Majumdar was obligated under the 8 th Amendment, no under the CDCR's policies and procedures to effectivelly provide Plaintiff an adequate and necessary medical care by prescribing him, his anti-depressant medications in a reasonable time. Two months in delaying Plaintiff's treatment is unreasonable time under any policy and procedure, and under the 8 th Amendment thus, constitutes  deliberate indifference. Is debatable issue why Dr. Majumdar delayed Plaintiff's mental health treatment for almost two months, such delay resulted in Plaintiff's further suicide attempt occurred in February 29, 2012, which almost ended with his life. If Plaintiff had not been discovered that day by CDCR's staff, he would have died.

21.   On February 29, 2012, I was tired of been waiting for my anti-depressant medications. However, a plan to hurt myself using a bed sheet was progressing so fast, then that morning I decided to execute my plan. It was between 6 and 8 a.m when we used to walk for breakfast. That morning I went to get my breakfast with the rest of the inmate population as I used to do it. But as part of my plan I did not walked all the way down to breakfast, instead I came back to the building where I was haused with the excuse that I had forgotten my INMATE I.D. card. I asked the officer in the control tower to open my door in cell 208, the officer opened the door for me, when I suddenly grabed the bed sheet that was placed in my bunk. Immediately I tied the sheet to the second tier handrails, and I tied  my neck with the other extreme of the sheet. When everything was tied, I recall jumping from the second tier, before I jumped I could see officer Brown yelling the control tower officer, " shoot this motherfucker." but I was not shooted and then I immediatelly jumped over the second tier. I do not know what happened when I jumped because I was unconscious for a few minutes. But then I woke up and seen  Correctional Officer Brown and his partner a female Officer DelaGarza. In a few minutes the medical unit of the prison and the investigative unit arrived, they asked me questions and they took photographs of the scene.

7

1  Then I was placed on a strecher and taken to the prison's hospital. I recall that

2  day I've seen a doctor in that hospital who examined me, then in a few minutes

3  later I was placed in a rubber cell, naked with a very cold temperature and

4  without matress and without a toilet. During I was in that cell I remember that

5  I could clearly see a video camera recording every moment that I was suffering in

6  that cell. On March 1,2012, I was discharged from the rubber cell and placed in a

7  very different unit, which I believe is the Mental Health Crisis Bed (MHCB),

8  (see Exhibit L.), where I received mental health treatment for about 10 days.

9  After 10 days I was discharged from that unit and placed in the general

10  population.(see Exhibit M.). On or about March 2012, I was transferred to  an

11  Enhanced Outpatient Program Facility (E.O.P.) in Corcoran State Prison, where I

12  was housed with a lot of people suffering from severe mental health illness. In

13  that place I could see people doing crazy things every day, with the only

14  purpose to kill themselves. This scenario shocked my mind forever. I was in that

15  unit for about 1 year, and been in that unit caused me post-traumatic stress

16  disorder, I have nightmares about that place like three times every month.

17      22.  The deliberate indifference displayed by Dr. Braun and Dr. Majumdar

18  caused plaintiff's suicide attempt in February 29,2012. Plaintiff claim that if

19  Dr. Braun had taken reasonable steps to make sure plaintiff get a timely

20  psychiatrist consultation for the administration of medication, is reasonable

21  probable that the suicide attempt using the bed sheet, never had occurred.

22  Plaintiff argues that if Dr. Majumdar had prescribed him his anti-depressant

23  medication at least 1 week prior to February 29,2012, is reasonable probable that

24  the suicide attempt using the bed sheet as described by plaintiff's witness (see

25  Exhibit D.), never had occurred. Therefore, both Defendants are liable under

26  Section 42 U.S.C. § 1983, for failig to treat plaintiff severe mental health

27  illness on a reasonable time. He claim that Defendants's two months delay in

28  providing him his mental health treatment, is unreasonable under the 8th Amendment

1    I declare under penalty of perjury pursuant to the laws of the

2  United States that the foregoing declaration is true and correct. Executed on

3  February 1, 2018, in Soledad State Prison, CTF in Soledad, California.

4

5    Nexis Rene Gomez                                    (Declarant's signature)
       (Declarant)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA

NEXIS RENE GOMEZ,
_____
                    Plaintiff,

v.                                          Case Number: 2:15-cv-2523-KJN

D. BRAUN, et al.,
_____
                    Defendants.

                                            PROOF OF SERVICE

_____ /


I hereby certify that on     FEBRUARY 1, 2018,_____, I served a copy

of the attached   PLAINTIFF'S DECLARATION IN SUPPORT OF HIS REPLY
                  TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

by placing a copy in a postage paid envelope addressed to the person(s) hereinafter

listed, by depositing said envelope in the United States Mail at

SOLEDAD STATE PRISON CTF,_____:

(List Name and Address of Each
Defendant or Attorney Served)

1. Clerk of the U.S. District Court          2.  Office of the Attorney General
   Eastern District of California                1300 I Street, Suite 125
   501 I Street, Suite 4-200                      P.O. Box 944255
   Sacramento, CA 95814-2322                      Sacramento, CA 94244-2550


I declare under penalty of perjury that the foregoing is true and correct.

_____
(Signature of Person Completing Service)

# EXHIBIT

# A

1 | LAW OFFICES OF THE PUBLIC DEFENDER
MARY J. GREENWOOD, # 099728
2 | ALFRED JAY SPIELMANN, # 190186
County of Santa Clara
3 | 120 West Mission Street
San Jose, CA 95110
4 | Telephone: (408) 299-7916

**FILED**

2009 JUL 13 P 2:55

David H. Yamasaki, Clerk of the Superior Court
County of Santa Clara, California
By _____ Deputy Clerk

DIANA GUTIERREZ

5 | Attorneys for Defendant

6

7 | IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

8 | IN AND FOR THE COUNTY OF SANTA CLARA

9 | PEOPLE OF THE STATE OF CALIFORNIA, | NO. CC944457

10 | Plaintiff, | DECLARATION OF COUNSEL IN
SUPPORT OF MOTION FOR
11 | APPOINTMENT OF DOCTOR
vs. | PURSUANT TO EVIDENCE CODE
12 | SECTION 1017
NEXIS RENE GOMEZ,
13 | Defendant

14 | I, ALFRED JAY SPIELMANN, do declare:

15 | I am a Deputy Public Defender for the County of Santa Clara and assigned to represent

16 | the above-named defendant in the above-entitled action;

17 | That psychiatric information regarding the defendant is needed so that I may advise my

18 | client whether to enter or withdraw a plea based on insanity or to present a defense based on

19 | his mental or emotional condition.

20 | Defendant indicates to me that he is severely depressed.

21 | Defendant is facing a life sentence.

22 | Based upon conversations with defendant and a recent jail visit, I may have doubts

23 | regarding his competency to stand trial.

24 | I declare under penalty of perjury that the foregoing is true and correct.

25 | Executed on July 8, 2009, at San Jose, California.

26

27

28 | ALFRED JAY SPIELMANN
Deputy Public Defender

**98**

DECLARATION OF COUNSEL IN SUPPORT OF MOTION

1  LAW OFFICES OF THE PUBLIC DEFENDER
   MARY J. GREENWOOD, # 099728
2  NISREEN BAROUDI, # 227046
   County of Santa Clara
3  120 West Mission Street
   San Jose, CA 95110
4  Telephone: (408) 299-7129

5  Attorneys for Defendant



**FILED**

JUL 2 8 2010

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of California County of Santa Clara
BY _____ DEPUTY

6

7          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

8               IN AND FOR THE COUNTY OF SANTA CLARA

9

10  PEOPLE OF THE STATE OF CALIFORNIA,      NO: CC944457

11                        Plaintiff,        DEFENDANT'S MOTION TO
                                            EXCLUDE STATEMENT AS
12               vs.                        INVOLUNTARY AND IN VIOLATION
                                            OF *MIRANDA*
13  NEXIS RENE GOMEZ,

14                        Defendant         Judge: Hon. Jerome E. Brock
                                            Dept: 35
15

16  I.    **DEFENDANT WAS INCAPABLE OF PROVIDING A KNOWING AND INTELLIGENT**
17        **WAIVER OF HIS RIGHTS UNDER *MIRANDA* BECAUSE HE HAD ATTEMPTED TO**
          **COMMIT SUICIDE JUST PRIOR TO HIS INTERROGATION.**
18
19        To be valid, a waiver of one's rights under *Miranda v. Arizona* (1966) 384 US 436 must be

20  knowingly and intelligently made. *In re Schlette* (1965) 232 CA2d 407.

21        In the case at bar, it is undisputed that the defendant, just prior to providing a recorded statement

22  to Detective Horta, attempted to take his life or at least appeared to be making some sort of suicide

23  attempt. Detective Horta, in her police report, noted she was unaware of the defendant's suicide attempt

24  prior to taking his statement. The court can look to the defendant's actions and words at the time of the

    statement or confession and decide whether these factors affected his waiver. *People v. Marshall* (1990)
25  50 C3d 907, 925.

26        In the case at bar, after the Court conducts the §402 hearing, the court will have to decide

27  whether Mr. Gomez's statements post-*Miranda* are admissible. The specific issue the court should

    focus on, is whether Mr. Gomez had the capacity to waive his *Miranda* rights. If the court finds he was
28  incapable of waiving his rights due to his mental state, then the waiver is not knowing and intelligent

                                            1                                    **177**

    DEFENDANT'S MOTION TO EXCLUDE STATEMENT AS INVOLUNTARY AND IN VIOLATION OF MIRANDA

1   and is therefore invalid. Said statements could not be used by the prosecution against the defendant in

2   this criminal action.

3   **II.    DEFENDANT'S ATTEMPTED SUICIDE RENDERED HIM INCAPABLE OF FREE**

4         **OR RATIONAL CHOICE, AND THUS ANY STATEMENTS OBTAINED FROM HIM**
      **WERE INVOLUNTARY AND THEREFORE, ARE INADMISSIBLE.**

5         A statement is involuntary is it is obtained from a defendant when his abilities to reason,

6   comprehend, or resist were so disabled that he was incapable of free or rational choice. *In re Cameron*

7   (1968) 68 C2d 487, 498. To determine this issue, the "totality of the circumstances" surrounding the

8   interrogation must be considered. *In re Cameron, supra; People v. Benson* (1990) 52 C3d 754. In

9   involuntary statement violates due process (*In re Cameron, supra*) and is of doubtful reliability (*People*

10  *v. Garner* (1961) 57 C2d 473.

11        In *Colorado v. Connelly* (1986) 479 U.S. 157, the Supreme Court added the additional

12  requirement that coercive police activity is a necessary predicate to the finding that the confession

13  involuntary within the meaning of the Due Process Clause of the 14th Amendment. Under case law

14  interpreting Cal. Const. art I, §28(d), in similar contexts, U.S. Supreme Court law prevails over any

    contrary California law in this area. See *People v. May* (1988) 44 C3d 309 (federal law governs

15  admissibility of defendant's statements, not state law).

16        When a defendant challenges the voluntariness of a statement, the prosecution bears the burden

17  of proof. *People v. Lucas* (1995) 12 C4th 415, 422. The standard of proof for voluntariness and

18  *Miranda* is the federal preponderance-of-the-evidence standard. *Lego v. Twomey* (1972) 404 US 477;

    see also *People v. Markham* (1989) C3d 63, 71.

19        In *People v. Loftis* (1984) 157 Cal.App.3d 229, the California court found that in light of the

20  totality of the circumstances, the defendant's statement was not involuntary. The court considered the

21  voluntary ingestion of alcohol or drugs in determining whether a statement was voluntary, however, it

22  should be noted that this case preceded the U.S. Supreme Court case of *Colorado v. Connelly, supra*,

23  and so the court did not make a determination as to whether there was any coercive police activity.

