1   XAVIER BECERRA, State Bar No. 118517
    Attorney General of California
2   ALBERTO L. GONZÁLEZ, State Bar No. 117605
    Supervising Deputy Attorney General
3   JOHN C. BRIDGES, State Bar No. 248553
    Deputy Attorney General
4    1300 I Street, Suite 125
     P.O. Box 944255
5    Sacramento, CA 94244-2550
     Telephone: (916) 210-7529
6    Fax: (916) 322-8288
     E-mail: John.Bridges@doj.ca.gov
7   *Attorneys for Defendants*
    *Dr. Braun and Dr. Majumdar*

8

9               IN THE UNITED STATES DISTRICT COURT

10             FOR THE EASTERN DISTRICT OF CALIFORNIA

11                      SACRAMENTO DIVISION

12

| | |
|---|---|
| 13 **NEXIS RENE GOMEZ,** | 2:15-cv-2523-KJN |
| 14 Plaintiff, | **DEFENDANTS' REPLY TO** |
| 15 | **PLAINTIFF'S REPLY TO** |
| v. | **DEFENDANTS' STATEMENTS OF** |
| 16 | **UNDISPUTED FACTS** |
| 17 **D. BRAUN, et al.,** | Judge:        The Honorable Kendall J. |
| | Newman |
| 18 Defendants. | Action Filed:  February 25, 2016 |

19

20        Defendants Braun and Majumdar submit the following reply to Plaintiff's reply to

21   Defendants' statement of undisputed material facts and their response to Plaintiff's additional

22   material undisputed facts.  These facts are undisputed for purposes of this motion only.

23        **Defendants' Undisputed Fact 1:**  Dr. Braun earned a Bachelor of Science degree from

24   Oral Roberts University in December of 2002, and a Master of Arts degree in Marriage and

25   Family Therapy from Oral Roberts University in May of 2003.  He earned a Doctor of

26   Psychology degree in Clinical Psychology from Regent University in May of 2009. (Braun dec., ¶

27   2.)

28        **Plaintiff's Response:**  Plaintiff admit those facts as stated by Dr. Braun.

1

1        **Defendants' Reply:**  Submitted as undisputed.

2

3        **Defendants' Undisputed Fact 2:**  From August of 2006 until June of 2007, Dr. Braun

4    worked at several different locations as a clinical practica student, providing counseling services

5    including clinical assessments of individuals concerning risk of suicide and other emotional

6    difficulties.  He completed a Pre-Doctoral Internship at Kaiser Permanente, Fresno, from August

7    of 2008 to August of 2009, in which he provided individual therapy, family and couples therapy,

8    and conducted psychological evaluations.  He has worked as an In-Home Counsel from January

9    of 2005 until June of 2008, providing comprehensive therapy services for individuals and

10   families.  From September of 2009 until August of 2017, he worked as a Clinical Psychologist at

11   both Wasco State Prison and High Desert State Prison, providing comprehensive services to

12   individuals who are chronically mentally ill and/or are acutely in crisis.  This included working

13   with individuals who are suicidal, homicidal, and/or gravely disabled. (Braun dec., ¶ 2.)

14       **Plaintiff's Response:**  Plaintiff would admit these facts as recited by Dr. Braun.

15       **Defendants' Reply:**  Submitted as undisputed.

16

17       **Defendants' Undisputed Fact 3:**  Dr. Braun evaluated and treated Plaintiff for

18   psychological complaints on January 3, 2012. (Braun dec., ¶ 3.)

19       **Plaintiff's Response:**  Plaintiff admit that Dr. Braun evaluated him for psychological

20   complaints on January 3, 2012.  However, Plaintiff deny that Dr. Braun gave him any treatment

21   for his complaint on that date, the only thing that Dr. Braun did for Plaintiff, was counseling him,

22   and scheduled him for psychiatry ASAP, according to his notes.  (Gomez dec., ¶¶ 4, 5.)

23       **Defendants' Reply:**  Plaintiff denies that Dr. Braun gave him any treatment, but admits

24   that he provided counseling.  That constitutes treatment, especially in the medical field of

25   psychology.

26

27       **Defendants' Undisputed Fact 4:**  On January 3, 2012, Plaintiff complained to Dr. Braun

28   that he was feeling depressed. (Braun dec., ¶ 3.)

2

1    **Plaintiff's Response:**  Plaintiff admit that on January 3, 2012, he complained to Dr.  Braun

2    that he was feeling depressed.  (Gomez dec., ¶¶ 4, 13.)

3    **Defendants' Reply:**  Submitted as undisputed.

4

5    **Defendants' Undisputed Fact 5:**  On January 3, 2012, Plaintiff told Dr. Braun that he tried

6    to "choke myself out" a few weeks earlier, but denied any suicidal ideation. (Braun dec., ¶ 3.)

7    **Plaintiff's Response:**  Plaintiff admit that on January 3, 2012, he told Dr. Braun that he

8    tried to choke himself out.  But Plaintiff told him that he tried to choke himself out a couple days

9    earlier, as Plaintiff testified in his deposition.  Plaintiff admit that he denied suicidal ideation in

10   the presence of Dr. Braun only.  However, he deny that he do not have suicide plans, because

11   when he came back into his cell his mind was racing and thinking about suicide all  the night

12   long.  (Gomez dec., ¶¶ 4, 5.)

13   **Defendants' Reply:**  Plaintiff admits that he did not tell Dr. Braun that he had suicidal

14   ideation.  Therefore, Dr. Braun did not have any objective reason to believe that Plaintiff was

15   contemplating suicide.  Although Plaintiff argues that he did think about suicide after the visit

16   with Dr. Braun, there was no way for the doctor to know what Plaintiff would be thinking after

17   the appointment.

18

19   **Defendants' Undisputed Fact 6:**  On January 3, 2012, in Dr. Braun's medical opinion,

20   Plaintiff needed to see a psychiatrist to reinstate his prior anti-depressant medication. (Braun dec.,

21   ¶ 3.)