24  Dated: July 27, 2010

25                          MARY GREENWOOD
26                          PUBLIC DEFENDER

27                          
                          NISREEN BAROUDI
28                          DEPUTY PUBLIC DEFENDER                    **178**
                                        2
    DEFENDANT'S MOTION TO EXCLUDE STATEMENT AS INVOLUNTARY AND IN VIOLATION OF MIRANDA

# EXHIBIT
# B

State of California
Interdisciplinary Progress Notes
CDCR 7230-MH (Rev. 11/11)

Department of Corrections and Rehabilitation

| DATE | TIME | COMMENTS (USE S. O. A .P. E. FORMAT) |
|---|---|---|
| 1-3-12 | 1030 | |

**SCHEDULED TIME**

**ENCOUNTER REASON**
PC Special F/U

**ENCOUNTER LOCATION**
B2

| TABE | LOC |
|---|---|
| 1.8 | CCCMS |

| OUTCOME CODE | DURATION |
|---|---|
| 1A | ~~30 min~~ 45 |

**NEXT APPOINTMENT**
Schedule PC in 20 days

**NON-ENCOUNTER TIMES**
Record Review 0755 (5)
Documentation 1340 (10)

**NOTES**
Schedule Psychiatry ASAP

**OUTCOME CODES**
COMPLETED
  1A: Standard
  1B: Cell Front
  1C: Telemedicine
  1D: Unscheduled Escort
  1E: Unscheduled Escort Telemed
REFUSED
  2A: Refused Seen
  2B: Refused Unseen
CANCELLED-Scheduling Conflict
  3A: Conflicting Ducats
  3B: LOC Change
  3E: Scheduling Error
  3G: Undetermined
CANCELLED-Custody
  4A: Modified Program
CANCELLED-Movement in Inst.
  5A: Moved to another facility
  5B: Institutional Inpatient
CANCELLED-Movement out of Institution
  6A: Out to Court
  6B: Out to Medical
  6C: Paroled/Released/Transferred
CANCELLED-Provider
  7A: Provider out of Time
  7B: Provider Unavailable
  7C: Inmate Quarantined
  7D: Treatment Space Issues

S: Met with I/M for therapeutic contact.  I/m had previously dc'd his medications in December and had reported "feeling better" throughout the month.  However, he is presently reporting that he feels low, having depression throughout the day.  He has showed some instability over the past few months and wishes to start his medications. He had reportedly tried to "choke himself out" a few weeks ago, but denied it being a suicide attempt.  Clinician discussed coping strategies with I/M and assessed for suicidal ideations or intent.

O: I/M was cooperative, appropriate, has moderate depression, no psychosis reported, no current si/intent/plan, and is taking no medications.

A: Axis I: 296.22 MDD, single episode, moderate
   Axis II:  799.9 Deferred
   GAF: 61

P:  Continue treatment approximately every 20-30 days for continuing stability. Schedule Psychiatry ASAP.

E: I/M will make appropriate referrals if in need of assistance.  I/M discussed safety plan and reported no current suicidal ideations/intent.

| INSTITUTION | HDSP | CLINICIAN | D. Braun, Psy.D. | | BED NUMBER  B2 208 |
|---|---|---|---|---|---|

| 1. Disability Code: | 2. Accommodation: | 3.Effective Communication: | NAME (LAST, FIRST), CDCR NUMBER, DOB |
|---|---|---|---|
| ☒ TABE score ≤ 4.0 | ☐ Additional Time | ☒ Repeated in own words | **Gomez, N.** |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☒ Responses to questions | |
| ☐ DPS ☐ DNH ☐ ESL | ☐ Loud ☐ Slower | ☐ Mannerisms | **AF7364** |
| ☐ DNS ☐ DDP | ☒ Basic ☐ Transcribe | | **5-25-78** |
| ☐ Not Applicable | ☐ Other* | | |
| ☐ Not reached* ☒ Reached | | | |
| 4. Comments: | | *See chrono/notes | |

Interdisciplinary Progress Notes, CDCR 7230-MH (Rev. 11/11)

Page 1 of 1

Exhibit "D"

Confidential Saved 2014-09-10T20:16:02Z

# EXHIBIT
# C

1  In May of 2003. I earned a Doctor of Psychology degree in Clinical Psychology from Regent
2  University in May of 2009. From August of 2006 until June of 2007, I worked at several
3  different locations as a clinical practica student, providing counseling services including clinical
4  assessments of individuals concerning risk of suicide and other emotional difficulties. I
5  completed a Pre-Doctoral Internship at Kaiser Permanente, Fresno, from August of 2008 to
6  August of 2009, in which I provided individual therapy, family and couples therapy, and
7  conducted psychological evaluations. I have worked as an In-Home Counsel from January of
8  2005 until June of 2008, providing comprehensive therapy services for individuals and families.
9  From September of 2009 until August of 2017, I worked as a Clinical Psychologist at both Wasco
10 State Prison and High Desert State Prison, providing comprehensive services to individuals who
11 are chronically mentally ill and/or are acutely in crisis. This included working with individuals
12 who are suicidal, homicidal, and/or gravely disabled.

13   3.   I recall Mr. Gomez. I recall providing him treatment on January 3, 2012, at which
14 time he complained of feeling depressed. He told me that he tried to "choke myself out" a few
15 weeks earlier, but denied any suicidal ideation. In my medical opinion, he needed to see a
16 psychiatrist to reinstate his prior anti-depressant medication, which I could not prescribe. He was
17 not in immediate danger of harming himself or others. I referred him to a psychiatrist by
18 including the referral in my visit notes, and by contacting the scheduler at the prison to request
19 that Mr. Gomez be seen by a psychiatrist.

20   4.   CDCR's policy in the early-2012 timeframe was to follow-up with patients every
21 ninety (90) days. Given Mr. Gomez's complaints of depression, I made the medical decision to
22 follow-up with him every thirty (30) days. I recall seeing him on January 30, 2012, at which time
23 he complained that he had not seen a psychiatrist since our previous visit. He told me that he was
24 still feeling depressed. As a result, I again made a referral for him to see a psychiatrist by both
25 including it in my visit notes and contacting the scheduler after the visit to specifically request the
26 referral.

27   5.   I saw Mr. Gomez again on February 21, 2012. At that visit, he claimed that he still
28 had ongoing depression, but had not seen a psychiatrist. I was frustrated that despite my attempts

2

# EXHIBIT
# D

1  Nexis Rene Gomez
   AF-7364
2  Soledad State Prison CTF
   P.O. Box 705
3  Soledad, CA 93960
   In Pro-Per

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF CALIFORNIA
9                   SACRAMENTO DIVISION

10

11

12

13

14  NEXIS RENE GOMEZ,              No.: 2:15-cv-2523-KJN

15                Plaintiff,

16                                 DECLARATION OF INMATE
                                   M. SOLIS, CDCR:G-62270
17         v.

18

19                                 Judge:      The Honorable Kendall
                                               J. Newman
20  D. BRAUN, et al.,
                                   Action Filed: February 25, 2016
21                Defendants.

22

23

24

25

26

27

28

I, inmate M. Solis, CDCR#:G-62270, declare as follows:

1. I am 18 years of age or older, and I am not a party in this matter.

2. I personally know inmate Gomez, CDCR#:AF-7364, since approximatelly December 2011, when we were both inmates at High Desert State Prison in Susanville.

3. Around February 29,2012, I was housed in 2 Block Unit, cell No.210. Inmate Gomez was housed in cell No.208 in the same unit.

4. On the morning of February 29,2012, I did not go to breakfast with the inmate population as I usually did due to whether conditions in the prison.

5. That morning I decided stay in my cell (210) when I suddenly heard noises which got my attention. I went to my door window to see what happened, and from there I could see inmate Gomez coming back by himself without the crowd that went to breakfast that morning.

6. Suddenly, I heard Gomez tell the officer who was in the control tower that he had forgotten his I.D. card. Gomez requested to have his cell door opened.

7. The officer in the Control Tower opened Gomez's cell No.208.

8. Then, I saw Gomez enter into his cell and coming out with some bed sheets, which he tied to the second tier handrails. Within minutes, he was hanging with the sheets wrapped around his neck. I could see he was choking.

9. Officer or CCI DelaGarza went to cut down the sheets with her knife. However, a few minutes had gone by. Gomez fell down to the first floor, I could see he was unconscious. Officer Brown and C.O. DelaGarza assisted Gomez. If Gomez had not been discovered by them, he would have died.

10. A few minutes later, the prison paramedics arrived to the scene, and were able to help Gomez to regain consciousness. He was put on a strecher and taken to the prison's medical unit. The prison investigative unit went with them.

11. What I saw is true, I am willing to voluntary declare this in this Court.

1  I declare under penalty of perjury, under the laws of California and under the

2  laws of the United States of America, that the foregoing declaration is true and

3  correct and made from my own personal knowledge. This declaration was executed

4  this 22 of January, 2018, in Soledad State Prison CIF.

5

6

7

8                                                M. Solis CDCR:G-62270

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

NEXIS RENE GOMEZ,
                    Plaintiff,

v.                                          Case Number: 2:15-cv-2523-KJN

D. BRAUN, et al.,
                    Defendants.
                                            PROOF OF SERVICE

                              /

I hereby certify that on        FEBRUARY 1, 2018,              , I served a copy

of the attached    DECLARATION OF INMATE M. SOLIS, CDCR: G-62270               ,

by placing a copy in a postage paid envelope addressed to the person(s) hereinafter

listed, by depositing said envelope in the United States Mail at

SOLEDAD STATE PRISON CTF,              :

(List Name and Address of Each
Defendant or Attorney Served)

1. Clerk of the U.S. District Court        2.  Office of the Attorney General
   Eastern District of California              1300 I Street, Suite 125
   501 I Street, Suite 4-200                   P.O. Box 944255
   Sacramento, CA 95814-2322                   Sacramento, CA 94244-2550

I declare under penalty of perjury that the foregoing is true and correct.

(Signature of Person Completing Service)

# EXHIBIT
# E

State of California
Interdisciplinary Progress Notes
CDCR 7230-MH (Rev. 11/11)

Department of Corrections and Rehabilitation

| DATE | TIME | COMMENTS (USE S. O. A. P. E. FORMAT) |
|---|---|---|
| 1-30-12 | 1045 | |

**SCHEDULED TIME**

**ENCOUNTER REASON**
PC Special F/U

**ENCOUNTER LOCATION**
B2

| TABE | LOC |
|---|---|
| 1.8 | CCCMS |

| OUTCOME CODE | DURATION |
|---|---|
| 1A | 30 min |

**NEXT APPOINTMENT**
Schedule PC in 20 days

**NON-ENCOUNTER TIMES**
Record Review 0745 (5)
Documentation 1445 (15)

**NOTES**
Schedule Psychiatry ASAP

**OUTCOME CODES**
COMPLETED
 1A: Standard
 1B: Cell Front
 1C: Telemedicine
 1D: Unscheduled Escort
 1E: Unscheduled Escort Telemed
REFUSED
 2A: Refused Seen
 2B: Refused Unseen
CANCELLED-Scheduling Conflict
 3A: Conflicting Ducats
 3B: LOC Change
 3E: Scheduling Error
 3G: Undetermined
CANCELLED-Custody
 4A: Modified Program
CANCELLED-Movement in Inst.
 5A: Moved to another facility
 5B: Institutional Inpatient
CANCELLED-Movement out of Institution
 6A: Out to Court
 6B: Out to Medical
 6C: Paroled/Released/Transferred
CANCELLED-Provider
 7A: Provider out of Time
 7B: Provider Unavailable
 7C: Inmate Quarantined
 7D: Treatment Space Issues

S: Met with I/M for therapeutic contact.  I/m had previously complained (about 4 weeks ago) that he needed to go back on medications and had been scheduled for psychiatry. However, he was never seen and continues to complain of "not feeling right.  I feel down and depressed all the time."  Clinician scheduled I/M with psychiatry again to address these concerns.  Discussed coping strategies with I/m to assist him in coping with current depression.

O:  I/M was cooperative, appropriate, has mild depression, no psychosis reported, no current si/intent/plan, adl's wnl, sleep is poor, appetite wnl, speech and thought content were clear and coherent, and wants to take medications again.

A: Axis I: 296.21 MDD, single episode, mild
    Axis II:  799.9 Deferred
    GAF: 60

P:  Continue treatment approximately every 30 days for continuing stability.  Schedule Psychiatry ASAP.