22   **Plaintiff's Response:**  Plaintiff admit Dr. Braun's medical opinion, However Plaintiff claim

23   that almost two months delaying this medication was deliberate indifference. (Gomez dec., ¶ 18.)

24   **Defendants' Reply:**  Submitted as undisputed.

25

26   **Defendants' Undisputed Fact 7:**  Dr. Braun could not prescribe Plaintiff's anti-depressant

27   medication. (Braun dec., ¶ 3.)

28   / / /

1    **Plaintiff's Response:**  Plaintiff admit that Dr. Braun could not prescribe him his anti-

2    depressant medication, However he could take additional steps. (Gomez dec., ¶ 6.)

3    **Defendants' Reply:**  Submitted as undisputed as to the stated fact.

4

5    **Defendants' Undisputed Fact 8:**  On January 3, 2012, Dr. Braun referred Plaintiff to a

6    psychiatrist by including the referral in his visit notes, and by contacting the scheduler at the

7    prison to request that Plaintiff be seen by a psychiatrist. (Braun dec., ¶ 3.)

8    **Plaintiff's Response:**  Plaintiff admit this statement in part, specifically he admit the

9    portion where Dr. Braun stated that on January 3, 2012, he referred Plaintiff to a psychiatrist by

10   including his referral in his visit notes.  However, Plaintiff object the portion where Dr. Braun

11   states: And by contacting the scheduler at the prison to request that Plaintiff be seen by a

12   psychiatrist. (Braun dec., ¶ 3.), Plaintiff contends that this fact stated by Dr. Braun is not

13   supported by any evidence in the record, he is no showing that he contacted the scheduler,

14   therefore Plaintiff object to this portion stated by him. (Gomez dec., ¶ 7.)

15   **Defendants' Reply:**  The evidence supporting this fact is Dr. Braun's declaration, which is

16   appropriate pursuant to Federal Rule of Civil Procedure, Rule 56(c)(4).

17

18   **Defendants' Undisputed Fact 9:**  CDCR's policy in the early-2012 timeframe was to

19   follow-up with patients every ninety (90) days. (Braun dec., ¶ 4.)

20   **Plaintiff's Response:**  Plaintiff object to this fact on the grounds that is not supported by

21   any reliable evidence.

22   **Defendants' Reply:**  The evidence supporting this fact is Dr. Braun's declaration, which is

23   appropriate pursuant to Federal Rule of Civil Procedure, Rule 56(c)(4).

24

25   **Defendants' Undisputed Fact 10:**  Given Plaintiff's complaints of depression, Dr. Braun

26   made the medical decision to follow-up with him every thirty (30) days. (Braun dec., ¶ 4.)

27   **Plaintiff's Response:**  Plaintiff admit that Dr. Braun elected his medical decision to follow-

28   up with him every thirty (30) days instead of the ninety (90) days as required by the CDCR's

4

1    policy in the early 2012, it appears that Dr. Braun have more choices, to treat plaintiff's mental

2    health condition. (Gomez dec., ¶ 8.)

3        **Defendants' Reply:**  Submitted as undisputed as to the stated fact.

4

5        **Defendants' Undisputed Fact 11:**  Dr. Braun saw Plaintiff on January 30, 2012, at which

6    time he complained that he had not seen a psychiatrist since their previous visit.  He told Dr.

7    Braun that he was still feeling depressed. (Braun dec., ¶ 4.)

8        **Plaintiff's Response:**  Plaintiff admit that Dr. Braun saw him on January 30, 2012, and he

9    admit that he told Dr. Braun that he had not seen the psychiatrist, and that he was still feeling

10   depressed. (Gomez dec., ¶ 9.)

11       **Defendants' Reply:**  Submitted as undisputed.

12

13       **Defendants' Undisputed Fact 12:**  On January 30, 2012, Dr. Braun again made a referral

14   for Plaintiff to see a psychiatrist by both including it in his visit notes and contacting the

15   scheduler after the visit to specifically request the referral. (Braun dec., ¶ 4.)

16       **Plaintiff's Response:**  Plaintiff admit this statement in part, specifically he admit the

17   portion stating:  On January 30, 2012, Dr. Braun again made a referral for Plaintiff to see a

18   psychiatrist by including it in his visit notes.  Plaintiff object on hearsay grounds to the portion

19   where Dr. Braun states that he contacted the scheduler After the visit to specifically request the

20   referral as provided in Braun's dec, ¶ 4. Plaintiff claim this fact is not supported by any credible

21   evidence in the record, which constitutes hearsay. (Gomez dec., ¶ 7.)

22       **Defendants' Reply:**  The evidence supporting this fact is Dr. Braun's declaration, which is

23   appropriate pursuant to Federal Rule of Civil Procedure, Rule 56(c)(4).

24

25       **Defendants' Undisputed Fact 13:**  Dr. Braun saw Plaintiff again on February 21, 2012.

26   At that visit, Plaintiff claimed that he still had ongoing depression, but had not seen a psychiatrist.

27   (Braun dec., ¶ 5.)

28   / / /

**Plaintiff's Response:**  Plaintiff admit the fact that he saw Dr. Braun on February 21, 2012. He also admit that he told Dr. Braun about his ongoing depression, and that he had not seen a psychiatrist. (Gomez dec., ¶ 10.)

**Defendants' Reply:**  Submitted as undisputed.

**Defendants' Undisputed Fact 14:**  Dr. Braun was frustrated that despite his attempts to get Plaintiff an appointment with a psychiatrist, he had not received the appointment. (Braun dec., ¶ 5.)

**Plaintiff's Response:**  Plaintiff object to the fact that Dr. Braun was frustrated that despite his attempts to get Plaintiff an appointment with a psychiatrist, he had not received the appointment. There is no evidence that Dr. Braun was in fact frustrated, if he was so, this fact is irrelevant and it cannot be admitted at trial. (Gomez dec., ¶ 11.)

**Defendants' Reply:**  The evidence supporting this fact is Dr. Braun's declaration, which is appropriate pursuant to Federal Rule of Civil Procedure, Rule 56(c)(4).  Dr. Braun's subjective thought-process regarding Plaintiff's medical situation is not only relevant at the trial, but is the ultimate issue to be decided at trial.