E:  I/M will make appropriate referrals if in need of assistance.

| INSTITUTION | HDSP | CLINICIAN | D. Braun, Psy.D. | BED NUMBER  B2 208 |
|---|---|---|---|---|

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | NAME (LAST, FIRST), CDCR NUMBER, DOB |
|---|---|---|---|
| ☒ TABE score ≤ 4.0<br>☐ DPH ☐ DPV ☐ LD<br>☐ DPS ☐ DNH ☐ ESL<br>☐ DNS ☐ DDP<br>☐ Not Applicable<br>☐ Not reached* ☒ Reached | ☐ Additional Time<br>☐ Equipment ☐ SLI<br>☐ Loud ☐ Slower<br>☒ Basic ☐ Transcribe<br>☐ Other* | ☒ Repeated in own words<br>☒ Responses to questions<br>☐ Mannerisms | Gomez, N.<br>AF7364<br>5-25-78 |
| 4. Comments: | | *See chrono/notes | |

Confidential Saved 2014 09 10T20:16:02Z

Exhibit "E"

# EXHIBIT
# F

Case 2:15-cv-02523-MCE-KJN Document 49 Filed 02/05/18 Page 47 of 94
Case 2:15-cv-02523-KJN Document 22 Filed 06/27/16 Page 18 of 22
Page 1 of 1

State of California
Interdisciplinary Progress Notes
CDCR 7230-MH (Rev. 11/11)

Department of Corrections and Rehabilitation

| DATE | TIME | COMMENTS (USE S. O. A .P. E. FORMAT) |
|---|---|---|
| 2-21-12 | 0900 | |

**SCHEDULED TIME**

**ENCOUNTER REASON**
PC Routine

**ENCOUNTER LOCATION**
B2

| TABE | LOC |
|---|---|
| 1.3 | CCCMS |

| OUTCOME CODE | DURATION |
|---|---|
| 1A | 45 min |

**NEXT APPOINTMENT**
Schedule PC in 30 days

**NON-ENCOUNTER TIMES**
Record Review 0730 (5)
Documentation 1400 (15)

**NOTES**
Schedule Psychiatry ASAP

**OUTCOME CODES**
COMPLETED
  1A: Standard
  1B: Cell Front
  1C: Telemedicine
  1D: Unscheduled Escort
  1E: Unscheduled Escort Telemed
REFUSED
  2A: Refused Seen
  2B: Refused Unseen
CANCELLED-Scheduling Conflict
  3A: Conflicting Ducats
  3B: LOC Change
  3E: Scheduling Error
  3G: Undetermined
CANCELLED-Custody
  4A: Modified Program
CANCELLED-Movement in Inst.
  5A: Moved to another facility
  5B: Institutional Inpatient
CANCELLED-Movement out of Institution
  6A: Out to Court
  6B: Out to Medical
  6C: Paroled/Released/Transferred
CANCELLED-Provider
  7A: Provider out of Time
  7B: Provider Unavailable
  7C: Inmate Quarantined
  7D: Treatment Space Issues

S: Met with I/M for therapeutic contact. I/M continues to complain of issued related to depression, agitation, and trouble sleeping. He will be scheduled with psychiatry to address these concerns. He had previously taken medications and felt stable on them, having no issues. He currently, however, has been staying in his cell more, having less social interactions, and having some difficulties not lashing out at others.

O: I/M was cooperative, appropriate, has mild depression, current stress, agitation, sleep issues, and is in need of medications

A: Axis I: 296.21 MDD, single episode, mild
   Axis II: 799.9 Deferred
   GAF: 59

P: Continue treatment approximately every 30 days for continuing stability. Schedule Psychiatry ASAP.

E: I/M will make appropriate referrals if in need of assistance.

| INSTITUTION | HDSP | CLINICIAN | D. Braun, Psy.D. | | BED NUMBER B2 208 |
|---|---|---|---|---|---|

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | NAME (LAST, FIRST), CDCR NUMBER, DOB |
|---|---|---|---|
| ☒ TABE score ≤ 4.0 | ☐ Additional Time | ☒ Repeated in own words | **Gomez, N.** |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☒ Responses to questions | **AF7364** |
| ☐ DPS ☐ DNH ☐ ESL | ☐ Loud ☐ Slower | ☐ Mannerisms | **5-25-78** |
| ☐ DNS ☐ DDP | ☒ Basic ☐ Transcribe | | |
| ☐ Not Applicable | ☐ Other* | | |
| ☐ Not reached* ☒ Reached | | | |
| 4. Comments: | | *See chrono/notes | |

Interdisciplinary Progress Notes, CDCR 7230-MH (Rev. 11/11)

Exhibit "F"

Page 1 of 1

Confidential Saved 2014-09-10T20:16:02Z

# EXHIBIT
# G

Case 2:15-cv-02523-MCE-KJN Document 22 Filed 06/27/... Page 1 of 2

Plaintiff's Name **NEXIS RENE GOMEZ**

CDCR No. **AF-7364**

Address **CORCORAN STATE PRISON**

**POST OFFICE BOX 3471**

**CORCORAN, CALIFORNIA 93212**

# FILED

FEB 2 5 2016

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

### FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NEXIS RENE GOMEZ,** | **2:15-CV-2523 KJN PC** |
| (Name of Plaintiff) | (Case Number) |
| | |
| VS. | **CIVIL RIGHTS COMPLAINT UNDER:** |
| **D. BRAUN,** | ☒ **42 U.S.C. 1983 (State Prisoner)** |
| **MAJUMDAR, N.D** | **FIRST AMENDED** |

(Names of all Defendants)

I. Previous Lawsuits (list all other previous or pending lawsuits on additional page):

    A. Have you brought any other lawsuits while a prisoner? Yes____ No **X**

    B. If your answer to A is yes, how many? **N/A**

        Describe previous or pending lawsuits in the space below. (If more than one, attach additional page to continue outlining all lawsuits in same format.)

        1. Parties to this previous lawsuit:

            Plaintiff **N/A**

            Defendants **N/A**

        2. Court (if Federal Court, give name of District; if State Court, give name of County) **N/A**

        3. Docket Number **N/A**      4. Assigned Judge **N/A**

5. Disposition  (Was the case dismissed? Appealed? Is it still pending?)

N/A

6. Filing Date (approx.) _____          7. Disposition Date (approx.) _____

## II. Exhaustion of Administrative Remedies

NOTICE:  Pursuant to the Prison Litigation Reform Act of 1995, A[n]o action shall be brought with respect to prison conditions under [42 U.S.C. * 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.@ 42 U.S.C. * 1997e(a).  Prior to filing suit, inmates are required to exhaust the available administrative remedy process, Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); McKinney v. Carey, 311 F.3d 1198, 1999 (9th Cir. 2002), and neither futility nor the unavailability of money damages will excuse the failure to exhaust, Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002).  If the court determines that an inmate failed to exhaust prior to filing suit, the unexhausted claims will be dismissed, without prejudice.  Jones, 549 U.S. at 223-24, 127 S.Ct. at 925-26.

A. Is there an inmate appeal or administrative remedy process available at your institution?

Yes X       No_____

B. Have you filed an appeal or grievance concerning ALL of the facts contained in this complaint?

Yes_____  No___X___

C. Is the process completed?

Yes_____            If your answer is yes, briefly explain what happened at each level.

_____

_____

_____

_____

_____

No___X___            If your answer is no, explain why not.

The events arising this complaint occurred on February 29,2012,when for the lack of meds I had committed a

very serious suicide attempt.After these events occurred I was committed in a mental health facility,specifically

in a mental health crisis bed unit,diagnosed with a mental health illness.So during the period of time to file

the available inmate appeal process,I was mentally incapacitated by the mentioned mental health illness.And

because of that disability I had failed to exhaust the inmate appeal process concerning to all of the facts

contained in this complaint.(See Exhibits A,B, and C attached herein.).

**III. Defendants**

List each defendant's full name, official position, and place of employment and address in the spaces below. If you need additional space please provide the same information for any additional defendants on separate sheet of paper.

A. Name _____D.BRAUN_____ is employed as __PSY.DOCTOR AND PRIMARY CLINICIAN__

Current Address/Place of Employment __HIGH DESERT STATE PRISON__

B. Name _____MAJUMDAR,N.D._____ is employed as __MEDICAL DOCTOR AND CLINICIAN__

Current Address/Place of Employment __HIGH DESERT STATE PRISON__

C. Name _____is employed as _____

Current Address/Place of Employment _____

D. Name _____is employed as _____

Current Address/Place of Employment _____

E. Name _____is employed as _____

Current Address/Place of Employment _____

**IV. Causes of Action** (You may attach additional pages alleging other causes of action and the facts supporting them if necessary. Must be in same format outlined below.)

<u>Claim 1</u>: The following civil right has been violated (e.g. right to medical care, access to courts, due process, free speech, freedom of religion, freedom from cruel and unusual punishment, etc.):

PRISON'S DOCTOR DELIBERATE INDIFFERENCE TO TREAT PLANTIFF'S SEVERE MENTAL HEALTH

NEEDS AND CONDITION,RESULTED IN A FURTHER SIGNIFICANT SUICIDE ATTEMPT AND VIOLATES HIS

RIGHT TO MEDICAL CARE UNDER THE EIGHT AMENDMENT TO THE UNITED STATES CONSTITUTION

<u>Supporting Facts</u> (Include all facts you consider important to Claim 1. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Claim 1.):

1. On 01-03-2012, I met my primary clinician Dr.BRAUN at High Desert State Prison in

Susanville.During our interview I reported him that I felt low and depressed all time,

also I let him know that I had tried to choke myself out a few weeks ago,and I

expressed him my desire to restart taking my medication again because I knew that I was

feeling very bad.By the time of the interview Dr.BRAUN knew in the state of his mind

that I the (Plantiff) had a mental health condition which required an immediate,

Treatment,he was aware that plaintiff's had suicidial tendencies,and that plaintiff

could be in danger to himself without his medication.However Dr.Braun ignored the risk

that his patient was exposed for the lack of medication and failed to expedite

plaintiff's referral for an emergency mental health evaluation and to expedite the

administration of medication.(See Exhibit D.).

2.On or about 01-30-2012,after 27-days in desperate need of my medication,I met Dr.

Braun again,I complained him that I had 'not received my medication,I told him that I

needed my medication right away because I was feeling depressed all of the time.

However,Dr.Braun failed in referme with the psychiatry inmediately,despite knowing

that plaintiff was suffering from high level of psychological stress,and the prior

suicide attemps.Dr Braun was deliberate indifferent and ignored the obvious risk that

plaintiff would attempt suicide again for the lack of meds. (Please See next page attached.).

Claim 2: The following civil right has been violated (e.g. right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.):

PRISON DOCTOR TWO MONTHS OF IMPROPERLY DELAY IN PRESCRIBE PLAINTIFF'S MENTAL HEALTH

TREATMENT,WAS HARMFUL AND RESULTED IN A FURTHER SIGNIFICANT SUICIDE ATTEMPT AND CONSTITUTE

DELIBERATE INDIFFERENCE IN VIOLATION OF PLAINTIFF'S 8TH AMENDMENT RIGHT TO MEDICAL CARE

Supporting Facts (Include all facts you consider important to Claim 2. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, by name, did to violate the right alleged in Claim 2.):

1. On or about 02-27-2012,approximately at 9:10 hrs plaintiff met Dr.Majumdar at 3-Block

in High Desert State Prison.

2. Dr.Majumdar is the doctor that plaintiff should have seen two months prior this

meeting to prescribe his mental health treatment because plaintiff was suicidal and

suffering of a severe depression accompanied of emotional distress. However the date

when Dr.Majumdar showed up to prescribe plaintiff's mental health treatment was

improperly late and harmful,because plaintiff was suffering from high level of

psychological stress which resulted in a further suicide attempt for the lack of meds.

3. Finally on the morning of February 29,2012,two months of waiting for his medication

plaintiff give up and without thinking committed a very serious suicide attempt.

## SUPPORTING FACTS
### Claim 1.

Is debatable issue why Dr.Braun failed to take additional steps to ensure plaintiff was seen by psychiatry ASAP ? (See Exhibit E.).

3.     On 02-21-2012,plaintiff saw Dr.Braun one more time.(See Exhibit F.)It was almost two months since plaintiff first complained before Dr.Braun for his meds, almost two months plaintiff suffering from high levels of psychological stress and a severe depression,and Dr.Braun still failing to expedite plaintiff's referral for an emergency mental health evaluation and failing to expedite the administration of medication,and no additional steps were taken by Dr.Braun.

4.     Finally in the morning of February 29,2012,plaintiff gave up on his meds complain,hopeless and without thinking,committed a very serious suicide attempt which caused him pain,suffering,physical injury and emotional distress.

5.     The deliberate indifference displayed by defendant Dr.Braun,violates plaintiff's Eighth Amendment right to an adequate medical care and the unnecessary and wanton infliction of pain.

### Claim 2.

5.     The failure of Dr.Majumdar to prescribe plaintiff's mental health treatment in a properly time,amount to deliberate indifference,and caused plaintiff pain,suffering,physical injury and emotional distress,thus  violates plaintiff's right to an adequate medical care and freedom from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

Dated:  02-17-2016                        Respectfully submitted by,


Nexis Rene Gomez (AF-7364)
in pro-per

4.  It was Dr. Majumdar duty to prescribe plaintiff's mental health treatment in    a

reasonable or proper time.But in this particular case is debatable issue why Dr.