**Defendants' Undisputed Fact 15:**  On February 21, 2012, Dr. Braun referred Plaintiff to a psychiatrist by including the referral in his notes and contacting the scheduler. (Braun dec., ¶ 5.)

**Plaintiff's Response:**  Plaintiff admit this statement in part, specifically this portion:  On February 21, 2012, Dr. Braun referred Plaintiff to a psychiatrist by including the referral in his notes. However, Plaintiff object to the portion that States: And contacting the scheduler. (Braun dec., ¶ 5.) Plaintiff claim that this fact cannot be admitted, instead, he object on hearsay grounds, because Dr. Braun did not provided any evidence proving that he contacted the scheduler as stated, Therefore, this statement constitutes hearsay. (Gomez dec., ¶ 7.)

**Defendants' Reply:**  The evidence supporting this fact is Dr. Braun's declaration, which is appropriate pursuant to Federal Rule of Civil Procedure, Rule 56(c)(4).

/ / /

**Defendants' Undisputed Fact 16:**  On February 27, 2012, Plaintiff was seen by one of the prison's contract psychiatrists, Dr. Majumdar. (Braun dec., ¶ 6.)

**Plaintiff's Response:**  Plaintiff admit this statement.

**Defendants' Reply:**  Submitted as undisputed.

**Defendants' Undisputed Fact 17:**  Dr. Braun had no control or influence over the referrals to psychiatry.  As a clinical psychologist, all he could do what make the referral and follow-up with the patient to counsel him about his mental health issues. (Braun dec., ¶ 7.)

**Plaintiff's Response:**  Plaintiff admit this statement in part, specifically he admit the portion stating: Dr. Braun had no control over the referrals to psychiatry. Plaintiff, object to the part stating: Or influence over the referrals. Plaintiff claim, that Dr. Braun as a clinician was obligated under the Eighth Amendment of the United States Constitution to take additional steps to ensure that plaintiff been seen by the psychiatry as soon as possible to prescribe him his anti-depressant medications, to prevent a possible suicide attempt, due that plaintiff committed suicide attempts in the past. (See Gomez dec., ¶ 6.)

**Defendants' Reply:**  Plaintiff does not offer any admissible evidence to refute the stated fact.  He merely identifies his opinion about what Dr. Braun should have done without a foundation basis for that opinion.

**Defendants' Undisputed Fact 18:**  Whether the referral was processed was up to the scheduler, over whom Dr. Braun had no control.  As a clinical psychologist, Dr. Braun was at the mercy of the scheduler and the contract psychiatrist. (Braun dec., ¶¶ 7-8.)

**Plaintiff's Response:**  Plaintiff admit this statement in part, specifically he admit the portion stating that Dr. Braun had not control over the scheduler. However, Plaintiff deny that Dr. Braun was at the mercy of the scheduler and the contract psychiatrist as provided by him. Instead, Plaintiff claim that as clinician psychologist Dr. Braun could do much more to help him and make sure whether or not the first, second or third referral was processed by contacting the scheduler's supervisor or by contacting superior staff. However, he never attempted to take additional steps to

7

1   ensure Plaintiff was seen by the psychiatrist ASAP to prescribe him, his anti-depressant

2   medication despite Dr. Braun knew in his mind that Plaintiff suffers a mental health condition,

3   with prior suicide attempts in accordance to his medical records. (Gomez dec., ¶ 8.)

4         **Defendants' Reply:**  Plaintiff does not offer any admissible evidence to refute the stated

5   fact.  He merely identifies his opinion about what Dr. Braun should have done without a

6   foundation basis for that opinion.

7

8         **Defendants' Undisputed Fact 19:**  The contract psychiatrists were not CDCR employees

9   and typically worked only on weekends. (Braun dec., ¶ 8.)

10        **Plaintiff's Response:**  Plaintiff deny this statement in full, because he alleges that since the

11  contract psychiatrist were contracted for CDCR, is because they worked for them, regarding the

12  fact that they were required to work the weekends only. Dr. Braun is not submitting evidence to

13  support this fact. Therefore, Plaintiff object to this statement on lack of foundation.

14        **Defendants' Reply:**  The evidence supporting this fact is Dr. Braun's declaration, which is

15  appropriate pursuant to Federal Rule of Civil Procedure, Rule 56(c)(4).

16

17        **Defendants' Undisputed Fact 20:**  The contract psychiatrists would see 40-50 patients per

18  day, and there were generally far more than 100 patients per weekend who needed treatment.

19  (Braun dec., ¶ 8.)

20        **Plaintiff's Response:**  Plaintiff object to this statement on hearsay grounds, because there

21  is no evidence in this record supporting this fact.

22        **Defendants' Reply:**  The evidence supporting this fact is Dr. Braun's declaration, which is

23  appropriate pursuant to Federal Rule of Civil Procedure, Rule 56(c)(4).

24

25        **Defendants' Undisputed Fact 21:**  Dr. Braun does not know why Plaintiff was unable to

26  see a psychiatrist until February 27th, even though Dr. Braun made three referrals for him to see

27  one. (Braun dec., ¶ 8.)

28  / / /

Defendants' Reply To Plaintiff's Reply To Defendants' Statements Of Undisputed Facts (2:15-cv-2523-KJN)

1     **Plaintiff's Response:**  Plaintiff deny this statement in full. Instead he claim that there is

2     ample amount of evidence in the record to support a conclusion that Dr. Braun was deliberate

3     indifferent to Plaintiff's mental health needs, by failing to take additional steps to ensure Plaintiff

4     was seen by Dr. Majumdar ASAP to prescribe him his anti-depressant medications due that

5     Plaintiff was complained for this medication for about two months. (See Exhibits B, E and F.)

6     **Defendants' Reply:**  The evidence supporting this fact is Dr. Braun's declaration, which is

7     appropriate pursuant to Federal Rule of Civil Procedure, Rule 56(c)(4).  Moreover, Plaintiff does

8     not offer any admissible evidence to refute the stated fact.  He merely identifies his opinion about

9     what Dr. Braun should have done without a foundation basis for that opinion.