Majumdar failed to show up to prescribe plaintiff's treatment for almost two months?

Moreover,there is evidence in Dr.Majumdar's medical record suggesting that he possible

could delayed plaintiff's mental health treatment and delayed in meeting with plaintiff

intentionally,just because he had seen a pattern of medication refusal by plaintiff for

about 3 days in the past. It sounds like Dr.Majumdar wanted punish plaintiff because he

refused to take his medication for about 3 times in the past.(See Exhibit G.).

(For the lack of space,please see Claim 2 in the prior page attached hereto.)

**V. Relief**

State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statues.

**WHEREFORE,** Plaintiff respectfully prays this Court enter judgment granting him:

1. A declaration that the acts and omissions described herein violated plaintiff's

rights under the Constitution and Laws of the United States.

2. Compensatory damages in the amount of $ 500.000 against each defendant.

3. Punitive damages of $ 750.000 against each defendant.

4. A jury trial on all issues triable by jury.  5.Plaintiff's cost for this suit.

6. Any additional relief this Court deems just proper and aequitable.

I declare under penalty of perjury that the foregoing is true and correct.

Date: __02-17-2016__     Signature of Plaintiff: _____

(Revised 4/4/14)

EXHIBIT   "A"

STATE OF CALIFORNIA
MENTAL HEALTH PLACEMENT CHRONO
CDCR 128-MH3 (REV 08/11)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Inmate Name: GOMEZ, NEXIS          CDC Number:   AF7364     Institution: HDSP      Housing:   MHCB

THIS INMATE HAS RECEIVED A MENTAL HEALTH EVALUATION WITH THE FOLLOWING RESULTS [check box(s) below]:

a)   ☐ Does not meet criteria for inclusion in the Mental Health Services Delivery System (MHSDS).
b)   ☐ Meets inclusion criteria for the MHSDS.  Check Level of Care (LOC) below.
        ☐ Qualifying mental disorder or
        ☐ Inclusion is for Medical Necessity (obtain Chief of Mental Health signature below).
c)   ☑ Currently included in the MHSDS.  Check new or continuing LOC below.

LOC: ☐ Correctional Clinical Case Management Services (CCCMS) ☐ Enhanced Outpatient Program (EOP) ☑ Mental Health Crisis Bed (MHCB)
        If LOC is MHCB, was inmate admitted for danger to others? ☐ Yes   ☑ No

Referral to DMH:  ☐ ICF   ☐ APP

Level of Functioning Assessment (GAF Score): ____26____          Psychotropic Medication Prescribed:  Yes ☑   No ☐

Behavior Alerts: ADMIT CHRONO 2/29/12

M. Krause PhD

CLINICIAN'S NAME (Print)          CLINICIAN'S SIGNATURE

CHIEF OF MENTAL HEALTH or DESIGNEE SIGNATURE

DATE:   3/1/12

Confidential Saved 2014-09-10T20:16:02Z

Distribution: Pink – Central File; Blue – Unit Health Record; White – MH File, Inmate

Exhibit "A"

EXHIBIT "B"

STATE OF CALIFORNIA
MENTAL HEALTH PLACEMENT CHRONO
CDCR 128-MH3 (REV. 08/11)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Inmate Name: GOMEZ, NEXIS            CDC Number: AF7364            Institution: HDSP            Housing: B5-127

THIS INMATE HAS RECEIVED A MENTAL HEALTH EVALUATION WITH THE FOLLOWING RESULTS [check box(s) below]:

a)  ☐ Does not meet criteria for inclusion in the Mental Health Services Delivery System (MHSDS).

b)  ☒ Meets inclusion criteria for the MHSDS. Check Level of Care (LOC) below.

    ☒ Qualifying mental disorder or
    ☐ Inclusion is for Medical Necessity (obtain Chief of Mental Health signature below).

c)  ☒ Currently included in the MHSDS. Check new or continuing LOC below.

LOC: ☐ Correctional Clinical Case Management Services (CCCMS) ☒ Enhanced Outpatient Program (EOP) ☐ Mental Health Crisis Bed (MHCB)

    IFLOC is MHCB, was inmate admitted for danger to others? ☐ Yes  ☒ No

Referral to DMH: ☐ ICF  ☐ APP

Level of Functioning Assessment (GAF Score): 4-5            Psychotropic Medication Prescribed: Yes ☒  No ☐

Behavior Alerts: N

BRAUN, D. PSYD
_____
CLINICIAN'S NAME (PMI)

_____
CLINICIAN'S SIGNATURE

A. Bourceu, PhD
_____
DIFT LEADER SIGNATURE

_____
CHIEF OF MENTAL HEALTH SIGNATURE

3-14-13

Confidential Saved 2014-09-10T20:16:02Z

Distribution: Pink - Central File; Blue - Unit Health Record; White - MH File; Inmate

Exhibit "B"

EXHIBIT "C"

State of California
**Interdisciplinary Progress Notes**
CDCR 7230-MH (Rev. 11/11)

Department of Corrections and Rehabilitation

| DATE | TIME | COMMENTS (USE S. O. A .P. E. FORMAT) |
|---|---|---|
| 3-22-12 | 1120 | |

**SCHEDULED TIME**

**ENCOUNTER REASON**
PC Routine

**ENCOUNTER LOCATION**
B2

| TABE | LOC |
|---|---|
| 'L8 | EOP |

| OUTCOME CODE | DURATION |
|---|---|
| 1A | 40 min |

**NEXT APPOINTMENT**
1 week

**NON-ENCOUNTER TIMES**
Record Review 0745 (5)
Documentation 1545 (45)
1530 (10)

**NOTES**
Schedule Psychiatry ASAP

**OUTCOME CODES**
**COMPLETED**
1A: Standard
1B: Cell Front
1C: Telemedicine
1D: Unscheduled Escort
1E: Unscheduled Escort Telemed
**REFUSED**
2A: Refused Seen
2B: Refused Unseen
**CANCELLED-Scheduling Conflict**
3A: Conflicting Ducats
3B: LOC Change
3E: Scheduling Error
3G: Undetermined
**CANCELLED-Custody**
4A: Modified Program
**CANCELLED-Movement in Inst.**
5A: Moved to another facility
5B: Institutional Inpatient
**CANCELLED-Movement out of Institution**
6A: Out to Court
6B: Out to Medical
6C: Paroled/Released/Transferred
**CANCELLED-Provider**
7A: Provider out of Time
7B: Provider Unavailable
7C: Inmate Quarantined
7D: Treatment Space Issues

S: Met with I/M for therapeutic contact. I/m was recently placed into the EOP program to better meet his needs after he had a serious suicide attempt (jumping off of tier with noose around neck). I/M reports that he is feeling much better on Remeron and reports that he has had occasionally "made some dumb, quick decisions." I/M has hx of self-injurious bx (choking self) but has always denied suicidality. I/M stated: "I am better now, though, I am not sure I need EOP tx." Clinician told him that because of his recent suicide attempt, impulsive behavior, and hx of self-injurious bx he would remain EOP and be transferred to an EOP facility to work on developing coping strategies to better assist him with stress.

O: I/M was cooperative, appropriate, has moderate depression, recent suicide attempt, denies current si/intent, hx of impulsive bx, adl's wnl, sleep/appetite wnl, and is med compliant right now.

A: Axis I: 296.32 MDD, recurrent, moderate w/o psychotic features
    Axis II:  799.9 Deferred
    GAF: 45

P: Continue tx at an EOP loc and see weekly for PC contact.

E: I/M will make appropriate referrals if in need of assistance.

| INSTITUTION | HDSP | CLINICIAN | D. Braun, Psy.D. | BED NUMBER | B2 208 |
|---|---|---|---|---|---|

| 1. Disability Code: | 2. Accommodation: | 3.Effective Communication: | NAME (LAST, FIRST), CDCR NUMBER, DOB |
|---|---|---|---|
| ☒ TABE score ≤ 4.0 | ☐ Additional Time | ☒ Repeated in own words | **Gomez, N.** |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☒ Responses to questions | **AF7364** |
| ☐ DPS ☐ DNH ☐ ESL | ☐ Loud ☐ Slower | ☐ Mannerisms | **5-25-78** |
| ☐ DNS ☐ DDP | ☒ Basic ☐ Transcribe | | |
| ☐ Not Applicable | ☐ Other* | | |
| ☐ Not reached* ☒ Reached | | | |
| 4. Comments: | | *See chrono/notes | |

Interdisciplinary Progress Notes, CDCR 7230-MH (Rev. 11/11)

Page 1 of 1

Exhibit "C"

Confidential Saved 2014-09-10T20:16:02Z

EXHIBIT "D"

State of California
Interdisciplinary Progress Notes
CDCR 7230-MH (Rev, 11/11)

Department of Corrections and Rehabilitation

| DATE | TIME | COMMENTS (USE S. O. A .P. E. FORMAT) |
|---|---|---|
| 1-3-12 | 1030 | |

**SCHEDULED TIME**

**ENCOUNTER REASON**
PC Special F/U

**ENCOUNTER LOCATION**
B2

| TABE | LOC |
|---|---|
| 1.8 | CCCMS |

| OUTCOME CODE | DURATION |
|---|---|
| 1A | ~~30 min~~ 45 |

**NEXT APPOINTMENT**
Schedule PC in 20 days

**NON-ENCOUNTER TIMES**
Record Review 0755 (5)
Documentation 1340 (10)

**NOTES**
Schedule Psychiatry ASAP

**OUTCOME CODES**
COMPLETED
  1A: Standard
  1B: Cell Front
  1C: Telemedicine
  1D: Unscheduled Escort
  1E: Unscheduled Escort Telemed
REFUSED
  2A: Refused Seen
  2B: Refused Unseen
CANCELLED-Scheduling Conflict
  3A: Conflicting Ducats
  3B: LOC Change
  3E: Scheduling Error
  3G: Undetermined
CANCELLED-Custody
  4A: Modified Program
CANCELLED-Movement in Inst.
  5A: Moved to another facility
  5B: Institutional Inpatient
CANCELLED-Movement out of Institution
  6A: Out to Court
  6B: Out to Medical
  6C: Paroled/Released/Transferred
CANCELLED-Provider
  7A: Provider out of Time
  7B: Provider Unavailable
  7C: Inmate Quarantined
  7D: Treatment Space Issues

S: Met with I/M for therapeutic contact.  I'm had previously dc'd his medications in December and had reported "feeling better" throughout the month.  However, he is presently reporting that he feels low, having depression throughout the day.  He has showed some instability over the past few months and wishes to start his medications. He had reportedly tried to "choke himself out" a few weeks ago, but denied it being a suicide attempt.  Clinician discussed coping strategies with I/M and assessed for suicidal ideations or intent.

O:  I/M was cooperative, appropriate, has moderate depression, no psychosis reported, no current si/intent/plan, and is taking no medications.

A: Axis I: 296.22 MDD, single episode, moderate
     Axis II:  799.9 Deferred
     GAF: 61

P:  Continue treatment approximately every 20-30 days for continuing stability. Schedule Psychiatry ASAP.

E:  I/M will make appropriate referrals if in need of assistance.  I/M discussed safety plan and reported no current suicidal ideations/intent.

| INSTITUTION | HDSP | CLINICIAN | D. Braun, Psy.D. | BED NUMBER B2 208 |
|---|---|---|---|---|

| 1. Disability Code: | 2. Accommodation: | 3.Effective Communication: | NAME (LAST, FIRST), CDCR NUMBER, DOB |
|---|---|---|---|
| ☒ TABE score ≤ 4.0 | ☐ Additional Time | ☒ Repeated in own words | Gomez, N. |
| ☐ DPH ☐DPV ☐LD | ☐ Equipment ☐SLI | ☒ Responses to questions | AF7364 |
| ☐ DPS ☐DNH ☐ESL | ☐ Loud ☐Slower | ☐ Mannerisms | 5-25-78 |
| ☐ DNS ☐DDP | ☒ Basic ☐Transcribe | | |
| ☐ Not Applicable | ☐ Other* | | |
| ☐ Not reached* ☒Reached | | | |
| 4. Comments: | | *See chrono/notes | |

Interdisciplinary Progress Notes, CDCR 7230-MH (Rev. 11/11)

Page 1 of 1

Exhibit "D"

Confidential Saved 2014-09-10T20:16:02Z

EXHIBIT "E"

State of California
**Interdisciplinary Progress Notes**
CDCR 7230-MH (Rev. 11/11)

Department of Corrections and Rehabilitation

| DATE | TIME | COMMENTS (USE S. O. A .P. E. FORMAT) |
|---|---|---|
| 1-30-12 | 1045 | |

S: Met with I/M for therapeutic contact.  I/m had previously complained (about 4 weeks ago) that he needed to go back on medications and had been scheduled for psychiatry. However, he was never seen and continues to complain of "not feeling right. I feel down and depressed all the time." Clinician scheduled I/M with psychiatry again to address these concerns.  Discussed coping strategies with I/m to assist him in coping with current depression.