10

11     **Defendants' Undisputed Fact 22:**  The prison had a Mental Health Crisis Bed (MHCB)

12     located within the Correctional Treatment Center (CTC). (Braun dec., ¶ 9.)

13     **Plaintiff's Response:**  Plaintiff admit this statement.

14     **Defendants' Reply:**  Submitted as undisputed.

15

16     **Defendants' Undisputed Fact 23:**  The standard for an involuntary commitment to the

17     MHCB is whether the patient poses a danger to himself and/or others, or has a grave disability.

18     The standard is the same as that contained within the Lanterman-Petris-Short Act (Cal. Welf. &

19     Inst. Code § 5150.) (Braun dec., ¶ 9.)

20     **Plaintiff's Response:**  Admitted.

21     **Defendants' Reply:**  Submitted as undisputed.

22

23     **Defendants' Undisputed Fact 24:**  Dr. Braun could not commit a patient to the MHCB

24     without probable cause, and determining probable cause for this purpose is discretionary. (Braun

25     dec., ¶ 9.)

26     **Plaintiff's Response:**  Plaintiff object this statement.  (Gomez dec., ¶¶ 12-13.)

27     / / /

28     / / /

9

1    **Defendants' Reply:**  Plaintiff states no basis for his objection.  The evidence for this stated

2    fact is Dr. Braun's expertise as a medical provider, and Plaintiff offers no contradictory expert

3    opinion.

4

5    **Defendants' Undisputed Fact 25:**  Based on his clinical experience and medical training,

6    Dr. Braun's medical opinion was that Plaintiff did not pose a danger to himself between January

7    3, 2012 and February 27, 2012, nor was he gravely disabled to justify an involuntary

8    commitment. (Braun dec., ¶ 9.)

9    **Plaintiff's Response:**  Plaintiff deny this statement in full on the basis that his claims that

10   are contained in his complaint are no based on the grounds that he wanted to be commited in the

11   MHCB. Plaintiff's claims are based on the grounds that Dr. Braun was deliberately indifferent by

12   failing to expedite the referral for Plaintiff's appointment with the psychiatrist to prescribe him his

13   anti-depressant medication and that the psychiatrist's improperly two months delay in prescribe

14   Plaintiff's mental health treatment was harmful and resulted in a further significant suicide

15   attempt. (See Exhibit D.), (Gomez dec., ¶¶ 12-13.)

16   **Defendants' Reply:**

17

18   **Defendants' Undisputed Fact 26:**  Dr. Braun had no involvement in creating the CDCR's

19   mental health policies at High Desert. (Braun dec., ¶ 10.)

20   **Plaintiff's Response:**  Plaintiff admit this fact.

21   **Defendants' Reply:**

22

23   **Defendants' Undisputed Fact 27:**  Dr. Braun had no choice but to adhere to CDCR's

24   policies and procedures. (Braun dec., ¶ 10.)

25   **Plaintiff's Response:**  Plaintiff deny the statements provided by Dr. Braun in SSUF No. 27

26   as well the statements provided in Braun dec., ¶ 10. Plaintiff claim that Dr. Braun in fact had

27   more choices to expedite the referral for Plaintiff's appointment with the psychiatrist to prescribe

28   him his anti-depressant medication and prevent the significant suicide attempt that Plaintiff was

                                                      10

exposed. Plaintiff claim, since Dr. Braun made the medical decision to follow-up with Plaintiff every thirty (30) days as provided in SSUF No. 10, see also Braun dec., ¶ 4, even when according to Dr. Braun the policies of High Desert in the early 2012 time frame was to follow-up with patients every ninety (90) days. However in this situation he made the medical decision to follow-up with Plaintiff every thirty (30) days, which is suggesting that Dr. Braun as a clinician psychologist, had multiple choices to do in order to expedite Plaintiff's mental health treatment to prevent the suicide attempt occurred in February 29, 2012 due to the lack of medications that Plaintiff was exposed. (See Gomez dec., ¶ 8.)

**Defendants' Reply:**

**Defendants' Undisputed Fact 28:**  Dr. Braun was not "deliberately indifferent" to Plaintiff's medical needs. (Braun dec., ¶ 10.)

**Plaintiff's Response:**  Plaintiff deny that Dr.   Braun was not deliberately indifferent to his mental health needs as provided in this statement and Braun dec., ¶ 10. Instead, he claim that Dr. Braun was deliberately indifferent to his mental health needs for the reasons discussed in Plaintiff's complaint. (see Exhibit G.), (Gomez dec., ¶ 6.)

**Defendants' Reply:**

**Defendants' Undisputed Fact 29:**  Dr. Braun gave Plaintiff all of the treatment that he deemed was medically necessary for his depression. (Braun dec., ¶ 10.)

**Plaintiff's Response:**  Plaintiff deny that he received from Dr.     Braun all of the treatment that he deemed was medically necessary for his depression as provided in this statement and Braun dec., ¶ 10. Because in every encounter that Plaintiff had with Dr. Braun his complaint was for medication, that Dr. Braun did not prescribed. Dr. Braun did not take additional steps to ensure that Plaintiff receive his medication ASAP in order to prevent a suicide attempt due that Plaintiff had prior history of suicide attempts in the past. (Gomez dec., ¶ 13;) All that Dr. Braun could do what make the referral and counsel Plaintiff about his mental health issues every 30 days as stated in Defendant's SSUF No. 17, and Braun dec., ¶ 7.)

11

1      **Defendants' Reply:**

2

3      **Defendants' Undisputed Fact 30:**  Dr. Majumdar earned a Bachelor of Arts degree from

4      Oberlin College in 2002.  He earned a Doctor of Medicine degree from Ross University School of

5      Medicine in 2006. (Majumdar dec., ¶ 2.)

6          **Plaintiff's Response:**  Plaintiff admit this fact as provided by Dr. Majumdar.