O: I/M was cooperative, appropriate, has mild depression, no psychosis reported, no current si/intent/plan, adl's wnl, sleep is poor, appetite wnl, speech and thought content were clear and coherent, and wants to take medications again.

A: Axis I: 296.21 MDD, single episode, mild
   Axis II:  799.9 Deferred
   GAF: 60

P: Continue treatment approximately every 30 days for continuing stability.  Schedule Psychiatry ASAP.

E: I/M will make appropriate referrals if in need of assistance.

**SCHEDULED TIME**

**ENCOUNTER REASON**
PC Special F/U

**ENCOUNTER LOCATION**
B2

| TABE 1.8 | LOC CCCMS |
|---|---|
| OUTCOME CODE 1A | DURATION 30 min |

**NEXT APPOINTMENT**
Schedule PC in 20 days

**NON-ENCOUNTER TIMES**
Record Review 0745 (5)
Documentation 1445 (15)

**NOTES**
Schedule Psychiatry ASAP

**OUTCOME CODES**
COMPLETED
 1A: Standard
 1B: Cell Front
 1C: Telemedicine
 1D: Unscheduled Escort
 1E: Unscheduled Escort Telemed
REFUSED
 2A: Refused Seen
 2B: Refused Unseen
CANCELLED-Scheduling Conflict
 3A: Conflicting  Ducats
 3B: LOC Change
 3E: Scheduling Error
 3G: Undetermined
CANCELLED-Custody
 4A: Modified Program
CANCELLED-Movement in Inst.
 5A: Moved to another facility
 5B: Institutional Inpatient
CANCELLED-Movement out of
Institution
 6A. Out to Court
 6B: Out to Medical
 6C: Paroled/Released/Transferred
CANCELLED-Provider
 7A: Provider out of Time
 7B: Provider Unavailable
 7C: Inmate Quarantined
 7D: Treatment Space Issues

| INSTITUTION | HDSP | CLINICIAN | D. Braun, Psy.D. | | BED NUMBER  B2 208 |
|---|---|---|---|---|---|

| 1. Disability Code: | 2. Accommodation: | 3.Effective Communication: | NAME (LAST, FIRST), CDCR NUMBER, DOB |
|---|---|---|---|
| ☒ TABE score ≤ 4.0 | ☐ Additional Time | ☒Repeated in own words | Gomez, N. |
| ☐ DPH ☐DPV ☐LD | ☐ Equipment ☐SLI | ☒ Responses to questions | AF7364 |
| ☐ DPS ☐DNH ☐ESL | ☐ Loud  ☐Slower | ☐ Mannerisms | 5-25-78 |
| ☐ DNS ☐DDP | ☒ Basic  ☐Transcribe | | |
| ☐ Not Applicable | ☐ Other* | | |
| ☐ Not reached* ☒Reached | | | |
| 4. Comments: | | *See chrono/notes | |

Interdisciplinary Progress Notes, CDCR 7230-MH (Rev. 11/11)

Page 1 of 1

Confidential Saved 2014 09 10T20:16:02Z

Exhibit "E"

EXHIBIT   "F"

State of California
**Interdisciplinary Progress Notes**
CDCR 7230-MH (Rev. 11/11)

Department of Corrections and Rehabilitation

| DATE | TIME | COMMENTS (USE S. O. A .P. E. FORMAT) |
|---|---|---|
| 2-21-12 | 0900 | |

S: Met with I/M for therapeutic contact. I/M continues to complain of issued related to depression, agitation, and trouble sleeping. He will be scheduled with psychiatry to address these concerns. He had previously taken medications and felt stable on them, having no issues. He currently, however, has been staying in his cell more, having less social interactions, and having some difficulties not lashing out at others.

O: I/M was cooperative, appropriate, has mild depression, current stress, agitation, sleep issues, and is in need of medications

A: Axis I: 296.21 MDD, single episode, mild
   Axis II:  799.9 Deferred
   GAF: 59

P: Continue treatment approximately every 30 days for continuing stability. Schedule Psychiatry ASAP.

E: I/M will make appropriate referrals if in need of assistance. .

**SCHEDULED TIME**

**ENCOUNTER REASON**
PC Routine

**ENCOUNTER LOCATION**
B2

| TABE 1.8 | LOC CCCMS |
|---|---|
| **OUTCOME CODE** 1A | **DURATION** 45 min |

**NEXT APPOINTMENT**
Schedule PC in 30 days

**NON-ENCOUNTER TIMES.**
Record Review 0730 (5)
Documentation 1400 (15)

**NOTES**
Schedule Psychiatry ASAP

**OUTCOME CODES**
**COMPLETED**
1A: Standard
1B: Cell Front
1C: Telemedicine
1D: Unscheduled Escort
1E: Unscheduled Escort Telemed
**REFUSED**
2A: Refused Seen
2B: Refused Unseen
**CANCELLED-Scheduling Conflict**
3A: Conflicting Ducats
3B: LOC Change
3E: Scheduling Error
3G: Undetermined
**CANCELLED-Custody**
4A: Modified Program
**CANCELLED-Movement in Inst.**
5A: Moved to another facility
5B: Institutional Inpatient
**CANCELLED-Movement out of Institution**
6A: Out to Court
6B: Out to Medical
6C: Paroled/Released/Transferred
**CANCELLED-Provider**
7A: Provider out of Time
7B: Provider Unavailable
7C: Inmate Quarantined
7D: Treatment Space Issues

| INSTITUTION | HDSP | CLINICIAN | D. Braun, Psy.D. | | BED NUMBER B2 208 |
|---|---|---|---|---|---|

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | NAME (LAST, FIRST), CDCR NUMBER, DOB |
|---|---|---|---|
| ☒ TABE score ≤ 4.0 | ☐ Additional Time | ☒ Repeated in own words | Gomez, N. |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☒ Responses to questions | AF7364 |
| ☐ DPS ☐ DNH ☐ ESL | ☐ Loud  ☐ Slower | ☐ Mannerisms | 5-25-78 |
| ☐ DNS ☐ DDP | ☒ Basic  ☐ Transcribe | | |
| ☐ Not Applicable | ☐ Other* | | |
| ☐ Not reached* ☒ Reached | | | |
| 4. Comments: | | *See chrono/notes | |

Interdisciplinary Progress Notes, CDCR 7230-MH (Rev. 11/11)

Page 1 of 1

Exhibit "F"

Confidential Saved 2014-09-10T20:16:02Z

EXHIBIT   "G"

State of California
Interdisciplinary Progress Notes
CDCR 7230-MH (Rev. 11/11)

Department of Corrections and Rehabilitation

| DATE | TIME | COMMENTS (USE S. O. A .P. E. FORMAT) |
|---|---|---|
| **2/27/2012 ~09:10** | | S-The Inmate/Patient (I/P) presented reporting "I haven't taken my medication for about 3 months and I feel really, really bad. I want to go back to my old dosage. I feel really depressed." He stated he has had multiple stressors, including a denied appeal and problems with his family. He noted that he has trouble with sleep and appetite, but gave mixed and at times conflicting statements about sleeping and eating too much or too little. He reported that he has not felt motivation to do exercise as he usually does. He denied any other problems or psychiatric complaints. He denied any current suicidality, homicidality, or psychotic symptoms. |
| SCHEDULED TIME | | |
| 09:00 | | |
| ENCOUNTER REASON | | |
| Oth-Referral Triage | | |
| ENCOUNTER LOCATION | | |
| B-Block | | |
| TABE. | LOC | O-Mental status exam found a 33 year old Hispanic male I/P who appeared his stated age, appropriately dressed with fair hygiene and grooming. He was awake, alert, and oriented to person, place, time, and situation. He appeared to be in fair physical condition with no abnormal involuntary movements or gross physical defects. He was appropriately behaved with no obvious anxiety, aggression, or distractibility. He had fair eye contact and rapport. His speech had a normal volume, rate, rhythm, tone, spontaneity, quantity, and fluency, with no abnormal associations or pressure of speech. He described his current mood as "bad," but appeared incongruently euthymic with a full, smiling affect. |
| 1.8 | CCCMS | |
| OUTCOME CODE | DURATION | |
| 1A | ~25 Minutes | |
| NEXT APPOINTMENT | | He denied any abnormal thought perceptions at this time, such as hallucinations or depersonalizations, and showed no obvious responses to internal stimuli. His thought processes were linear and goal directed, with no loosening of associations or flights of ideas. He denied any abnormal thought content at this time, such as delusions, preoccupations, suicidality, or homicidality. He did not appear to be at an elevated level of danger to himself or others. He had fair attention, concentration, comprehension, and memory. He appeared to have fair insight and judgment regarding his ongoing health care needs. |
| In ~12 Weeks | | |
| NON-ENCOUNTER TIMES | | |
| Review ~30 minutes @ ~06:50 2/27/2012 | | |
| Writing ~15 minutes @ ~14:30 2/27/2012 | | |
| NOTES | | |
| | | A-I: 303.90 Alcohol, 304.30 Cannabis, & 305.10 Nicotine Dependencies in Sustained Full Remission in a Controlled Environment; *Per Chart* 309.0 Adjustment Disorder with Depressed Mood vs. 296.21 Major Depressive Disorder (Single Episode, Mild). II: Rule Out 301.9 Personality Disorder NOS with Prominent Cluster B Traits. III: Hx R-Femur Fracture with Hardware; *Allergies:* NKDA. IV: Severe Psychosocial Stressors, including Imprisonment. V: GAF 65. |

**OUTCOME CODES**
COMPLETED
1A: Standard
1B: Cell Front
1C: Telemedicine
1D: Unscheduled Escort
1E: Unscheduled Escort Telemed
REFUSED
2A: Refused Seen
2B: Refused Unseen
CANCELLED-Scheduling Conflict
3A: Conflicting Ducats
3B: LOC Change
3E: Scheduling Error
3G: Undetermined
CANCELLED-Custody
4A: Modified Program
CANCELLED-Movement in Inst.
5A: Moved to another facility
5B: Institutional Inpatient
CANCELLED-Movement out of Institution
6A: Out to Court
6B: Out to Medical
6C: Paroled/Released/Transferred
CANCELLED-Provider
7A: Provider out of Time
7B: Provider Unavailable
7C: Inmate Quarantined
7D: Treatment Space Issues

P-1. Psychiatric Illness – Restart Mirtazapine 30mg PO QHS. It was discussed with the I/P that if a pattern of medication refusals is seen then he will be assessed for need to continue with that treatment and discontinued if no benefit will be gained due to frequent refusals. 2. Addiction – Recommended making use of 12-Step materials. 3. Medical Care – Continue treatment per health clinic.

E-The I/P was educated regarding his condition and treatments to his stated understanding, within the limits of available privacy.

| INSTITUTION  HDSP | CLINICIAN   MAJUMDAR, N. D., MD | BED NUMBER  B 002 2208001UP |
|---|---|---|

| Effective Communication: ☐ Not reached* ✓ Reached | NAME (LAST, FIRST), CDCR NUMBER, DOB |
|---|---|
| **1. Disability Code** | **2. Accommodation** | **3. Proof of Communication** | **Gomez, Nexis** |

1. **Disability Code**
✓TABE score ≤ 4.0
☐ DPH ☐ DPV ☐ LD
☐ DPS ☐ DNH ☐ ESL
☐ DNS ☐ DDP
☐ Not Applicable

2. **Accommodation**
✓ Additional Time
☐ Equipment ☐ SLI
☐ Loud ☐ Slower
☐ Basic ☐ Transcribe
☐ Unnecessary/Declined
☐ Other*

3. **Proof of Communication**
✓ Repeated in own words
✓ Responses to questions
✓ Mannerisms
4. **Comments**
*See chrono/notes

NAME (LAST, FIRST), CDCR NUMBER, DOB
**Gomez, Nexis**
**AF7364**
**5/25/1978**

Exhibit "G"

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

NEXIS RENE GOMEZ,

v.