7          **Defendants' Reply:**  Submitted as undisputed.

8

9      **Defendants' Undisputed Fact 31:**  Dr. Majumdar is board certified in Psychiatry and

10     Neurology, as well as Addiction Medicine. (Majumdar dec., ¶ 2.)

11         **Plaintiff's Response:**  Plaintiff admit this statement provided by Dr. Majumdar.

12         **Defendants' Reply:**  Submitted as undisputed.

13

14     **Defendants' Undisputed Fact 32:**  Dr. Majumdar is licensed to practice medicine in

15     California and Michigan. (Majumdar dec., ¶ 2.)

16         **Plaintiff's Response:**  Admitted.

17         **Defendants' Reply:**  Submitted as undisputed.

18

19     **Defendants' Undisputed Fact 33:**  Dr. Majumdar has significant clinical experience

20     dealing with patients who exhibit suicidal ideation and depression, and has been trained to

21     recognize the symptoms of someone who poses a risk to himself and/or others. (Majumdar dec., ¶

22     2.)

23         **Plaintiff's Response:**  Admitted.  (See Gomez dec., ¶ 15.)

24         **Defendants' Reply:**  Submitted as undisputed.

25

26     **Defendants' Undisputed Fact 34:**  Dr. Majumdar treated Plaintiff on February 27, 2012, at

27     which time Plaintiff complained of feeling depressed. (Majumdar dec., ¶ 3.)

28         **Plaintiff's Response:**  Admitted.  (See Gomez dec., ¶ 16.)

12

1    **Defendants' Reply:**  Submitted as undisputed.

2

3    **Defendants' Undisputed Fact 35:**  Plaintiff told Dr. Majumdar that he had trouble with

4    sleep and appetite, but denied any suicidality, homicidality, or psychotic symptoms. (Majumdar

5    dec., ¶ 3.)

6    **Plaintiff's Response:**  Plaintiff admit this incomplete statement provided by Dr. Majumdar.

7    (Gomez dec., ¶¶ 16, 17.)

8    **Defendants' Reply:**

9

10    **Defendants' Undisputed Fact 36:**  In Dr. Majumdar's medical opinion, Plaintiff's

11    depression could be alleviated by restarting his prior prescription for Mirtazapine 30 mg, which is

12    a common anti-depressant. (Majumdar dec., ¶ 3.)

13    **Plaintiff's Response:**  Admitted, however he restarted Mirtazapine 2 months late. (Gomez

14    dec., ¶ 14.)

15    **Defendants' Reply:**

16

17    **Defendants' Undisputed Fact 37:**  In the timeframe of the incidents alleged in Plaintiff's

18    lawsuit, contract psychiatrists did not see referral notices unless they were attached to the

19    patient's chart on the day of the scheduled visit. (Majumdar dec., ¶ 4.)

20    **Plaintiff's Response:**  Plaintiff object to this statement for lack of foundation, Dr.

21    Majumdar is failing to include supporting evidence supporting this fact.  Therefore, this fact

22    cannot be admitted as true for lack of foundation.

23    **Defendants' Reply:**

24

25    **Defendants' Undisputed Fact 38:**  Dr. Majumdar did not receive any referral information

26    prior to the date of the scheduled visit, so he had no way of knowing when a patient was referred

27    to his care. (Majumdar dec., ¶ 4.)

28    / / /

1    **Plaintiff's Response:**  Plaintiff object to this fact on the basis that Dr. Majumdar has no

2    provided evidence to support his fact.  Therefore, this fact cannot admitted as true because its lack

3    of foundation.

4        **Defendants' Reply:**

5

6        **Defendants' Undisputed Fact 39:**  As a contractor, Dr. Majumdar simply came in and saw

7    whomever was scheduled for him that day. (Majumdar dec., ¶ 4.)

8        **Plaintiff's Response:**  Plaintiff object to this statement because no evidence supporting this

9    fact.

10       **Defendants' Reply:**

11

12       **Defendants' Undisputed Fact 40:**  Dr. Majumdar did not intentionally or deliberately

13   avoid treating Plaintiff, nor did he contribute to the delay in Plaintiff's medical visit with Dr.

14   Majumdar. (Majumdar dec., ¶ 4.)

15       **Plaintiff's Response:**  Plaintiff deny this fact, he claim that there is evidence in the record

16   that suggest that Dr. Majumdar intentionally or deliberately avoid treating Plaintiff. He claim that

17   Dr. Majumdar directly contributed to the two months delay in prescribing Plaintiff's anti-

18   depressant medication just because he involuntary refused to take his medication about three

19   times in the past. (Gomez dec., ¶ 18.)

20       **Defendants' Reply:**

21

22       **Defendants' Undisputed Fact 41:**  Mirtazapine 30 mg is a standard anti-depressant.

23   (Majumdar dec., ¶ 5.)

24       **Plaintiff's Response:**  Plaintiff admit this fact.

25       **Defendants' Reply:**  Submitted as undisputed.

26

27       **Defendants' Undisputed Fact 42:**  The medical community recognizes that doctors do not

28   know if an antidepressant will be effective for someone until the patient has been on a sufficient

14

does for at least eight weeks.  This is because the immediate effect an anti-depressant has, such as raising serotonin levels, leads to downstream effects that treat the symptoms, such as reducing stress hormones or their effects. (Majumdar dec., ¶ 5.)

**Plaintiff's Response:**  Plaintiff object to this statement on the grounds that this would be legitimate subject for expert opinion. Dr. Majumdar is no offering an expert opinion to support this fact. Therefore, it cannot be admitted as true.

**Defendants' Reply:**


**Defendants' Undisputed Fact 43:**  Some patients may see benefits sooner, but for others it might have no noticeable benefit before eight weeks of consistent dosing and then suddenly feel relief after eight weeks. (Majumdar dec., ¶ 5.)

**Plaintiff's Response:**  Plaintiff admit this statement in part, specifically the portion: Some patients may see benefits sooner. Because in Plaintiff's case, when he takes mental health treatment, the benefit occur in the first week, which is very sooner, Plaintiff deny the rest of the statement. (Gomez dec., ¶ 19.)