Case Number: 2:15-cv-2523 KJN PC

D.BRAUN,et al.,

PROOF OF SERVICE

/

I hereby certify that on ___February 17,2016___, I served a copy

of the attached ___CIVIL RIGHT COMPLAINT UNDER  42 U.S.C § 1983___

by placing a copy in a postage paid envelope addressed to the person(s) hereinafter

listed, by depositing said envelope in the United States Mail at

___Corcoran State Prison___ :

(List Name and Address of Each
Defendant or Attorney Served)

      1. Clerk of the U.S District Court
         Eastern District of California
         501 "I" Street,Suite 4200
         Sacramento,California 95814

I declare under penalty of perjury that the foregoing is true and correct.

_____
(Signature of Person Completing Service)

1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   NEXIS RENE GOMEZ,                        No.  2:15-cv-2523 KJN P

12                    Plaintiff,

13           v.                               NOTICE OF SUBMISSION OF
                                             DOCUMENTS
14   D. BRAUN, et al.,

15                    Defendants.

16

17       Plaintiff submits the following documents in compliance with the court's order filed

18   February 3, 2016                .

19       _____       completed summons form

20       _____       completed forms USM-285

21       _____       copies of the Complaint

22

23       Plaintiff consents to the dismissal of defendants Dr. Majumdar, Dr. A.
         Bowers, and Warden Dave Davey without prejudice. _____

24       OR

25       __X__ Plaintiff opts to file an amended complaint and delay service of process.

26   DATED:  02-17-2016

27                                      _____
                                        Plaintiff
28

# EXHIBIT H

State of California
Interdisciplinary Progress Notes
CDCR 7230-MH (Rev. 11/11)

Department of Corrections and Rehabilitation

| DATE TIME | COMMENTS (USE S. O. A .P. E. FORMAT) |
|---|---|
| **2/27/2012 ~09:10** | S–The Inmate/Patient (I/P) presented reporting "I haven't taken my medication for about 3 months and I feel really, really bad. I want to go back to my old dosage. I feel really depressed." He stated he has had multiple stressors, including a denied appeal and problems with his family. He noted that he has trouble with sleep and appetite, but gave mixed and at times conflicting statements about sleeping and eating too much or too little. He reported that he has not felt motivation to do exercise as he usually does. He denied any other problems or psychiatric complaints. He denied any current suicidality, homicidality, or psychotic symptoms. |
| SCHEDULED TIME 09:00 | |
| ENCOUNTER REASON Oth-Referral Triage | |
| ENCOUNTER LOCATION ✗ B-Block | |
| TABE. LOC 1.8 CCCMS | O–Mental status exam found a 33 year old Hispanic male I/P who appeared his stated age, appropriately dressed with fair hygiene and grooming. He was awake, alert, and oriented to person, place, time, and situation. He appeared to be in fair physical condition with no abnormal involuntary movements or gross physical defects. He was appropriately behaved with no obvious anxiety, aggression, or distractibility. He had fair eye contact and rapport. His speech had a normal volume, rate, rhythm, tone, spontaneity, quantity, and fluency, with no abnormal associations or pressure of speech. He described his current mood as "bad," but appeared incongruently euthymic with a full, smiling affect. |
| OUTCOME CODE 1A | DURATION ~25 Minutes |
| NEXT APPOINTMENT In ~12 Weeks | |
| NON-ENCOUNTER TIMES Review ~30 minutes @ ~06:50 2/27/2012 | |
| Writing ~15 minutes @ ~14:30 2/27/2012 | He denied any abnormal thought perceptions at this time, such as hallucinations or depersonalizations, and showed no obvious responses to internal stimuli. His thought processes were linear and goal directed, with no loosening of associations or flights of ideas. He denied any abnormal thought content at this time, such as delusions, preoccupations, suicidality, or homicidality. He did not appear to be at an elevated level of danger to himself or others. He had fair attention, concentration, comprehension, and memory. He appeared to have fair insight and judgment regarding his ongoing health care needs. |
| NOTES | |
| **OUTCOME CODES** COMPLETED 1A: Standard 1B: Cell Front 1C: Telemedicine 1D: Unscheduled Escort 1E: Unscheduled Escort Telemed REFUSED 2A: Refused Seen 2B: Refused Unseen CANCELLED-Scheduling Conflict 3A: Conflicting Ducats 3B: LOC Change 3E: Scheduling Error 3G: Undetermined CANCELLED-Custody 4A: Modified Program CANCELLED-Movement in Inst. 5A: Moved to another facility 5B: Institutional Inpatient CANCELLED-Movement out of Institution 6A: Out to Court 6B: Out to Medical 6C: Paroled/Released/Transferred CANCELLED-Provider 7A: Provider out of Time 7B: Provider Unavailable 7C: Inmate Quarantined 7D: Treatment Space Issues | A–I: 303.90 Alcohol, 304.30 Cannabis, & 305.10 Nicotine Dependencies in Sustained Full Remission in a Controlled Environment; *Per Chart* 309.0 Adjustment Disorder with Depressed Mood vs. 296.21 Major Depressive Disorder (Single Episode, Mild). II: Rule Out 301.9 Personality Disorder NOS with Prominent Cluster B Traits. III: Hx R-Femur Fracture with Hardware; *Allergies:* NKDA. IV: Severe Psychosocial Stressors, including Imprisonment. V: GAF 65. P-1. Psychiatric Illness – Restart Mirtazapine 30mg PO QHS. It was discussed with the I/P that if a pattern of medication refusals is seen then he will be assessed for need to continue with that treatment and discontinued if no benefit will be gained due to frequent refusals. 2. Addiction – Recommended making use of 12-Step materials. 3. Medical Care – Continue treatment per health clinic. E–The I/P was educated regarding his condition and treatments to his stated understanding, within the limits of available privacy. |
| INSTITUTION HDSP | CLINICIAN. MAJUMDAR, N. D., MD | BED NUMBER B 002 2208001UP |

| Effective Communication: ☐ Not reached* ✓ Reached | | NAME (LAST, FIRST), CDCR NUMBER, DOB |
|---|---|---|
| 1. Disability Code ✓ TABE score ≤ 4.0 ☐ DPH ☐ DPV ☐ LD ☐ DPS ☐ DNH ☐ ESL ☐ DNS ☐ DDP ☐ Not Applicable | 2. Accommodation ✓ Additional Time ☐ Equipment ☐ SLI ☐ Loud ☐ Slower ☐ Basic ☐ Transcribe ☐ Unnecessary/Declined ☐ Other* | 3. Proof of Communication ✓ Repeated in own words ✓ Responses to questions ✓ Mannerisms 4. Comments *See chrono/notes | **Gomez, Nexis** **AF7364** **5/25/1978** |

# EXHIBIT
# I

| DATE | TIME | COMMENTS (USE S. O. A. P. E. FORMAT) |
|------|------|--------------------------------------|
| 5/24/12 | 1615 | Special Communication Assistance Needs (SCAN): ☒ Not Indicated ☒ Indicated |
| | | If Indicated, SCAN due to: ☐ Armstrong/LD ☐ Non-English Language ☐ Organicity ☐ Clark ☒ Other |
| | (S) | "A little better. I'm trying to do my best." I/M is off orientation and is beginning to get to know some people. "I'm trying to do my best. My life doesn't have any sense. I have no hope. Nothing to live for." However, I/M said he did not have SI, HI, AH, VH. |
| | (O) | 33 y.o. Nicaraguan male. NCF, TABE 1.8. Alert, Ox4. Speech strongly accented, but otherwise normal. Thought linear. Mood somewhat depressed. Affect WNL. |
| | (A) | Major Depression, mild to moderate. Low TABE appears to be due to English as 2nd language, rather than mental limitations. I/M says he completed HS in Nicaragua. |
| | (P) | Enroll in groups: Spanish, anger man. and coping skills. |
| | (E) | Discussed group openings. |
| | | Communication Techniques Used: ☒ Spoke Slowly ☐ Read Materials ☒ Rephrased Sentences and Questions |
| | | ☒ Simple English ☒ Verified Patient Understood What Was Said ☐ Interpreter Used ☐ Other |
| | | Results: Effective Communication: ☒ Achieved ☐ Not Achieved |

| INSTITUTION | CLINICIAN | | |
|-------------|-----------|---|---|
| **CORCORAN** | R. Severns, LCSW | BED NUMBER **3B01** | |

CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH

| CDC # | **Gomez, Nexis** |
|-------|------------------|
| NAME | **AF7364** |
| D.O.B. | **5/25/78** |

### INTERDISCIPLINARY PROGRESS NOTES
**SPECIAL COMMUNICATION ASSISTANCE NEEDS**
CDCR 7230A-MH (REV. 12/08)
Confidential Client/Patient Information

STATE OF CALIFORNIA        DEPARTMENT OF CORRECTIONS AND REHABILITATION

# EXHIBIT
# J

| DATE | TIME | COMMENTS   (USE S. O. A. P. E. FORMAT) |
|---|---|---|
| 5/31/12 | 0915 | Special Communication Assistance Needs (SCAN):  ☒ Not Indicated          ☒ Indicated |
| | | If indicated, SCAN due to: ☐ Armstrong/LD      ☐ Non-English Language   ☐ Organicity   ☐ Clark   ☒ Other |
| | (S) | Week has been "alright." I/M says meds are working a little better. Says his coping skills include taling, reading, TV, yard. No mental health concerns. Wants in GED program.  I/M said he did not have SI, HI, AH, VH. |
| | (O) | 33 y.o. Nicaraguan male. NCF, TABE 1.8. Alert, Ox4. Speech strongly accented, but otherwise normal. Thought linear. Mood somewhat depressed. Affect WNL. |
| | (A) | Major Depression, mild to moderate. Low TABE appears to be due to English as 2nd language, rather than mental limitations. I/M says he completed HS in Nicaragua. |
| | (P) | Enroll in groups:Spanish, anger man. and coping skills. MHTS review indicates this has not been done. Will e-mail OT again. |
| | (E) | Discussed group openings. |
| | | Communication Techniques Used: ☒ Spoke Slowly ☐ Read Materials     ☒ Rephrased Sentences and Questions |
| | | ☒ Simple English     ☒ Verified Patient Understood What Was Said        ☐ Interpreter Used      ☐ Other |
| | | Results: Effective Communication: ☒ Achieved          ☐ Not Achieved |

| INSTITUTION **CORCORAN** | CLINICIAN _Severns, LC(SW)_ R. Severns, LCSW | BED NUMBER **3B01** | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|---|

**INTERDISCIPLINARY PROGRESS NOTES**
SPECIAL COMMUNICATION ASSISTANCE NEEDS
CDCR 7230A-MH (REV. 12/08)
Confidential Client/Patient Information

CDC #   **Gomez, Nexis**

NAME   **AF7364**

D.O.B.   **5/25/78**

STATE OF CALIFORNIA                          DEPARTMENT OF CORRECTIONS AND REHABILITATION

# EXHIBIT
# K

| DATE | TIME | COMMENTS   (USE S. O. A. P. E. FORMAT) |
|------|------|------------------------------------------|
| 6/7/12 | 1147 | Special Communication Assistance Needs (SCAN):  ☒ Not Indicated        ☒ Indicated |
|  |  | If Indicated, SCAN due to: ☐ Armstrong/LD     ☐ Non-English Language   ☐ Organicity   ☐ Clark   ☒ Other |
|  | (S) | "Everything is OK. I'm doing a lot better. I think b/c of groups," I/M says meds are working. I/M is going to law library and is called so session is cut short.. Says he got a letter from family. Denies SI, HI, AH, VH. |
|  | (O) | 33 y.o. Nicaraguan male. NCF, TABE 1.8. Alert, Ox4. Speech strongly accented, but otherwise normal. Thought linear. Mood somewhat depressed. Affect WNL. |
|  | (A) | Major Depression, mild to moderate. Low TABE appears to be due to English as 2nd language, rather than mental limitations. I/M says he completed HS in Nicaragua. |
|  | (P) | Weekly PC contact. |
|  | (E) | N/A. Cut short b/c of law library. |
|  |  | Communication Techniques Used: ☒ Spoke Slowly ☐ Read Materials     ☒ Rephrased Sentences and Questions |
|  |  | ☒ Simple English     ☒ Verified Patient Understood What Was Said        ☐ Interpreter Used     ☐ Other |
|  |  | Results: Effective Communication: ☒ Achieved        ☐ Not Achieved |

| INSTITUTION | CLINICIAN | BED NUMBER | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|-------------|-----------|------------|------------------------------------------------------|
| CORCORAN | R. Severns, LCSW | 3B01-138 | CDC #    Gomez, Nexis |

**INTERDISCIPLINARY PROGRESS NOTES**
**SPECIAL COMMUNICATION ASSISTANCE NEEDS**
CDCR 7230A-MH (REV. 12/08)
Confidential Client/Patient Information

CDC #    **Gomez, Nexis**

NAME    **AF7364**

D.O.B.   **5/25/78**

STATE OF CALIFORNIA               DEPARTMENT OF CORRECTIONS AND REHABILITATION

# EXHIBIT
# L

STATE OF CALIFORNIA
MENTAL HEALTH PLACEMENT CHRONO
CDCR 128-MH3 (REV 08/11)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Inmate Name: GOMEZ, NEXIS    CDC Number: AF7364    Institution: HDSP    Housing: MHCB

THIS INMATE HAS RECEIVED A MENTAL HEALTH EVALUATION WITH THE FOLLOWING RESULTS (check box(s) below):

a) ☐ Does not meet criteria for inclusion in the Mental Health Services Delivery System (MHSDS).

b) ☐ Meets inclusion criteria for the MHSDS.  Check Level of Care (LOC) below.