**Defendants' Reply:**


**Defendants' Undisputed Fact 44:**  The prison had a Mental Health Crisis Bed (MHCB) located within the Correctional Treatment Center (CTC). (Majumdar dec., ¶ 6.)

**Plaintiff's Response:**  Admitted.

**Defendants' Reply:**  Submitted as undisputed.


**Defendants' Undisputed Fact 45:**  The standard for an involuntary commitment to the MHCB is whether the patient poses a danger to himself and/or others, or has a grave disability. The standard is the same as that contained within the Lanterman-Petris-Short Act (Cal. Welf. & Inst. Code § 5150.) (Majumdar dec., ¶ 6.)

**Plaintiff's Response:**  Admitted.

**Defendants' Reply:**  Submitted as undisputed.

15

1

2      **Defendants' Undisputed Fact 46:**  Dr. Majumdar could not commit a patient to the

3   MHCB without probable cause, and determining probable cause for this purpose is discretionary.

4   (Majumdar dec., ¶ 6.)

5      **Plaintiff's Response:**  Admitted.  (Gomez dec., ¶ 12.)

6      **Defendants' Reply:**  Submitted as undisputed.

7

8      **Defendants' Undisputed Fact 47:**  Based on Dr. Majumdar's clinical experience and

9   medical training, his medical opinion was that Plaintiff did not pose a danger to himself on

10   February 27, 2012, nor was he gravely disabled to justify an involuntary commitment. (Majumdar

11   dec., ¶ 6.)

12      **Plaintiff's Response:**  Plaintiff deny this statement if full on the basis that Dr. Majumdar

13   has failed to recognize that Plaintiff was in danger to himself on February 27, 2012, due that he

14   was gravely disabled suffering from a mental health condition, with priors suicide attempts

15   recorded in Plaintiff's medical record since he was in Santa Clara Main Jail in santa Clara County.

16   Plaintiff told Dr. Majumdar that he was feeling: **"really,really bad. I want to go back to my old**

17   **dosage I feel really depressed.** However, he failed to recognize this symptoms, which required

18   the Immediate attention by Dr. Majumdar in order to prevent any risk that Plaintiff could be

19   exposed. However, Dr. Majumdar failed to intervene, which resulted in Plaintiff's significant

20   suicide attempt for lack of medication. (Gomez dec., ¶ 15.)

21      **Defendants' Reply:**

22

23      **Defendants' Undisputed Fact 48:**  Dr. Majumdar had no involvement in creating the

24   CDCR's mental health policies at High Desert. (Majumdar dec., ¶ 8.)

25      **Plaintiff's Response:**  Admitted.

26      **Defendants' Reply:**  Submitted as undisputed.

27   / / /

28   / / /

16

1   **Defendants' Undisputed Fact 49:** Dr. Majumdar had no choice but to adhere to CDCR's

2   policies and procedures. (Majumdar dec., ¶ 8.)

3   **Plaintiff's Response:** Plaintiff deny this statement provided by Dr. Majumdar. He claim

4   that the choice that Dr. Majumdar had was to prevent Plaintiff's suicide attempt by

5   prescribing him his anti depressant medication on a reasonable time. Instead, he waited almost

6   two months to meet Plaintiff to prescribe him his medication. This time was unreasonable late,

7   which resulted in Plaintiff's further suicide attempt. (Gomez dec., ¶ 20.)

8   **Defendants' Reply:**

9

10  **Defendants' Undisputed Fact 50:** At no time was Dr. Majumdar "deliberately

11  indifferent" to Plaintiff's medical needs. (Majumdar dec., ¶ 8.)

12  **Plaintiff's Response:** Plaintiff deny this statement in full on the basis that All the time

13  Dr. Majumdar was deliberately indifferent to Plaintiff's medical needs, by failing to met him on a

14  reasonable time to prescribe him his anti-depressant medication, according to the record Dr.

15  Braun first refferal to Dr. Majumdar for Plaintiff's appointment was in January 3, 2012. (See

16  Exhibit B.), However, Dr. Majumdar met Plaintiff on February 27, 2012. (See Exhibit H), almost

17  two months since Plaintiff complained for first time that he needed his anti-depressant meds

18  because he was very depressed. However, the time when Dr. Majumdar showed up to prescribe

19  Plaintiff's mental health treatment, was unreasonable late. Accordingly is debatable issue why Dr.

20  Majumdar delayed to meet with Plaintiff to prescribe his anti-depressant medication.

21  Plaintiff claim that there is evidence in the          record suggesting that Dr. Majumdar had possible

22  delayed Plaintiff's mental health appointment intentionally because he found out that Plaintiff

23  apparently had refused to take his medication a few times prior to January 3, 2012. (Exhibit H, ¶

24  5.). Therefore, the failure of Dr. Majumdar to meet Plaintiff for his psychiatry appointment to

25  prescribe him, his anti-depressant medication in a reasonable time, amount to deliberate

26  indifference under the Eight Amendment, and resulted in Plaintiff's further significant suicide

27  attempt, which caused him pain, suffering, physical injury and post-traumatic stress disorder.

28  (Gomez dec.,¶ 21.).

1      **Defendants' Reply:**

2

3      **Defendants' Undisputed Fact 51:**  Dr. Majumdar gave Plaintiff all of the treatment that he

4      deemed was medically necessary for his depression. (Majumdar dec., ¶ 8.)

5      **Plaintiff's Response:**  Plaintiff admit the fact that Dr. Majumdar restarted Mirtazapine 30

6      mg for his depression on February 27,2012. However, the debatable issue here is why Dr.