    ☐ Qualifying mental disorder or

    ☐ Inclusion is for Medical Necessity (obtain Chief of Mental Health signature below).

c) ☑ Currently included in the MHSDS.  Check new or continuing LOC below.

LOC: ☐ Correctional Clinical Case Management Services (CCCMS) ☐ Enhanced Outpatient Program (EOP) ☑ Mental Health Crisis Bed (MHCB)

If LOC is MHCB, was inmate admitted for danger to others? ☐ Yes    ☑ No

Referral to DMH: ☐ ICF    ☐ APP

Level of Functioning Assessment (GAF Score): 26    Psychotropic Medication Prescribed: Yes ☑    No ☐

Behavior Alerts: ADMIT CHRONO 2/29/12

M. Krause PhD
CLINICIAN'S NAME (Print)    CLINICIAN'S SIGNATURE

BRITT A. Hill MD/MP    CHIEF OF MENTAL HEALTH SIGNATURE    DATE: 3/1/12

Distribution: Pink - Central File, Blue - Unit Health Record; White - MH File, Inmate

Confidential Saved 2014-09-10T20:16:02Z

Exhibit "A"

# EXHIBIT
# M

Exhibit "B"

STATE OF CALIFORNIA
MENTAL HEALTH PLACEMENT CHRONO
CDCR 128-MH3 (REV. 08/11)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Inmate Name: GOMEZ, NEXIS     CDC Number: AF7364     Institution: HDSP     Housing: B5-127

THIS INMATE HAS RECEIVED A MENTAL HEALTH EVALUATION WITH THE FOLLOWING RESULTS (check box(s) below):

a) ☐ Does not meet criteria for inclusion in the Mental Health Services Delivery System (MHSDS).
b) ☒ Meets inclusion criteria for the MHSDS. Check Level of Care (LOC) below.
   ☒ Qualifying mental disorder or
   ☐ Inclusion is for Medical Necessity (obtain Chief of Mental Health signature below).
c) ☒ Currently included in the MHSDS. Check new or continuing LOC below.

LOC: ☐ Correctional Clinical Case Management Services (CCCMS)  ☒ Enhanced Outpatient Program (EOP)  ☐ Mental Health Crisis Bed (MHCB)

If LOC is MHCB, was inmate admitted for danger to others? ☐ Yes  ☒ No

Referral to DMH:  ☐ ICF  ☐ APP

Level of Functioning Assessment (GAF Score): 45

Behavior Alerts: S     Psychotropic Medication Prescribed: Yes ☒  No ☐

BRAUN, D. PSYD
CLINICIAN'S NAME (Print)

A. Bourne, PhD
CLINICIAN'S NAME (Print)

3-14-13
DATE

CLINICIAN'S SIGNATURE

CHIEF OF MENTAL HEALTH or DESIGNEE SIGNATURE

Confidential saved 2014-09-10T20:16:02Z

Classification: Risk – (Central Files, Olive – Unit Health Record, White – MH File, Inmate

Case 2:15-cv-02523-MCE-KJN   Document 49   Filed 02/05/18   Page 83 of 94
Page 1 of 1
Case 2:15-cv-02523-KJN   Document 22   Filed 06/27/16   Page 12 of 22

State of California
**Interdisciplinary Progress Notes**
CDCR 7230-MH (Rev, 11/11)

Department of Corrections and Rehabilitation

| DATE | TIME | COMMENTS (USE S. O. A. P. E. FORMAT) |
|---|---|---|
| 3-22-12 | 1120 | |

| | |
|---|---|
| **SCHEDULED TIME** | |
| **ENCOUNTER REASON** PC Routine | |
| **ENCOUNTER LOCATION** B2 | |

| TABE L8 | LOC EOP |
|---|---|
| **OUTCOME CODE** 1A | **DURATION** 40 min |

**NEXT APPOINTMENT**
1 week

**NON-ENCOUNTER TIMES**
Record Review 0745 (5)
Documentation 1545 (45)
1530 (10)

**NOTES**
Schedule Psychiatry ASAP

**OUTCOME CODES**
**COMPLETED**
1A: Standard
1B: Cell Front
1C: Telemedicine
1D: Unscheduled Escort
1E: Unscheduled Escort Telemed
**REFUSED**
2A: Refused Seen
2B: Refused Unseen
**CANCELLED-Scheduling Conflict**
3A: Conflicting Ducats
3B: LOC Change
3E: Scheduling Error
3G: Undetermined
**CANCELLED-Custody**
4A: Modified Program
**CANCELLED-Movement in Inst.**
5A: Moved to another facility
5B: Institutional Inpatient
**CANCELLED-Movement out of Institution**
6A: Out to Court
6B: Out to Medical
6C: Paroled/Released/Transferred
**CANCELLED-Provider**
7A: Provider out of Time
7B: Provider Unavailable
7C: Inmate Quarantined
7D: Treatment Space Issues

S: Met with I/M for therapeutic contact.   I/m was recently placed into the EOP program to better meet his needs after he had a serious suicide attempt (jumping off of tier with noose around neck).  I/M reports that he is feeling much better on Remeron and reports that he has had occasionally "made some dumb, quick decisions."  I/M has hx of self-injurious bx (choking self) but has always denied suicidality.  I/M stated: "I am better now, though, I am not sure I need EOP tx."  Clinician told him that because of his recent suicide attempt, impulsive behavior, and hx of self-injurious bx he would remain EOP and be transferred to an EOP facility to work on developing coping strategies to better assist him with stress.

O:  I/M was cooperative, appropriate, has moderate depression, recent suicide attempt, denies current si/intent, hx of impulsive bx, adl's wnl, sleep/appetite wnl, and is med compliant right now.

A: Axis I: 296.32 MDD, recurrent, moderate w/o psychotic features
   Axis II:  799.9 Deferred
   GAF: 45

P:  Continue tx at an EOP loc and see weekly for PC contact.

E:  I/M will make appropriate referrals if in need of assistance.

| INSTITUTION | **HDSP** | CLINICIAN   D. Braun, Psy.D. | | BED NUMBER  B2 208 |
|---|---|---|---|---|

| 1. Disability Code: | 2. Accommodation: | 3.Effective Communication: | NAME (LAST, FIRST), CDCR NUMBER, DOB |
|---|---|---|---|
| ☒ TABE score ≤ 4.0 | ☐ Additional Time | ☒ Repeated in own words | **Gomez, N.** |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☒ Responses to questions | |
| ☐ DPS ☐ DNH ☐ ESL | ☐ Loud  ☐ Slower | ☐ Mannerisms | **AF7364** |
| ☐ DNS ☐ DDP | ☒ Basic  ☐ Transcribe | | **5-25-78** |
| ☐ Not Applicable | ☐ Other* | | |
| ☐ Not reached* ☒ Reached | | | |
| 4. Comments: | _____ *See chrono/notes | | |

Exhibit "C"

Confidential Saved 2014-09-10T20:16:02Z

1  Nexis Rene Gomez
   AF-7364
2  Soledad State Prison CTF
   P.O. Box 705
3  Soledad, CA 93960
   In Pro-Per

4

5

6

7

8        IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF CALIFORNIA
9            SACRAMENTO DIVISION

10

11

12

13

14  NEXIS RENE GOMEZ,                  No.: 2:15-cv-2523-KJN

15              Plaintiff,

16                                     MEMORAMDUM  OF  POINTS AND
                                       AUTHORITIES  IN  SUPPORT  OF
17       v.                            PLAINTIFF'S  REPLY  TO
                                       DEFENDANTS' MOTION FOR
18                                     SUMMARY JUDGMENT

19                                     Judge:      The Honorable Kendall
                                                   J. Newman
20  D. BRAUN, et al.,
                                       Action Filed: February 25, 2016
21              Defendants.

22

23                    INTRODUCTION

24      Plaintiff NEXIS RENE GOMEZ, alleges that Defendant Dr. Braun  and Dr.

25  Majumdar were deliberately indifferent to his medical needs in violation of the

26  Eighth Amendment as described in his First Amended Complaint.(ECF No.10.).

27  Specifically Plaintiff claim that Dr. Braun was deliberate indifferent to his

28  medical needs for almost two months by failing to take reasonable addittional

                                 1

1  steps to expedite Plaintiff's mental health evaluation with Dr. Majumdar with
2  the purpose to prescribe his anti-depressant medication in a reasonable time to
3  control his depression disorder as he did in the past. Plaintiff further claim
4  that Dr. Majumdar was deliberate indifferent to his medical needs for almost
5  two months by purportedly delaying Plaintiff's mental health evaluation to
6  prescribe him, his anti-depressant medication, which resulted in a serious and
7  significant suicide attempt occurred in February 29,2012, which almost ended
8  with Plaintiff's life.

9                          STATEMENT OF THE FACTS

10       A. Facts relating to Dr. Braun

11       On or about May 2009, Plaintiff started taking anti-depressant medication
12  to control his depression disorder that he suffers since he was 15 or 16 years
13  old. In March 2011, he arrived to High Desert State Prison from San Quentin
14  State Prison, where Plaintiff was in a stable condition because he was taking
15  his anti-depressant medication. When Plaintiff arrived to High Desert State
16  Prison, he had a medical history of prior suicide attempts, one of them was
17  recorded on camera when he was an inmate in Santa Clara County Jail. On or about
18  December 2011, Plaintiff felt depressed again in High Desert State Prison due to
19  multiple stressors. Then he decided to seek for mental health care by filing a
20  medical request slip also called CDC 7362 as he testified in his deposition,
21  (Plaintiff's Statement of Disputed Facts in Support of his reply to Defendants'
22  Motion for Summary Judgment, filed herewith, (SSDF) 1.) In January 3,2012,
23  Plaintiff met Dr. Braun with the purpose to personally request to him, mental
24  health treatment. During that encounter I reported him that I feel low having
25  depression throughtout  the day, and that I was instable  over the past few
26  months. I personally expressed him my wish to start my mental health treatment
27  due that I was very depressed and I had tried to choke myself out using a towel
28  a few days ago, including the day prior to this encounter as I testified in my

1   deposition. When Dr. Braun asked me the question Do you want to hurt yourself ?,

2   I responded to him "no" because I thought that he was talking about the time

3   when I was face to face with him. However, when I returned back to my cell. The

4   suicide thoughts were deliberate racing in my mind, and I tried to choke myself

5   out multiple times using a towel as I testified in my deposition.(SSDF 2.).

6       As a prisoner suffering from a mental health condition, I was at the mercy

7   of Dr. Braun and Dr. Majumdar.(SSDF 3.). On January 30,2012, I met Dr. Braun

8   again, during this visit I informed him that I have not seen a psychiatrist for

9   my medication complaints. He told me I am going to reffer you again, but he did

10  not informed me who or what caused the first delay of 27 days in receiving my

11  appointment with Dr. Majumdar for my medication complaint and mental health

12  evaluation. Dr. Braun never informed me that he had contacted any scheduler

13  regarding my appointment with Dr. majumdar, he just said, I am going to schedule

14  you with the psychiatrist as he wrote in his notes. (SSDF 4.) Dr. Braun alleges

15  that he was subjected to the CDCR's policy in the early 2012, he argues that

16  such policy in the early 2012, was to follow-up with patients every ninety(90)

17  days. However, Plaintiff alleges that Dr. Braun was not strictly subjected to

18  such policy, " if "  he made the medical decision to follow-up with Plaintiff

19  every 20 , 30 days  as reflected in the medical record, is because he was not

20  strictly subjected to the policy. The fact that Dr. Braun made the medical

21  decision to follow-up with Plaintiff every 20 and 30 days, is strongly

22  indicanding that Dr. Braun could make his own choices in order to help to

23  expedite Plaintiff's mental health evaluation, and expedite the administration

24  of medication with the purpose to prevent the further suicide attempt that

25  Plaintiff was exposed. Accordingly, Dr. Braun was not strictly subjected to

26  CDCR's policy in the early 2012.(SSDF 5.)

27      On January 30,2012, Plaintiff met Dr. Braun for therapeutic contact and

28  medication complaint again. At that time Plaintiff reported to him that he had

3

1  not seen a psychiatrist since our previous encounter. I reported him that I need

2  to go back on my medication because I was feeling down and depressed all the

3  time. I recall that I reported to him that I had tried to choke myself out again

4  using the towel to put a lot of pressure in my neck to stop the blood going into

5  my brain, as I testified in my deposition. I did that the night before to this

6  encounter.(SSDF 6.). On February 21,2012, I met Dr. Braun for therapeutic

7  contact again. At this visit I continued complaining of issues related to

8  depression, agitation and troubling sleeping. I reported Dr. Braun that I need

9  my medication, and that I had not seen a psychiatrist since he had made the

10  first written referral on January 3,2012. Dr. Braun told me that he is going to

11  make the written referral again. He looked normal, he was not worried or

12  frustrated in trying to get me an appointment with Dr. Majumdar.(SSDF 7.).