7      Majumdar delayed Plaintiff's treatment for almost -two months. He claim that the time when Dr.

8      Majumdar finally showed up to prescribe him his anti-depressant medication, was unreasonable

9      late, because Plaintiff's plan to hurt himself with the bed sheet was in progress. However, Plaintiff

10     claim that if Dr. Majumdar had prescribed him the anti-depressant medication at least one week

11     prior to February 27,2012, is reasonable probable that Plaintiff's suicide attempt using the bed

12     sheet had never occurred, but occurred due to lack of medication. Therefore Dr. Majumdar gave

13     Plaintiff's treatment late.

14     **Defendants' Reply:**

15

16     <u>**DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF DISPUTED FACTS**</u>

17     **Plaintiff's Disputed Fact 1:**  On or about May 2009, Plaintiff started taking anti-depressant

18     meds to control his depression disorder that he suffers since he was 15 or 16 years old.  In March

19     16, 2011, Plaintiff arrived to High Desert State Prison from San Quentin State Prison, where he

20     was in a stable condition because he was taking his anti-depressant medications.  When Plaintiff

21     arrived to High Desert State Prison he had a medical history of prior suicide attempts, one of

22     them was recorded in camera when he was an inmate in Santa Clara Main Jail, in Santa Clara

23     County.  On or about December 2011, Plaintiff feels depressed again in High Desert State Prison

24     due to multiples stressors.  Then, he decided to seek for mental health care by filing a medical

25     request slip, also called CDC 7362, as I testified in my deposition.  (Gomez dec., ¶¶ 1-3.)

26     **Defendants' Reply:** Undisputed.

27     / / /

28     / / /

18

1      **Plaintiff's Disputed Fact 2:**  In January 3, 2012, I met Dr. Braun with the purpose to

2    personally request him my mental health treatment.  During that encounter I reported him that I

3    fe1t low having depression throughout the day, and that I was instable over the past few months.

4    I personally expressed him my wish to start my mental health treatment due that I was very

5    depressed and I had tried to choke myself out using a towel a few days ago, and including the day

6    prior to this encounter as I testified in my deposition. When Dr. Braun asked me the question Do

7    you want to hurt yourself?, I responded him, no, because I thought that he was talking about the

8    time I was face to face with him.  However, when I returned back to my cell.  The suicide

9    thoughts were racing deliberately in my mind, and I tried to choke myself out multiple times

10   using a towel as I testified in my deposition.  (Gomez dec., ¶¶ 4-5.)

11      **Defendants' Reply:**

12

13      **Plaintiff's Disputed Fact 3:**  As a prisoner suffering from a mental health condition, I was

14   at the mercy of Dr. Braun and Dr. Majumdar. (Gomez dec., ¶ 6.)

15      **Defendants' Reply:**

16

17      **Plaintiff's Disputed Fact 4:**  When I met Dr. Braun on January 30, 2012, I informed that I

18   have not seen a psychiatrist for my medication complaints. He told me I am going to reffer you

19   again, but he did not informed me who or what caused the first delay of 27 days in receiving my

20   appointment with Dr. Majumdar for my meds complaint, Dr. Braun never told me that he had

21   contacted any scheduler regarding my appointment with Dr.,

22   Majumdar, he just said, I going to scheduled you with the psychiatry as he wrote in his notes.

23   (Gomez dec., ¶ 7.)

24      **Defendants' Reply:**

25

26      **Plaintiff's Disputed Fact 5:**  Dr. Braun was not strictly subjected to the CDCR's policy in

27   the early 2012 time frame, because, since he made the medical decision to follow-up with

28   Plaintiff every 20 or 30 days instead of the ninety (90) days as was required by CDCR's policy,

1  this fact is strongly indicating that Dr. Braun can make his own choices in order to help to

2  expedite Plaintiff's mental health treatment to prevent the further suicide attempt. Accordingly,

3  Dr. Braun was not strictly subjected to CDCR's Policy. (Gomez dec., ¶ 8.)

4      **Defendants' Reply:**

5

6      **Plaintiff's Disputed Fact 6:**  On January 30, 2012, I met Dr. Braun again for therapeutic

7  contact and medication complaint. At that time I reported him that I had not seen a psychiatrist

8  since our previous encounter. I reported him that I need to go back on my medication because I

9  was feeling down and depressed all the time. I recall that I reported him that I had tried to choke

10 myself out again using the towel to put pressure in my neck to stop the blood going into my brain,

11 as I testified in my deposition, and including the night prior to this encounter. (Gomez dec., ¶ 9.)

12     **Defendants' Reply:**

13

14     **Plaintiff's Disputed Fact 7:**  On February 21, 2012, I met Dr. Braun again for therapeutic

15 contact. At this visit I continued complaining of issues related to depression, agitation and

16 troubling sleeping. I reported him that I need my medication, and that I had not seen a psychiatrist

17 since he has made the first written referral on January 3, 2012, Dr. Braun told me that he is going

18 to make the referral again. However, he looked normal. He was not worry or frustrated     in

19 trying to get me an appointment with Dr. Majumdar. ( Gomez dec., ¶¶ 10-11.)

20     **Defendants' Reply:**

21

22     **Plaintiff's Disputed Fact 8:**  Between January 3, 2012, and February 21, 2012, Plaintiff's

23 primary complaint to Dr. Braun was for the specific purpose to personally request him my anti-

24 depressant treatment that I had used in the past to control my depression disorder that I suffered

25 since I was 15 or 16 years old. However, Dr. Braun failed to take additional steps in order to get

26 me a timely appointment with Dr. Majumdar to request him my anti-depressant medications.

27 Finally, when Dr. Braun get me the appointment, it was almost two months after I have made my

28 first complaint for medications, and I was very, very depressed, with a developed plan to hurt

myself with the bed sheet due to the desperate need of meds, and the fear of been another day

with the depression.  When I finally met Dr. Majumdar to present him my complaint regarding

medication, it was late, because the plan to hurt myself with the sheet, was progressing in my

mind for about three weeks. (Gomez dec., ¶¶ 12-14.)

**Defendants' Reply:**


**Plaintiff's Disputed Fact 9:**  On February 27,2012, Dr. Majumdar had failed to recognize

that Plaintiff presented  symptoms   of suicide and depression. He failed to reffer him for an

emergency mental health evaluation, that would have prevented Plaintiff's suicide attempt with

the bed sheet occurred on February 29, 2012. (Gomez dec., ¶ 15.)