13      Between January 3,2012, and February 21,2012, Plaintiff's primary complaint

14  to Dr. Braun was for the specific purpose to personally request from him his

15  anti-depressant medication that plaintiff had used in the past to control his

16  severe depression disorder that plaintiff suffers since he was 15 or 16 years

17  old. However, Dr. Braun, despite knowing plaintiff's prior suicide attempts, he

18  failed to take additional steps in order to get plaintiff a timely appointment

19  with Dr. Majumdar to request to him, his anti-depressant medication. Finally

20  when Dr. Braun get me the appointment with Dr. Majumdar, it was almost two

21  months after I have made my first complaint for medication to Dr. Braun, and I

22  was very, very depressed, with a developed plan in my mind to hurt myself with

23  the bed sheet because I do not want to be suffering from depression without

24  medication. I was scared to be alive suffering from depression without

25  treatment. When I finally met Dr. Majumdar to present him my complaint of

26  medication, it was late, because the plan to hurt myself with the bed sheet, was

27  progressing in my mind for about three weeks.(SSDF 8.)

28      Therefore, Dr. Braun could do much more in order to expedite plaintiff's

1  mental health appointment and expedite plaintiff's administration of medication

2  on time in order to prevent the suicide attempt occurred in February 29,2012,

3  this action by Dr. Braun violated plaintiff's rights under the Eighth Amendment.

4      **B.  Facts relating to Dr. Majumdar**

5      On February 27,2012, I finally met Dr. Majumdar. In that encounter I

6  reported to him that I haven't taken my medications for about three months, and

7  that I felt really, really bad, because I was suffering of depression without

8  medications. I recall that day I was really, really depressed and for about

9  three weeks I had planing in my mind to kill myself with the bed sheet simply

10  because I did not want to be suffering of depression without medication. When

11  Dr. Majumdar asked me the question Do you want to hurt yourself ?, I responded

12  to him "no" because I thought he was talking about the present moment when I was

13  talking to him face to face. However, when I went back   into my cell, the

14  suicide thoughts were back racing in my mind all day and night, and once I was

15  lying in my bunk in cell 208, I used to choke myself out using the towel because

16  I thought with the towel could be more easily to kill myself than with the bed

17  sheet. I tried to choke myself out using the towel for the past three days in

18  February 26, 27, 28, But the suicide attempt using the towel failed. (SSDF 10.)

19  On February 29,2012, Dr. Majumdar failed to recognize that plaintiff presented

20  symptoms of suicide and depression. he failed to reffer him for an emergency

21  mental health evaluation that would have prevented plaintiff's suicide attempt

22  with the bed sheet occurred on February 29,2012.(SSDF 9.) During the visit that

23  plaintiff had with Dr. Majumdar on February 27,2012. Dr. Majumdar looked tense

24  and agitated, he told plaintiff that he is going to restart Mirtazapine 30 mg,

25  he was using a loud tone of voice toward plaintiff. (SSDF 11.).

26      I have received anti-depressant medication in the past to treat my severe

27  depression disorder, and the benefits of the treatment occurred in the first

28  week, which is very soon. Which means if Dr. Majumdar could have prescribed me

1  the anti-depressant medication at least one week prior to February 29,2012, is

2  reasonable probable that the suicide attempt using the bed sheet never had

3  occurred. (SSDF 12.). The Eighth Amendment of the United States Constitution,

4  instead of the CDCR's policies obligate Dr. Majumdar to effectivelly provide

5  plaintiff an adequate and necessary medical care treatment by prescribing his

6  anti-pressant medication in a reasonable time. However, the two months that Dr.

7  Majumdar purportedly delayed plaintiff's mental health treatment is unreasonable

8  under the Eighth Amendment, and it is unreasonable under any policy and

9  procedure of CDCR, and resulted in plaintiff's further suicide attempt, which

10  caused him pain, suffering, physical injury and post-traumatic stress disorder

11  after he was placed in an Enhanced Outpatient Program (E.O.P.) in Corcoran State

12  Prison, where he witnessed inmates with severe mental health illness doing crazy

13  things, worse that the one plaintiff did on February 29,2012, and this scenario

14  caused plaintiff post-traumatic stress disorder. (SSDF 13.) On February 29,2012,

15  I was totally exhausted of been suffering from depression, and tired of been

16  waiting for medication (that by February 29,2012,had not arrived yet), plaintiff

17  felt really scared to be living suffering from depression without treatment, so

18  during the prior three weeks to February 29,2012, I was developing a plan to

19  kill myself using the bed sheet. Then in February 29,2012, I decided it was the

20  time to execute my plan, then I decided to jump over the second tier with the

21  bed sheet tied around my neck, I believe I jumped over about 15 to 20 feet, but

22  I was discovered by CDCR's staff which frustrated my plan. (SSDF 14.) The

23  deliberate indifference displayed by Defendants Dr. Braun and Dr. Majumdar,

24  caused plaintiff suicide attempt in February 29,2012, which almost ended with

25  his life. The failure to treat plaintiff's severe mental health needs in a

26  reasonable time, amounts to deliberate indifference to the Eighth

27  Amendment.(SSDF 15.) Therefore Dr. Majumdar was deliberate indifferent for

28  failing to treat plaintiff's mental health condition on time.

C. **Plaintiff's Eighth Amendment Rights Were Violated by The Deliberately Indifference Displayed by the Defendants**

Where a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble,429 U.S. 97, 106 (1976). An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGucking v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs.,Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)(en banc).

A serious medical need exist if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. Jett v. Penner, 439 F.3d 1091, 1096(9th Cir. 2006). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also drawn the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces " a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847. "It is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." Id. at 842.

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-105. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir.1994); McGucking, 947 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir.1990); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985). In this regard, "[a] prisoner need not show his harm was

7

1  substantial; however, such would provide additional support for the inmate's

2  claim that the defendant was deliberately indifferent to his needs." Jett v.

3  Penner, 439 F.3d 1091, 1096 (9th Cir.2006); see also McGucking, 974 F.2d at

4  1060. In addition, a physician need not fail to treat an inmate altogether in

5  order to violate that inmate's Eighth Amendment rights. Ortiz v. City of

6  Imperial, 884 F.2d 1312, 1314 (9th Cir.1989)(per curiam). A failure to

7  competely treat a serious medical condition, even if some treatment is

8  prescribed, may constitute deliberate indifference in a particular case. Id.

9       Finally, a claim of medical malpractice or negligence is insufficient to

10  make out a violation of the Eighth Amendment. McGucking, 974 F.2d at 1059. A

11  different of opinion between a prisoner and prison medical staff as to the

12  proper course of medical treatment does not give rise to a 1983 claim. Toguchi

13  v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosis

14  or treating a medical condition, without more, does not violate a prisoner's

15  Eighth Amendment rights."); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.

16  1996). In this case plaintiff was complaining to Dr. Braun for his medication

17  for almost two months. According to Dr. Braun's notes, plaintiff's first

18  complaint for medication was in January 3,2012.(ECF 10 at p. 14.). However,

19  and according to the evidence submitted by plaintiff, by  February 21,2012, it

20  would have been clear that plaintiff had not been seen by Dr. Majumdar ASAP,

21  and arguably Dr. Braun should have taken additional steps to ensure plaintiff

22  was seen by Dr. Majumdar. Therefore, plaintiff states a potentially cognizable

23  Eighth Amendment claim against Dr. Braun. Regarding to Dr. Majumdar, plaintiff

24  claim that Dr. Majumdar is the doctor that he should have seen two months

25  prior regarding his medication complaint But it was not until February

26  27,2012, when plaintiff saw Dr. Majumdar (ECF 10 at p. 20.). On that date Dr.

27  Majumdar finally prescribed plaintiff Mirtazapine 30 mg for his depression.(by

28  February 29,2012, plaintiff's treatment had not arrived to the prison yet).

1  However, plaintiff claim that the time when Dr. Majumdar appeared to prescribe

2  his treatment, it was unreasonable late because during the past three weeks

3  prior to February 29,2012, plaintiff was developing a plan to kill himself

4  with the bed sheet because he was exhausted of been suffering from depression

5  due to lack of medication. He was in fear to be suffering alone without

6  treatment. And finally in the morning of February 29,2012, plaintiff took the

7  decission to end with his life by jumping from 15 to 20 feet from the second

8  tier, with a sheet tied  to his neck, but his plan was interrupted by CDCR's

9  staff. Plaintiff claim that " if  Dr. Majumdar had prescribed him, his anti-

10  depressant medication at least one week prior to February 29,2012.", is

11  reasonable probable that the suicide attempt using the bed sheet had never

12  occurred. Therefore, Dr. Majumdar's failure to treat plaintiff's medical needs

13  on time, violated plaintiff civil rights. Thus, plaintiff states a potentially

14  cognizable Eighth Amendment claim against Dr. Majumdar, and both Defendants

15  are liable under 42 U.S.C § 1983.

16

17

## CONCLUSION

18      The evidence submitted by plaintiff herewith, demonstrates that in the

19  three medical visits that he had with Dr. Braun, his primary complaint for

20  almost two months were for medication. Dr. Braun was deliberate indifferent to

21  plaintiff's serious mental health needs for almost two months, because despite

22  knowing about plaintiff's prior suicide attempts. He failed to expedite

23  plaintiff's referral with Dr. Majumdar and failed to expedite the

24  administration of medication. Dr. Braun's medical records reflect that he

25  noted "Schedule Psychiatrist ASAP" on each medical record dated January

26  3,2012, January 30,2012, and February 21,2012.(ECF 10 at 14, 16, 18.),

27  However, by February 21,2012, it would have been clear that plaintiff had not

28  been seen Dr. Majumdar ASAP. Therefore, Dr. Braun failed to take additional

1   steps to ensure plaintiff was seen by Dr. Majumdar ASAP as he wrote in his notes.

2   The evidence submitted herewith, also demonstrate that plaintiff had

3   taken mental health treatment in the past for his severe depression disorder,

4   and the benefits of such treatment occurred in about 1 or 2 weeks, which is

5   very soon. Therefore, plaintiff claim that if his psychiatrist consultation

6   with Dr. Majumdar should have been completed at least one week prior to

7   February 29,2012,is reasonable probable that the suicide attempt using the bed

8   sheet never had occurred. Therefore, Defendants' motion for summary judgment

9   should be denied and this Court should proceed the case to trial.

10  Dated: <u>February 1, 2018</u>                    Respectfully submitted,

Nexis Rene Gomez
In Pro-Per

10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

NEXIS RENE GOMEZ,
_____
            Plaintiff,

v.                               Case Number: 2:15-cv-2523-KJN

D. BRAUN, et al.,
_____
            Defendants.

                               PROOF OF SERVICE

_____ /

I hereby certify that on     FEBRUARY 1, 2018,    , I served a copy

of the attached   MEMORANDUM OF POINTS AND AUTHORITIES    .

by placing a copy in a postage paid envelope addressed to the person(s) hereinafter

listed, by depositing said envelope in the United States Mail at

SOLEDAD STATE PRISON,CTF    :

(List Name and Address of Each
Defendant or Attorney Served)

1. Clerk of the U.S. District Court
   Eastern District of California
   501 I Street, Suite 4200
   Sacramento, CA 95814

2. Office of the Attorney General
   1300 I Street, Suite 125
   P.O. Box 944255
   Sacramento, CA 94244-2550

I declare under penalty of perjury that the foregoing is true and correct.

_____
(Signature of Person Completing Service)