**Defendants' Reply:**


**Plaintiff's Disputed Fact 10:**  On February 27, 2012, I finally met Dr. Majumdar. In that

encounter I reported him that I haven't taken my meds for about three months, and that I feel

really, really bad due to lack of medication and my depression. I recall that day I was really

depressed and for about 3 weeks I have been planed to hurt myself with the bed sheet because I

was instable due to the depression and the lack of medication. When Dr. Majumdar asked me the

question Do you want to hurt yourself?, I responded him, no, because I thought he was talking

about the right moment when I was face to face with him. However, when I went back into my

cell, the suicide thoughts were back racing in my mind all day and night, and once I was lying

down in my bunk in cell 208 I used to choke myself out using the towel because I thought with

the towel could be more easy to kill myself than with the bed sheet. I did that for the last three

days in February 26, 27 and 28. But the suicide attempt failed with the towel. (Gomez dec., ¶¶ 16-

17.)

**Defendants' Reply:**


**Plaintiff's Disputed Fact 11:**  On February 27,2012, I finally met Dr. Majumdar regarding

my medication complaint. During this visit Dr. Majumdar looked tense and agitated, he told me

1   that he is going to restart Mirtazapine 30 mg. He was using a loud tone of voice. Plaintiff never

2   voluntary refused to take his medication in the past. Sometimes he has to walk to the pill window

3   for his treatment in High Desert State prison, but sometimes he did not go due that he was

4   depressed and also was snowing heavy in the prison. Sometimes the pill nurse delivered the

5   medication in his cell at 8:00 p.m. However, there were times when Plaintiff was sleeping

6   because he was depressed, and the nurse who delivered the medication in his cell, just walked

7   away without giving him his medications, which means that Plaintiff did not refused his mental

8   health treatment on purpose. (Gomez dec., ¶ 18.)

9       **Defendants' Reply:**

10

11      **Plaintiff's Disputed Fact 12:**  I have received anti-depressants medication in the past to

12  treat my condition, and the benefits of the treatment occurred in the first week, which is very

13  sooner. Which means if Dr. Majumdar could have prescribed me the anti-depressant medication

14  at least one week prior to February 29, 2012, is reasonable probable that the suicide attempt using

15  the bed sheet never had occurred. (Gomez dec., ¶ 19.)

16      **Defendants' Reply:**

17

18      **Plaintiff's Disputed Fact 13:**  The Eighth Amendment of the United States Constitution,

19  instead of the CDCR's policies obligate Dr. Majumdar to effectively provide Plaintiff an adequate

20  and necessary medical care treatment by prescribing him, his anti-depressant medication in a

21  reasonable time. However, the two months that Dr. Majumdar took in delaying Plaintiff's mental

22  health treatment is unreasonable under the Eighth Amendment of the United States Constitution,

23  and is unreasonable under any policy and procedure of CDCR, and resulted in Plaintiff's further

24  significant suicide attempt, which caused Plaintiff pain, suffering, physical injury and a post-

25  traumatic stress disorder occurred after he was placed in an Enhanced Outpatient Program

26  (E.O.P.), where he witnessed inmates doing crazy things, worse that the one Plaintiff did on

27  February 29, 2012. (Gomez dec., ¶ 20.)

28      **Defendants' Reply:**

22

1  **Plaintiff's Disputed Fact 14:**  On February _29,2012, I was totally exhausted of suffering

2  from my depression, and tired of waiting for my anti-depressant, I felt really scared to be living in

3  depression without any treatment, so during the prior 3 weeks I was developing a plan to kill

4  myself using the bed sheet. Then in February 29, 2012, I decided it was time to execute that plan,

5  but I was discovered by CDCR's staff, which frustrated my plan. (Gomez dec., ¶¶ 21-22.)

6  **Defendants' Reply:**

7

8  **Plaintiff's Disputed Fact 15:**  The deliberate indifference' displayed by Defendants Dr.

9  Braun and Dr. Majumdar, caused Plaintiff's suicide attempt in February 29, 2102, that almost

10  ended with his life. The failure to treat Plaintiff's mental health needs in a reasonable time,

11  amounts to deliberate indifference to the Eighth Amendment of the United

12  States Constitution. (Gomez dec., ¶¶ 6, 14.)

13  **Defendants' Reply:**

14  Dated:  February 20, 2018                                  Respectfully submitted,

15                                                            XAVIER BECERRA
                                                              Attorney General of California
16                                                            ALBERTO L. GONZÁLEZ
                                                              Supervising Deputy Attorney General
17
                                                              /s/ **John C. Bridges**
18
                                                              JOHN C. BRIDGES
19                                                            Deputy Attorney General
                                                              *Attorneys for Defendants*
20                                                            *Dr. Braun and Dr. Majumdar*

21

22

23

24

25

26

27

28  SA2016300966
    33280010.doc

Defendants' Reply To Plaintiff's Reply To Defendants' Statements Of Undisputed Facts (2:15-cv-2523-KJN)

<u>**DECLARATION OF SERVICE BY U.S. MAIL**</u>

Case Name:   **Nexis Rene Gomez v. D. Braun, N. Majumdar, M.D.**
No.:          **2:15-cv-2523-KJN**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On <u>February 20, 2018,</u> I served the attached

**DEFENDANTS' REPLY TO PLAINTIFF'S REPLY TO DEFENDANTS' STATEMENTS OF UNDISPUTED FACTS**

by placing a true copy thereof enclosed in a sealed envelope in the internal mail collection system at the Office of the Attorney General at 1300 I Street, Suite 125, P.O. Box 944255, Sacramento, CA 94244-2550, addressed as follows:

Nexis Rene Gomez
AF-7364
Correctional Training Facility
P.O. Box 705
Soledad, CA 93960
*In pro per*

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on February 20, 2018, at Sacramento, California.

|                              |                              |
| ---------------------------- | ---------------------------- |
| A. Bachinsky                 | */s/ A. Bachinsky*           |
| Declarant                    | Signature                    |

SA2016300966
33282999.docx